168 P.3d 955

**STATE of Hawai'i, Plaintiff–Appellee–Respondent,**

v.

**Reginald FIELDS, Defendant–Appellant–Petitioner.**

**No. 25455.**

Supreme Court of Hawai'i.

Aug. 30, 2007.

As Amended on Denial of Reconsideration Oct. 10, 2007.

Reconsideration Denied Nov. 7, 2007.

Karen T. Nakasone, Deputy Public Defender, for defendant-appellant-petitioner on the application.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ and ACOBA, J., Dissenting.

Opinion of the Court by NAKAYAMA, J.

On June 30, 2005, defendant-appellant-petitioner Reginald Fields ("Fields") filed an application for writ of certiorari to review the published decision of the Intermediate Court of Appeals ("ICA") in *State v. Fields,* No. 25455, —— Hawai'i ——, —— P.3d ——, 2005 WL 1274539 (App.2005) ("the ICA's opinion"), affirming the October 11, 2002 judgment of the family court of the fifth circuit,[1] convicting Fields of, and sentencing him for, the offense of abuse of a family or household member, in violation of Hawai'i Revised Statutes ("HRS") § 709–906(1).[2]

The parties do not dispute that Fields was convicted on the strength of hearsay. In affirming the conviction, the ICA held that the admission of these extrajudicial statements as substantive evidence of Fields' guilt did not violate Fields' constitutional right of confrontation. During the pendency of Fields' appeal before the ICA, the United States Supreme Court decided *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), a case that substantially modifies the standard for admitting hearsay evidence consistent with the confrontation clauses of the United States and Hawai'i Constitutions. We granted certiorari to consider whether the admission of the inculpatory hearsay in the present case violated *Crawford.* Subsequently, while the matter was pending before this court, the United States Supreme Court revisited *Crawford* in *Davis v. Washington,* 547 U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006),[3] clarifying the dis-

---

1. The Honorable Calvin K. Murashige presided.

2. HRS § 709–906(1) (Supp.2003) provides, in pertinent part, that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or household member.... For the purposes of this section, 'family or household mem-

ber' means ... persons jointly residing or formerly residing in the same dwelling unit."

3. The *Davis* opinion has not yet been published in the United States Reports, and we henceforth

tinction between testimonial and nontestimonial hearsay. Considering Fields' points of error in light of *Crawford* and *Davis*, we now affirm his conviction.

## I. BACKGROUND

### A. Factual Background

On the night of April 13, 2002, Fields was home with his then-girlfriend, Melinda Staggs ("Staggs") and a friend, Dave Richards ("Richards"). Fields and Richards were eating dinner when Fields received a phone call from Staggs' mother, Patsy Pepper ("Pepper"), who threatened to "com[e] over to the house to kick his ass and kill him." Pepper and several men thereafter arrived, and a fight ensued. Staggs was struck multiple times while attempting to protect Fields, who was wearing a colostomy bag and recovering from an operation.

Fields' landlord, Karma Lhamo ("Lhamo"), also lived on the property in a house approximately one-hundred feet away. Hearing Staggs yelling, Lhamo summoned the police; officers arrived fifteen minutes later and escorted Pepper and her friends off the property. No arrests were made, however, because Staggs refused to press charges.

Later that night, a second argument arose between Staggs, Fields, and Richards. From her bedroom, Lhamo heard "slapping sounds" and a "hard thug" that sounded like "somebody falling to the ground." She then heard someone (presumably Richards) yell, "Reggie, get off her." Phoning the police again, Lhamo made her way to the neighboring house, where she found Staggs sitting on her couch "kind of shook up, kind of scared and . . . half beaten or something."

Kauai Police Department ("KPD") Officers Karen Kapua ("Officer Kapua") and Elliot Ke ("Officer Ke") arrived at the residence to find that Fields and Richards had already departed. Staggs was crying and her clothes were torn. The officers also observed red marks or scratches on Staggs' chin, shoulder, and left cheek, and that she appeared intoxicated.

refer to it by its Supreme Court Reporter cita-

Officer Ke questioned Staggs, who informed him that Fields was upset with her about the evening's earlier altercation with Pepper. She stated that she was lying on the couch watching television when Fields approached her from behind, held her neck against the couch, and punched her on the left side of her face. Officer Ke urged Staggs to fill out a statement, but Staggs declined and instead requested a lawyer. She also rebuffed the officer's suggestion that she visit a women's shelter. Officers Ke and Kapua left without seeing Fields or Richards.

### B. Procedural History

On April 29, 2002, plaintiff-appellee-respondent State of Hawai'i ("prosecution") filed a complaint charging Fields with committing the offense of abuse of a family or household member, in violation of HRS § 709–906(1).

Fields' jury-waived trial commenced on July 29, 2002. Staggs, the prosecution's first witness, testified on direct examination that she had "a hard time remembering" any of the events on April 13, 2002 and could not recall her conversation with Officer Ke. Nevertheless, on cross-examination, she testified about the incident as follows:

Q. Do you recall, Ms. Staggs, on this particular night, April 13th we're talking, David Richards being present? ·

A. I believe—yes, I believe he was.

. . . .

Q. And do you recall whether on this night—on this—or this evening whether or not you were drinking anything?

A. Yes, I was.

Q. What were you drinking?

A. Beer.

Q. Okay. Did you have a lot to drink?

A. Yes.

Q. Is that, perhaps, why you have no recollection?

A. Perhaps.

Q. Do you—do you under—do you recall, perhaps, any incident involving Mr. Fields' surfboards—surfboard?

tion.

A. Um-hmm.

Q. And might that involve a threat to Mr. Fields that if he left that you were going to break his surfboard?

A. I think that may have occurred.

Q. Okay. Do you recall laying on his board in such a way, I guess maybe it was between the table and the chair, and then threatening to sit on it that—something like that?

A. Yeah, I do remember that.

Q. Okay. Do you recall perhaps Mr. Richards trying to hold your wrists to keep you from slapping him, et cetera? Do you recall that at all?

A. No, I don't remember that.

[DEFENSE COUNSEL]: Nothing further. Thank you, your Honor.

Lhamo then testified for the prosecution. Regarding her second emergency phone call, Lhamo stated the following:

[DEPUTY PROSECUTING ATTORNEY:] Okay. After you called 911 what did you do?

[LHAMO:] I went to go over and to see if [Staggs] was okay cuz Reginald and his company had left in his Suzuki. They left the property, and I guess Melinda was wanting to know if he was okay or not.

[DPA:] How—how was Melinda acting when you (inaudible)?

[LHAMO:] She was kind of shook up, kind of scared, kind of, you know, like what is—what is really going on here, you know.

The prosecution subsequently inquired whether Richards said anything to Fields during Fields' argument with Staggs. Her memory initially faltering, Lhamo utilized a police report[4] to refresh her recollection. After reviewing the police report, Lhamo testified without objection that Richards told Fields, "Reggie, get off her."

Next to the witness stand was Officer Kapua, who recalled that Staggs "was crying" and had "a red mark on her chin and also a red scratch on her right shoulder" when she and Officer Ke arrived at Staggs' home.

Officer Ke recounted, without objection, the substance of Staggs' answers to his questions on the night of April 13, 2002:

[DPA:] Did you talk to Ms. Staggs?

[OFFICER KE:] Yes, I did.

[DPA:] And where did you talk to her?

[OFFICER KE:] She was in the living room at the—her residence.

[DPA:] And did you ask her what happened?

[OFFICER KE:] Yes, I did.

[DPA:] What did she say?

[OFFICER KE:] She said that she and Reggie got into a[sic] argument. Reggie was upset. I guess her mom brought some friends over earlier in the evening and the police had to come by. They were upset so they were arguing. And she said she was laying down on the couch watching TV, and I guess Reggie came up behind her and started holding her down, pressing on her neck with both of his hands, like, kind of holding her down on the couch. And then she also said that he punched her in the face, left side of her face, Melinda's face.

Upon further questioning by the prosecution, Officer Ke also described Staggs' appearance at the scene:

[DPA:] Can you describe Ms. Staggs' appearance when you saw her?

[OFFICER KE:] She—her clothes was [sic] torn at the front, she had—her face—her face was red on her left cheek was—and there were also abrasion [sic] on her chin and a scratch on her shoulder. She was also—appeared to be intoxicated.

[DPA:] And how was her demeanor when she was talking to you?

[OFFICER KE:] She was crying and upset.

On cross-examination, Officer Ke confirmed that Staggs declined to sign a written statement because she wanted to consult a lawyer. The prosecution rested at the conclusion of Officer Ke's testimony.

The parties thereafter stipulated to the admission of a report prepared by special investigator Leon Gonsalves ("Gonsalves"),

4. The police report was not submitted into evidence.

who interviewed Richards on July 2, 2002. In his report, Gonsalves related Richards' recollection that he was present when Fields and Staggs began to argue, and that Fields "never physically assaulted [Staggs]." Gonsalves noted that Richards "had a strong order [sic] of liquor on his breath, . . . was flushed, and appeared unsteady on his feet" during the interview. The report did not mention Richards' statement, allegedly overheard by Lhamo, telling Fields, "Reggie, get off her."

Finally, Fields took the stand and testified in his own defense. According to Fields, Richards asked to be driven home following the altercation with Pepper. Staggs protested that she did not want to be left alone and struck Fields after he insisted that she remain at home. She also "kicked in the door" and threatened to break Fields' surfboard. Fields testified that he and Richards nevertheless departed, and he denied ever hitting Staggs. He also noted that he was wearing a colostomy bag that restricted his movements on the night of the alleged offense.

During closing arguments, the prosecution emphasized that Lhamo heard Richards say, "Reggie, get off her," and that Staggs informed Officer Ke that Fields "was on her holding her down." The prosecution argued that both statements were substantive evidence that Fields abused Staggs.

Counsel for Fields submitted on the evidence presented and declined to make a closing argument.

In its oral ruling, the family court relied heavily on the out-of-court statements of Staggs and Richards to support its finding of guilt:

> The Court understands from the testimony that there were two instances—or incidents on the same day. The initial incident had to do with a carload of people coming to the residence where the Defendant and victim were living. And following that incident there was another incident about 11:30, 11:40 when the police were called as a result of the landlord hearing some sounds. Among the statements or sounds that the landlord heard was the statement of one person, believed to be [Richards], saying: Reggie, get off her.
>
> The police observed the demeanor and condition of [Staggs]. Her clothes were torn in front, cheek was red, there was abrasion on her chin, scratch on her shoulder. There were statements that [Fields] and [Staggs] had got into an argument because of the earlier incident involving the—when the police came over, and that [Fields] grabbed or came—came upon her from behind, held her down and struck her in the face.
>
> Based upon what the Court has heard, . . . the Court will find that the [prosecution] has proven its case beyond a reasonable doubt and will find you guilty of the offense.

Based on its oral ruling, the family court entered a judgment of conviction on October 11, 2002 and sentenced Fields to a term of two years' probation. On November 7, 2002 Fields filed a timely notice of appeal.

### C. Fields' Appeal Before the ICA

■ On appeal before the ICA, Fields argued that the family court plainly erred by admitting Staggs' statement, as related by Officer Ke, that Fields held her down and punched her in the face.[5] Specifically, Fields contended that: (1) the admission of Staggs' hearsay statements to Officer Ke violated the rule against hearsay set forth in Hawai'i Rules of Evidence ("HRE") Rule 802 (2002); (2) the family court's acceptance of Staggs' hearsay statements as substantive evidence violated the confrontation clauses of the sixth amendment to the United States Constitution and article I, section 14 of the Hawai'i Constitution; (3) the record lacked substantial and admissible evidence to support his conviction; and (4) the prosecution failed to

---

5. Neither the parties nor the ICA disputed that Staggs' out-of-court statements were "hearsay." HRE Rule 801 (2002) provides, in pertinent part: " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." The statements were hearsay under HRE Rule 801 inasmuch as they were offered as substantive evidence of the truth of the matters asserted therein—*i.e.*, that Fields abused Staggs.

prove the *corpus delicti* of the offense using evidence other than hearsay.

The prosecution answered that: (1) Fields' conviction should be affirmed because Fields did not timely object to the admission of Staggs' and Richards' hearsay statements; and (2) if the ICA noticed plain error, the case should be remanded for an evidentiary hearing on whether the statements were admissible hearsay.

Fields replied that: (1) the ICA should notice plain error because the error complained of violated his constitutional right of confrontation; (2) neither statement was admissible as a hearsay exception under the HRE; and (3) insofar as neither statement was admissible, the record lacked sufficient evidence to support his conviction.

On September 14, 2004, the ICA ordered the parties to file supplemental briefs addressing *State v. Haili,* 103 Hawai'i 89, 79 P.3d 1263 (2003), and *Crawford,* cases which were decided on December 3, 2003 and March 8, 2004 respectively.

Fields' supplemental brief added that the family court plainly erred by accepting Lhamo's testimony as to Richards' statement, "Reggie, get off her," inasmuch as it violated his rights under *Crawford.*

The prosecution answered that: (1) the family court properly admitted Staggs' and Richards' hearsay statements; and (2) assuming, *arguendo,* that the family court erred by admitting Richards' statement, such error was harmless.

On May 31, 2005, the ICA filed a published opinion affirming Fields' conviction.

### 1. *Fields' confrontation clause claims*

Addressing Fields' confrontation clause claims, the ICA first quoted at length from *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), and *Haili* for the proposition that the prosecution must demonstrate that the hearsay statements of an unavailable declarant bear adequate indicia of reliability in order for those statements to be admissible as substantive evidence without infringing upon the protections afforded criminal defendants by the confrontation clauses of the United States and Hawai'i

Constitutions. The ICA subsequently acknowledged that *Crawford* fundamentally altered the analysis by holding that the confrontation clause of the sixth amendment to the United States Constitution precludes "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford,* 541 U.S. at 53–54, 124 S.Ct. 1354.

Based upon *Crawford,* as well as a lengthy excerpt from *United States v. Owens,* 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), the ICA concluded that the family court did not violate Fields' sixth amendment right of confrontation by permitting Staggs' out-of-court statements insofar as Staggs both appeared at trial and testified. The ICA also concluded that, with respect to the confrontation clause incorporated into the Hawai'i Constitution, *Haili,* not *Crawford,* was the applicable precedent. Accordingly the ICA determined that, pursuant to *Haili,* any objection by Fields' counsel to Staggs' out-of-court statements could have been validly denied.

### 2. *The HRE*

The ICA subsequently noted that the admission of Staggs' and Richards' out-of-court statements did not comply with the statutory provisions of the HRE. The ICA conceded that, had counsel objected to Staggs' and Richards' hearsay statements, such objections could not have been validly denied. Nevertheless, the ICA concluded that the family court did not commit "error" when admitting the hearsay statements because it had no "duty" to exclude the evidence absent trial counsel's objection. The ICA emphasized that trial counsel's failure to object to Staggs' and Richards' hearsay statements presented an ineffective assistance of counsel claim, which Fields could assert in a collateral post-conviction proceeding, pursuant to Hawai'i Rules of Penal Procedure ("HRPP") Rule 40.

### 3. *Sufficiency of the evidence*

Finally, the ICA concluded that, because the admission of Staggs' and Richards' out-

of-court statements was not trial error, Fields' assertion that his conviction lacked sufficient evidence was moot.

Accordingly, the ICA affirmed the family court's October 11, 2002 judgment without prejudice to Fields asserting an ineffective assistance of counsel claim in a post-conviction proceeding, pursuant to HRPP Rule 40.

### D. Fields' Application for Writ of Certiorari

On June 30, 2005, Fields filed a timely application for writ of certiorari, in which he contended that the ICA gravely erred by (1) failing to find that the admission of Staggs' and Richards' hearsay statements did not violate the confrontation clause of the Hawai'i Constitution, (2) declining to notice plain error and abdicating judicial review in favor of a post-conviction HRPP Rule 40 proceeding, and (3) failing to acknowledge that the prosecution failed to adduce sufficient admissible evidence to support his conviction.

## II. STANDARDS OF REVIEW

### A. Application for Writ of Certiorari

When determining whether to grant or deny an application for writ of certiorari, this court reviews decisions for (1) grave errors of law or of fact, or (2) obvious

---

**6.** Presently, this court employs the following standard of review when determining whether to accept or reject applications for writs of certiorari:

§ 602–59 Review of decision of the intermediate appellate court, certiorari. (a) After issuance of the intermediate appellate court's judgment or dismissal order, a party may seek review of the intermediate appellate court's decision and judgment or dismissal order only by application to the supreme court for a writ of certiorari, the acceptance or rejection of which shall be discretionary upon the supreme court.

(b) The application for writ of certiorari shall tersely state its grounds, which shall include:

(1) Grave errors of law or of fact; or

(2) Obvious inconsistencies in the decision of the intermediate appellate court with that of the supreme court, federal decisions, or its own decision, and the magnitude of those errors or inconsistencies dictating the need for further appeal.

inconsistencies in the decision of the ICA with that of the supreme court, federal decisions, or its own decision and the magnitude of such errors or inconsistencies dictating the need for further appeal. *See* HRS § 602–59 (1993).

*Wemple ex rel. Dang v. Dahman,* 103 Hawai'i 385, 392, 83 P.3d 100, 107 (2004).[6]

### B. Constitutional Questions

■ "We answer questions of constitutional law by exercising our own independent judgment based on the facts of the case.... Thus, we review questions of constitutional law under the 'right/wrong' standard." *State v. Feliciano,* 107 Hawai'i 469, 475, 115 P.3d 648, 654 (2005) (ellipses in original) (citing *State v. Jenkins,* 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000)).

### C. Sufficiency of the Evidence

■ Regarding a criminal defendant's claim that the prosecution failed to adduce sufficient evidence, we have stated as follows:

We have long held that evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or a jury. The test on appeal is not whether guilt is established beyond a reasonable

---

(c) An application for writ of certiorari may be filed with the supreme court no later than ninety days after the filing of the judgment or dismissal order of the intermediate appellate court. Opposition to an application for writ of certiorari may be filed no later than fifteen days after the application is filed. The supreme court shall determine to accept the application within thirty days after an objection is or could have been filed. The failure of the supreme court to accept within thirty days shall constitute a rejection of the application.

(d) Upon the acceptance of the application, the clerk shall forward the complete file of the case to the supreme court. Supplemental briefs shall be accepted from the parties only upon the request of the supreme court.

HRS § 602–59 (Supp.2006). However, we utilize the prior formulation when reviewing the case at bar insofar as Fields' application for writ of certiorari was filed before the change took effect.

doubt, but whether there was substantial evidence to support the conclusion of the trier of fact. . . .

"Substantial evidence" as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a [person] of reasonable caution to support a conclusion.

*State v. Batson,* 73 Haw. 236, 248–49, 831 P.2d 924, 931 (1992), *reconsideration denied,* 73 Haw. 625, 834 P.2d 1315 (1992) (citations omitted).

## III. DISCUSSION

### A. The Hawai‘i Constitution's Confrontation Clause

Fields contends that the ICA gravely erred by affirming a conviction that was based primarily on hearsay evidence rendered inadmissible by the confrontation clause of the Hawai‘i Constitution. For the reasons that follow, we disagree.

#### 1. *The right of confrontation as understood at the time of Fields' trial*

The confrontation clause of article I, section 14 of the Hawai‘i Constitution states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against the accused[.]" [7]

■ The right of confrontation "affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses." *State v. Ortiz,* 74 Haw. 343, 360, 845 P.2d 547, 555 (1993) (citing *State v. Rodrigues,* 7 Haw.App. 80, 84, 742 P.2d 986, 989 (1987)). For this reason, the admission of a hearsay statement as substantive evidence of its truth "raises special problems" whenever the hearsay declarant is unavailable for meaningful cross-examination on the witness stand. *See State v. Sua,* 92 Hawai‘i 61, 70, 987 P.2d 959, 968 (1999) (citing *State v. Hoffman,* 73 Haw. 41, 47, 828 P.2d 805, 809 (1992) (quoting *Blue v. State,* 558 P.2d 636, 644 (Alaska 1977))).

Nonetheless, we have stopped short of holding that the right of confrontation poses an absolute bar to the admission of all out-of-court statements. *See Haili,* 103 Hawai‘i at 103, 79 P.3d at 1277 (citing *State v. McGriff,* 76 Hawai‘i 148, 156, 871 P.2d 782, 790 (1994) (quoting *Bourjaily v. United States,* 483 U.S. 171, 182, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987))). Instead, we have long held that a trial court may, consistent with a criminal defendant's constitutional right of confrontation, permit a hearsay statement uttered by an unavailable declarant as substantive evidence if the statement satisfies the two-part test announced by the United States Supreme Court in *Roberts. See Haili,* 103 Hawai‘i at 104, 79 P.3d at 1278 (citing *Sua,* 92 Hawai‘i at 71, 987 P.2d at 969 (quoting *Ortiz,* 74 Haw. at 361, 845 P.2d at 555–56)).

As regards the first part of the *Roberts* test, we have remained resolute that[,] under the confrontation clause of the Hawai‘i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants. . . .

Upon demonstrating that a witness is unavailable, under the second half of the *Roberts* test, only statements that bear "adequate indicia of reliability" may be admitted into evidence. "Reliability" may be shown in two ways. First, reliability may be inferred without more if it "falls within a firmly rooted hearsay exception[.]" *Ortiz,* 74 Haw. at 361, 845 P.2d at 556 (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531). . . .

Alternatively, reliability may be demonstrated "upon a showing of particularized guarantees of trustworthiness." *Ortiz,* 74 Haw. at 361, 845 P.2d at 556 (quoting *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531). The United States Supreme Court has declined "to endorse a mechanical test for determining 'particularized guarantees of trustworthiness' under the [Confrontation] Clause." *Idaho v. Wright,* 497 U.S. 805, 822, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990). Instead, the Court has determined that " 'particularized guarantees of trust-

---

7. The confrontation clause of the United States Constitution is virtually identical, and provides, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" U.S. Const. amend. VI.

worthiness' must be shown from the totality of the circumstances" and that "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." *Id.* at 819, 110 S.Ct. 3139.

*Sua,* 92 Hawai'i at 71–72, 987 P.2d at 969–70 (brackets in original) (some citations and quotation marks omitted).

Our endorsement of *Roberts* as the appropriate litmus for identifying constitutionally inadmissible hearsay was therefore settled at the time of Fields' trial. *See id.* at 71, 987 P.2d at 969 (citing *State v. Moore,* 82 Hawai'i 202, 223, 921 P.2d 122, 143 (1996)).

### 2. *Crawford v. Washington*

The United States Supreme Court's decision in *Crawford,* decided during the pendency of Fields' appeal before the ICA, makes untenable our continued reliance on *Roberts* to define all forms of hearsay inadmissible under the confrontation clause. At issue in *Crawford* was an unavailable declarant's tape-recorded statement that was played to the jury to refute the defendant's theory of self defense. *Id.* at 39–40, 124 S.Ct. 1354. In considering the admissibility of the hearsay evidence, the Court declined to reassess the statement's reliability using the *Roberts* test. Rather, the Court overruled *Roberts* and, in its place, set forth a new interpretation of the federal confrontation clause that purports to hew more closely to the Framers' original intent.

■ *Crawford* concludes that the history behind the sixth amendment supports important inferences about the constitutional right of confrontation. "First, the principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." *Id.* at 50, 124 S.Ct. 1354. That inference in turn led the Court to a second, more fundamental proposition: "that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity

for cross-examination." *Id.* at 53–54, 124 S.Ct. 1354.

■ As interpreted by *Crawford,* then, the primary object of the right of confrontation lies in securing for the criminal defendant a basic procedural guarantee: that he be entitled to confront and cross-examine "witnesses" who bear "testimony" against him. *Id.* at 51, 124 S.Ct. 1354. To the extent that an out-of-court statement is testimonial in nature, such hearsay is admissible "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine" him about the statement. *Id.* at 59, 124 S.Ct. 1354. However, the procedural precondition of cross-examination does not apply when nontestimonial statements are involved, as the Framers did not rank the prosecutorial use of this latter type of hearsay among their "core concerns." *Id.* at 51, 124 S.Ct. 1354. Thus, in contrast to the absolute rule governing testimonial hearsay, *id.* at 61, 124 S.Ct. 1354, *Crawford* subjects nontestimonial statements to a more relaxed standard of admissibility—one that "afford[s] the States flexibility in their development of hearsay law." *Id.* at 68, 124 S.Ct. 1354.

In sum, instead of asking whether an unavailable declarant's statement bears "sufficient indicia of reliability" (as *Roberts* required), *Crawford* commands that we query, "Is the hearsay testimonial?"

■ To that end, *Crawford* confirms that some types of hearsay—"prior testimony at a preliminary hearing, before a grand jury, or at a former trial[,] ... police interrogations[,]" and plea allocutions—are undeniably testimonial under the sixth amendment. *Id.* at 64, 68, 124 S.Ct. 1354. Other classes of hearsay—"business records," "statements in furtherance of a conspiracy," and "casual remark[s]"—are likewise clearly nontestimonial. *See id.* at 51, 56, 124 S.Ct. 1354. *Crawford* ultimately declines, however, to unify these examples within a "comprehensive definition" of testimonial hearsay, *id.* at 68, 124 S.Ct. 1354, and simply observes, without further clarification, that some suggested formulations of the term trace the basic contours of the procedural right:

Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," *White v. Illinois*, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (THOMAS, J., joined by SCALIA, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 3. These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it.

*Id.* at 51–52, 124 S.Ct. 1354.

### 3. *Davis v. Washington*

 Having left several foundational questions unresolved in *Crawford,* the United States Supreme Court revisited the analysis in its consolidated opinion in *Davis.*[8] Therein, the Court clarified that the federal confrontation clause applies only to testimonial hearsay: "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is *not subject to the Confrontation Clause." Davis,* 126 S.Ct. at 2273 (emphasis added). Thereafter, the Court continued where *Crawford* left off:

Without attempting to produce an exhaustive classification of all conceivable statements—or even all conceivable statements in response to police interrogation—as either testimonial or nontestimonial, it suffices to decide the present cases as follows: Statements are nontestimonial when made in the course of police interro-

gation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Davis,* 126 S.Ct. at 2273–74 (footnote omitted). The Court subsequently applied its new-fashioned distinction between testimonial and nontestimonial hearsay to the specific facts presented by *Davis* and *Hammon.*

### a. *Davis,* No. 05–5224

*Davis* involved out-of-court statements made by Michelle McCottry ("McCottry") while speaking with a 911 emergency operator on the telephone. *Id.* at 2270–71. McCottry reported an ongoing domestic disturbance with her former boyfriend, Adrian Davis ("Davis"). McCottry informed the operator that Davis was "jumpin' on [her] again[,]" and that he was "usin' his fists." *Id.* at 2271. During the conversation, Davis struck McCottry and ran out the door. *Id.* The operator informed McCottry that the police were on their way, and that, "They're gonna check the area for him first[.]" *Id.* The police arrived four minutes later and observed that McCottry appeared distressed, that she recently sustained injuries to her face and forearm, and that she had frantically collected her children and her belongings in her preparation to leave the residence. *Id.* Davis was charged with violating a "domestic no-contact order." *Id.* McCottry did not testify, and, over Davis' objection, the trial court permitted a recording of McCottry's conversation with the emergency operator. *Id.* The jury thereafter returned a verdict of guilt, and Davis' conviction was affirmed by both the Washington Court of Appeals and the Washington Supreme Court. *Id.* The United States Supreme Court granted certiorari. *Id.* at 2272.

8. The opinion of the Court consolidated *Davis,* No. 05–5224, with *Hammon v. Indiana,* No. 05– 5705.

The Court ultimately concluded that McCottry's statements made to the 911 emergency operator were nontestimonial. *Id.* at 2277. The Court reasoned that (1) "McCottry was speaking about events *as they were actually happening,* rather than 'describ[ing] past events,'" *id.* at 2276 (emphasis in original) (brackets in original) (citation omitted), (2) "any reasonable listener would recognize that McCottry ... was facing an ongoing emergency[,]" *id.*, and (3) "the nature of what was asked and answered ..., again viewed objectively, was such that the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn ... what had happened in the past." *Id.* The Court pointed out that even the emergency operator's attempt to establish the identity of McCottry's attacker produced nontestimonial hearsay insofar as the information was elicited "so that the dispatched officers might know whether they would be encountering a violent felon." *Id.* Accordingly, the Court held that McCottry's statements were properly admitted and affirmed the Washington Supreme Court's judgment. *Id.* at 2280.

**b. *Hammon,* No. 05–5705**

In *Hammon,* the police responded to a reported domestic disturbance at the residence of Hershel and Amy Hammon (hereinafter individually referred to as "Hershel" and "Amy"). *Id.* at 2272. Upon arrival, the police discovered Amy sitting alone on the front porch. *Id.* Amy gave the police permission to enter the dwelling, and the police further observed broken glass in front of "a gas heating unit" from which flames were being emitted. *Id.* Hershel was also on the premises, and he informed the police that he and Amy were arguing, but that the dispute had been resolved without becoming physical. *Id.* Amy's account differed. *Id.* After reporting the incident to the police, she filled out a "battery affidavit" as follows: "Broke our Furnace & shoved me down on the floor into the broken glass. Hit me in the chest and threw me down. Broke our lamps & phone. Tore up my van where I couldn't leave the house. Attacked my daughter." *Id.* Hershel was charged with domestic battery and violating his probation. *Id.* At trial, Amy did not testify. *Id.* The trial court nevertheless admitted Amy's affidavit under the present sense impression exception to the hearsay exclusionary rule. *Id.* The trial court also permitted the introduction of Amy's oral account, via the testimony of one of the responding police officers, under the excited utterances exception. *Id.* The trial judge found Hershel guilty as charged, and Hershel's convictions were affirmed by both the Indiana Court of Appeals and the Indiana Supreme Court. *Id.* at 2273. The United States Supreme Court granted Hershel's application for certiorari. *Id.*

The Court thereafter perceived a clear factual distinction between *Hammon* and *Davis,* and concluded that Amy's statements were testimonial:

> It is entirely clear from the circumstances that the interrogation was part of an investigation into possibly criminal past conduct—as, indeed, the testifying officer expressly acknowledged.... There was no emergency in progress; the interrogating officer testified that he had heard no arguments or crashing and saw no one throw or break anything.... When the officers first arrived, Amy told them that things were fine ... and there was no immediate threat to her person. When the officer questioned Amy for the second time, and elicited the challenged statements, he was not seeking to determine (as in *Davis* ) 'what is happening,' but rather 'what happened.' Objectively viewed, the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime—which is, of course, precisely what the officer *should* have done.

*Id.* at 2278 (emphasis in original). The Court continued:

> The statements in *Davis* were taken when McCottry was alone, not only unprotected by police (as Amy Hammon was protected), but apparently in immediate danger from Davis. She was seeking aid, not telling a story about the past. McCottry's present-tense statements showed immediacy; Amy's narrative of past events was delivered at some remove in time from the danger she described. And after Amy answered the officer's questions, he had her

execute an affidavit, in order, he testified, "[t]o establish events that have occurred previously." *Id.* at 2279 (brackets in original). The Court reversed the judgment of the Indiana Supreme Court and remanded the matter for further consistent proceedings. *Id.* at 2280.

4. *The admissibility of Staggs' and Richards' statements following Crawford and Davis*

*Crawford* fundamentally alters our own analysis of article I, section 14 of the Hawai'i Constitution. To the extent that our cases have predicated the admissibility of *testimonial* hearsay on conformance with the now-abandoned "reliability" test set forth in *Roberts, Crawford* invalidates them. *Cf. State v. Grace,* 107 Hawai'i 133, 141, 111 P.3d 28, 36 (App.2005), *cert. denied,* 107 Hawai'i 348, 113 P.3d 799 (2005) ("[F]ederal constitutional guarantees are the absolute minimum constitutional protections we must afford criminal defendants[.]"). We read *Crawford* to unequivocally require that the admissibility of testimonial hearsay be governed by the following standard: where a hearsay declarant's unavailability has been shown, the testimonial statement is admissible for the truth of the matter asserted only if the defendant was afforded a prior opportunity to cross-examine the absent declarant about the statement. *See Crawford,* 541 U.S. at 68, 124 S.Ct. 1354.

 However, to the extent that the hearsay statements in question are nontestimonial, *Davis* places them beyond the reach of the federal confrontation clause. *See Davis,* 126 S.Ct. at 2273 ("It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, *is not subject to the Confrontation Clause.*") (Emphasis added.); *see also Crawford,* 541 U.S. at 68, 124 S.Ct. 1354 ("Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law[.]"). Thus, we are disinclined to alter our application of *Roberts* to nontestimonial hearsay. *Roberts* embodies the commonsense principle that, when face-to-face cross-examination cannot be secured, extrajudicial statements are admissible as evidence of their truth *only* when demonstrably more "reliable" than the straightforward application of our rules of evidence would normally require. *See, e.g., Sua,* 92 Hawai'i at 70, 987 P.2d at 968; *McGriff,* 76 Hawai'i at 155, 871 P.2d at 789; *Ortiz,* 74 Haw. at 360, 845 P.2d at 555. In our estimation, the fairness of criminal proceedings would be significantly diminished were we to renounce *Roberts* in favor of conditioning the admission of nontestimonial hearsay on the vagaries of evolving rules of evidence.

We therefore reaffirm *Roberts'* continued viability with respect to nontestimonial hearsay. Our position accords with that of other jurisdictions that continue to rely on *Roberts* to test the admissibility of nontestimonial statements. *See, e.g., United States v. Holmes,* 406 F.3d 337, 348 (5th Cir.2005) ("With respect to nontestimonial statements ... *Crawford* leaves in place the *Roberts* approach to determining admissibility.") (Footnote omitted.); *State v. Rivera,* 268 Conn. 351, 844 A.2d 191, 202 (2004) ("[B]ecause th[e] statement was nontestimonial in nature, application of the *Roberts* test remains appropriate."); *United States v. Hendricks,* 395 F.3d 173, 179 (3d Cir.2005) ("[U]nless a particular hearsay statement qualifies as 'testimonial,' *Crawford* is inapplicable and *Roberts* still controls."); *State v. Staten,* 364 S.C. 7, 610 S.E.2d 823, 836 (S.C.Ct.App.2005) ("Because nontestimonial hearsay is at issue here, we apply the reliability test of *Roberts*[.]"); *United States v. Saget,* 377 F.3d 223, 227 (2d Cir.2004) ("*Crawford* leaves the *Roberts* approach untouched with respect to nontestimonial statements.").

These principles thus settled, we turn to whether Fields' right of confrontation was violated in the circumstances of this case.

a. **Staggs' statement to Officer Ke**

 When disposing of Fields' state constitutional claim, the ICA apparently believed that *Haili,* and not *Crawford,* was the relevant precedent. The ICA concluded as follows:

When applying the Hawai'i Constitution, *Haili*, 103 Hawai'i 89, 79 P.3d 1263 (2003), not *Crawford*, 541 U.S. 36, 124 S.Ct. 1354, (March 8, 2004), is the applicable precedent. *Haili* applies the rule of *Roberts*. If counsel for Fields had objected to the introduction of [Staggs'] prior testimonial statement into evidence on the ground that it violated the right guaranteed to Fields by the confrontation clause in the Hawai'i Constitution, the objection would have lacked merit and could validly have been denied.

The ICA's opinion, slip op. at 23–24, at —— ——, —— P.3d at —— – ——. However, it is fundamental that, when interpreting our own constitution, our divergence from federal interpretations of the United States Constitution may not convey less protection than the federal standard. *See State v. Richie*, 88 Hawai'i 19, 42, 960 P.2d 1227, 1250 (1998) ("However, when departing from the federal standard, this court must at least provide the minimum level of protection required by the federal interpretation of the United States Constitution."); *State v. Quino*, 74 Haw. 161, 170, 840 P.2d 358, 362 (1992) ("[W]e acknowledged that '[a]s long as we afford defendants the minimum protection required by federal interpretations of the Fourteenth Amendment to the Federal Constitution, we are unrestricted in interpreting the constitution of this state to afford greater protection.'") (Some brackets added and some in original.) (Quoting *State v. Texeira*, 50 Haw. 138, 142 n. 2, 433 P.2d 593, 597 n. 2 (1967).).

▮▮▮▮ Nevertheless, we agree with the ICA's ultimate conclusion that Fields' constitutional right of confrontation was not violated by the circuit court's admission of Staggs' statement to Officer Ke on the grounds that Hawai'i's confrontation clause, like its federal

counterpart, is not implicated where, as here, the hearsay declarant attends trial and is cross-examined about his or her prior out-of-court statement. In so concluding, we note that the confrontation clause contained within article I, section 14 of the Hawai'i Constitution is virtually identical to the confrontation clause of the sixth amendment to the United States Constitution.[9] *See* discussion *supra* at n. 7. We thus find the following language in *Crawford*, delineating the scope of the federal confrontation clause, compelling:

> [W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. *See California v. Green*, 399 U.S. 149, 162, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).[10] . . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.

*Crawford*, 541 U.S. at 60 n. 9, 124 S.Ct. 1354.

*Crawford*, despite its absolute rules restricting admission of an *absent* declarant's hearsay statement, leaves no room for doubt that the federal confrontation clause is not concerned with the admission of an out-of-court statement where the declarant *appears at trial and is cross-examined about that statement.* Other jurisdictions interpreting the foregoing excerpt have reached similar conclusions. *See Robinson v. State*, 271 Ga. App. 584, 610 S.E.2d 194, 197 (2005) ("Here, because the witnesses were present at trial and testified, *Crawford* does not apply."); *State v. Tester*, 179 Vt. 627, 895 A.2d 215, 221 n. 2 (2006) ("*Crawford* is inapposite because [the declarant] testified at trial.") (Citing *Crawford*, 541 U.S. at 60 n. 9, 124 S.Ct.

---

9. Although we recognize that we may, under the Hawai'i Constitution, give broader protection than that afforded by the United States Constitution, *see Sua*, 92 Hawai'i at 73 n. 8, 987 P.2d at 971 n. 8 (stating that "this court will not hesitate to extend the protections of the Hawai'i Constitution beyond federal standards[ ]"), that maxim does not justify the construction of constitutional barriers where none are appropriate. To do so here would expand the protections of Hawai'i's confrontation clause beyond its purpose.

10. In *Green*, the United States Supreme Court stated, in relevant part, as follows:

> Finally, we note that none of our decisions interpreting the Confrontation Clause requires excluding the out-of-court statements of a witness who is available and testifying at trial. The concern of most of our cases has been focused on precisely the opposite situation-situations where statements have been admitted in the absence of the declarant and without any chance to cross-examine him at trial.

*Green*, 399 U.S. at 161, 90 S.Ct. 1930.

1354.); *People v. Johnson*, 363 Ill.App.3d 1060, 300 Ill.Dec. 756, 845 N.E.2d 645, 655 (2005) ("Here, the victim testified at trial and was subject to cross-examination. As such, none of the statements admitted . . . were improper under *Crawford.*"); *State v. Corbett*, 281 Kan. 294, 130 P.3d 1179, 1189 (2006) (concluding that *Crawford* did not preclude the admission of pretrial depositions of Jenny Williams and Bryan Miller, that contradicted their trial testimony, "because both Williams and Miller were available for cross-examination and testified at trial"); *Commonwealth v. Ruiz*, 442 Mass. 826, 817 N.E.2d 771, 778 n. 5 (2004) ("The defendant does not argue that admission of [the declarant's] spontaneous utterances constituted a violation of the principles stated in [*Crawford* ]. Here [the declarant] testified at trial and was subjected to cross-examination. We, therefore, do not need to address what impact the *Crawford* case might have on the admission of spontaneous utterances made by persons who do not testify."); *Gomez v. State*, 183 S.W.3d 86, 90 (Tex.Ct.App.2005) ("The fact that [the declarant] testified and was available for Appellant to cross examine her makes *Crawford* inapplicable here."); *Mumphrey v. State*, 155 S.W.3d 651, 657 n. 1 (Tex.Ct.App.2005) ("[The declarant] testified at trial. Therefore, the concerns raised by the recent decision by the United States Supreme Court in [*Crawford* ] are not relevant in this case.").

Inasmuch as the dissent takes issue with the afore-referenced cases, we now discuss them at length. In so doing, we find *Robinson* and *Tester* particularly persuasive inasmuch as the hearsay declarants in those cases claimed losses of memory at trial.

In *Robinson,* Rodney Shaw ("Shaw") and Thomas Milo ("Milo") were at a café when Aunterio Robinson ("Robinson") entered. *Robinson,* 610 S.E.2d at 195. Robinson became aggravated when Shaw demanded payment on a debt owed by Robinson. *Id.* Not wanting trouble, Shaw and Milo left the café and proceeded to a gas station. *Id.* Robinson followed them and a fist fight ensued. *Id.* During the fight, Robinson pulled out a gun and shot Shaw twice. *Id.* Milo wrestled the gun away from Robinson and threw it over a nearby fence and into a neighboring apartment complex. *Id.* Robinson retrieved the gun and fled. *Id.* Milo then drove Shaw to the hospital. *Id.* Both Shaw and Milo provided statements identifying Robinson as the shooter, and each man picked Robinson's picture out of a photographic lineup. *Id.* However, at trial, Shaw and Milo exhibited losses of memory on the witness stand:

> Both witnesses testified that they were intoxicated when the incident occurred. Milo admitted being shown the lineup, remembered he picked someone out, and testified that he signed the lineup form. He could not recall any other relevant facts concerning the incident except that Shaw was shot and that he transported Shaw to the hospital. He first testified that he remembered talking to Detective Foster, but shortly afterward he stated, "I don't even remember him." He was certain, though, that he did not "tell him anything." Shaw testified that he did not know who shot him, that he did not know or speak to Detective Foster, and that he did not talk to Detective Johnson. He did not remember being shown a lineup or signing the lineup form.

*Id.* at 196.

The Georgia Court of Appeals held that the admission of Shaw's and Milo's prior statements made to the police did not violate Robinson's right of confrontation under the sixth amendment to the United States Constitution:

> Robinson asserts the authority of *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), in support of his contention. But in *Crawford,* the prior statement improperly admitted was that of a wife who did not testify at trial because of a Washington state marital privilege barring her from testifying without her husband's consent. The United States Supreme Court held that admission of her prior statement violated the Confrontation Clause. The Court explicitly held, however, that
>
>> when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior statements. . . . The Clause does not bar admission of a state-

ment so long as the declarant is present at trial to defend or explain it. The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.

(Citations and punctuation omitted.) *Id.* at 38, n. 9, 124 S.Ct. 1354. On the other hand, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." (Citations and footnote omitted.) *Id.*

Here, because the witnesses were present at trial and testified, *Crawford* does not apply. Robinson's confrontation right was not violated.

*Id.* at 197 (ellipses in original).

In the case at bar, as in *Robinson,* the reluctant witness testified to an extent, despite claiming memory loss as to material elements of the alleged crime. Furthermore, neither Staggs nor the hearsay declarants in *Robinson* testified as to the subject matter of their prior out-of-court statements. Insofar as the *Robinson* court thus concluded that *Crawford* was inapplicable, we are similarly persuaded that the same result should be reached here.

In *Tester,* Dwight Tester, Sr. ("Tester") was convicted of the offense of aggravated sexual assault. *Tester,* 895 A.2d at 220. Tester's daughter ("D.T.") had reported to her therapeutic foster mother that "she had been sleeping on a blow-up bed, and she heard [Tester] enter the room. [Tester] knelt by the bed, and touched her vagina." *Id.* at 218. She repeated her allegations to a Department of Social and Rehabilitation Services official and a police detective. *Id.* At trial, however, she claimed some degree of memory loss:

She stated that [Tester] had hurt her. When asked how, she testified that she did not remember. D.T. acknowledged that she had told [her therapeutic foster mother] that [Tester] had touched her vagina. She reiterated that [Tester] had touched

her, but testified that she did not know how he had touched her.

*Id.* at 220.

In a *pro se* brief, Tester argued that D.T.'s out-of-court statements should have been excluded because they violated his right of confrontation guaranteed by the sixth amendment to the United States Constitution, as interpreted by *Crawford. Id.* at 221 n. 2. The Supreme Court of Vermont rejected that argument, stating that "*Crawford* is inapposite because D.T. testified at trial." *Id.*

Here, as in *Tester,* the hearsay declarant— despite some degree of memory loss—testified at trial and was cross-examined. Accordingly, *Tester* supports the proposition that the *Crawford* analysis is not applicable to Staggs' out-of-court statements to Officer Ke.

Although the factual backgrounds of the remaining cases do not parallel the facts presented in the case at bar, the principles espoused in those cases are nevertheless persuasive.

In *Johnson,* Glenn Johnson ("Johnson") was found guilty of two counts of aggravated criminal sexual abuse. *Johnson,* 300 Ill.Dec. 756, 845 N.E.2d at 648. The victim was twelve years old at the time and suffered from "mental, vision, speech, and language impairments." *Id.*

Johnson was one of the care providers assigned to the victim, and had contact with the victim on eight separate occasions. *Id.* at 648–49. Johnson then resigned from his position. *Id.* at 649. Thereafter, the victim told another care provider that he wished that Johnson was still his care provider. *Id.* When asked why, the victim responded that they "did fun things together." *Id.* After further questioning, the victim related that Johnson "licked his asshole" and that Johnson had "bubbles in his ass." *Id.* The victim's mother was informed, and the following conversation ensued:

The victim told his mother, while pointing at his genital area, that [Johnson] licked him. [The care provider] explained that the victim had told him that [Johnson] "licked his asshole." The victim's mother

asked the victim to show her what his asshole is, and the victim pointed to his penis. The victim's mother asked the victim if he meant his penis, and the victim said yes. The victim also said that the defendant was pulling on the defendant's penis and that stuff came out.

*Id.* The victim also related the foregoing to a police investigator. *Id.* at 650.

At trial, the victim testified, in relevant part, as follows:

The victim testified that on the way to his uncle's house, the defendant would stop the car, unbutton or unzip his pants, pull down his underwear, and stick out his penis. The defendant would move his hand up and down on his penis and bubbles would come out. The defendant would then wipe the bubbles off with a napkin. The defendant would then do the same to the victim: unbutton his pants, pull down the victim's underwear, and squeeze the victim's penis. The victim saw bubbles come out of his penis. After that they went to the victim's uncle's house. However, the victim did not tell his uncle about the incident.

The victim further testified that a similar incident occurred when he and the defendant were in a parking lot. In the parking lot they would stop, and the defendant would unbutton the victim's pants and pull down his underwear. The defendant held the victim's penis. The defendant then took the victim home. The victim testified that he did not tell anybody because the defendant told him not to and because he (the victim) would have been in trouble.

*Id.* at 652.

The victim's out-of-court statements were admitted pursuant to 725 Ill. Comp. Stat. Ann. 5/115–10 (West 2002), which reads, in pertinent part, as follows:

§ 115–10. Certain hearsay exceptions.

(a) In a prosecution for a physical or sexual act perpetrated upon or against a child under the age of 13, or a person who was a moderately, severely, or profoundly mentally retarded person as defined in this Code and in Section 2–10.1 of the Criminal Code of 1961 at the time the act was committed, ... the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by the victim of an out of court statement made by the victim that he or she complained of such act to another; and

(2) testimony of an out of court statement made by the victim describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim.

On appeal, Johnson argued that *In re E.H.*, 355 Ill.App.3d 564, 291 Ill.Dec. 443, 823 N.E.2d 1029 (2005) held that 725 Ill. Comp. Stat. 5/115–10 was unconstitutional, based upon the United States Supreme Court's decision in *Crawford*. *Johnson*, 300 Ill.Dec. 756, 845 N.E.2d at 655. The Illinois Court of Appeals, however, held that *Crawford* was inapplicable:

In *Crawford*, the Supreme Court held that testimonial forms of hearsay evidence are inadmissible absent a finding of unavailability and an opportunity to cross-examine the witnesses. *Crawford*, 541 U.S. at 53–54, 124 S.Ct. at 1365–66, 158 L.Ed.2d at 194. However, when "the declarant appears for cross-examination at trial, the [c]onfrontation [c]lause places no constraints at all on the use of his prior testimonial statements." *Crawford*, 541 U.S. at 59 n. 9, 124 S.Ct. at 1369 n. 9, 158 L.Ed.2d at 197 n. 9. In other words, when a child sex abuse victim appears at trial and is subject to cross-examination, any prior statement of the victim being offered pursuant to section 115–10 of the Code is a nonevent. *People v. Sharp*, 355 Ill.App.3d 786, 796, 292 Ill.Dec. 118, 825 N.E.2d 706 (2005).

Here, the victim testified at trial and was subject to cross-examination. As such, none of the statements admitted pursuant to section 115–10 were improper under *Crawford*.

*Id.* (brackets in original).

In *Corbett*, Trever Corbett ("Corbett") was convicted of the offense of first degree pre-

meditated murder of his ex-wife Crystal Casey ("Crystal"). *Corbett*, 130 P.3d at 1185.

Crystal married Corbett in August 1995. *Id.* They divorced in December 1996. *Id.* Crystal married her second husband, Shane Casey ("Shane"), in September 1997. *Id.* On the morning of June 26, 2000, Crystal's part-time roommate returned to find Crystal's body lying in her apartment. *Id.* Crystal's neighbor, Jenny Williams ("Williams") was walking around the apartment complex with her boyfriend, Bryan Miller ("Miller"), at approximately 1:30 A.M. on the morning that Crystal was murdered. *Id.* at 1186. Williams observed a partially clothed man emerging from the doorway to Crystal's apartment carrying a pile of laundry. *Id.* Williams thought she recognized the man as Corbett and greeted him. *Id.* The man did not respond. *Id.* Upon learning of Crystal's death, Williams and Miller contacted the police. *Id.* Erin Bailey, one of Williams' friends convinced Williams that she had actually seen Shane, because Corbett was the "nice" ex-husband, and Crystal's marriage with Shane was tumultuous. *Id.*

The police presented Williams with a photographic lineup that included Shane's picture, but not Corbett's picture. *Id.* Williams did not know Shane, but she selected his picture from the lineup. *Id.* The police approached Miller with the same lineup. *Id.* Miller did not initially select a photograph, and the police accused Miller of smoking marijuana and ordered him to return at a later time. *Id.* Miller then spoke with Williams, who informed Miller of which photograph she had selected. *Id.* Miller subsequently met with the police and selected Shane's picture from the lineup. *Id.* at 1186–87. Williams and Miller later appeared for depositions at which Williams reaffirmed her identification. *Id.* at 1187. Miller, however, recanted. *Id.* Williams thereafter expressed concerns about her own photographic identification. *Id.*

In January 2001, the police approached Williams and Miller with a second photographic lineup containing pictures of both Corbett and Shane. *Id.* Both Williams and Miller selected Corbett's picture from the lineup. *Id.* At trial, Williams and Miller testified about seeing Corbett outside of Crystal's apartment the morning she was murdered. *Id.* at 1188.

On appeal, Corbett argued that the trial court erred by admitting the transcripts from Williams' and Miller's depositions. *Id.* The Supreme Court of Kansas, however, held that the admission of prior testimony of witnesses who testify at trial was not precluded by either Kan. Stat. Ann. § 60–460(a) or the United States Supreme Court's decision in *Crawford*. *Id.* at 1189. The Supreme Court of Kansas stated that

> *Crawford* does not apply ... because both Williams and Miller were available for cross-examination and testified at trial. The language in K.S.A. 60–460(a), which limits the application of the statute to "a person who is present at the hearing and available for cross-examination," specifically protects the defendant's right to confrontation by requiring the person to be available for cross-examination at trial. Thus, the application of K.S.A. 60–460(a) negates the application of *Crawford*.

*Id.* at 1189–90.

In *Ruiz*, Juan Ruiz ("Juan") was convicted of the offense of first degree murder for killing his wife, Carmen Ruiz ("Carmen"). *Ruiz*, 817 N.E.2d at 774.

Juan and Carmen had been married for fourteen years and had four children. *Id.* Often, Carmen's friends and co-workers Angel Negron ("Negron") and Anthony Matos ("Matos") would drink and socialize at the Ruiz home. *Id.* During the summer of 1998, Carmen had an affair with Negron. *Id.* Eventually, Juan told Carmen that he did not want Negron and Matos at his home. *Id.* In August, Juan moved out of the house. *Id.*

On September 1, 1998, Negron and Matos were at the Ruiz home when Juan entered the premises. *Id.* at 775. Carmen and Juan argued in the kitchen while Negron was in the bathroom. *Id.* Juan proceeded to the bathroom and pounded on the door demanding that Negron come out so they could talk. *Id.* Matos approached Juan and stated that they were not looking for trouble. *Id.* Juan responded by stabbing Matos six times in the

chest and abdomen. *Id.* Juan then attacked Carmen and stabbed her multiple times in the torso. *Id.* During his attack on Carmen, Juan's twelve-year-old daughter opened her bedroom door and saw Juan stabbing Carmen. *Id.* She went back into her room and called the police. *Id.* Juan saw his daughter on the phone and ran out of the house, got into his vehicle, and drove away. *Id.* Officer Maria Lavita ("Officer Lavita") arrived at the Ruiz home and found Carmen lying on the porch, bleeding but conscious. *Id.* at 777. Officer Lavita also found Juan's daughter, visibly upset, and asked her what happened. *Id.* Juan's daughter stated, "My father did this to my mother." *Id.* She then described the stabbing. *Id.*

At trial, the court admitted Juan's daughter's out-of-court statements under the spontaneous utterances exception to the exclusionary hearsay rule. *Id.*

The Supreme Judicial Court of Massachusetts affirmed the trial court's ruling, agreeing that Juan's daughter's statements were properly admitted as spontaneous utterances. *Id.* The court also noted that the principles set forth in *Crawford* were not implicated because Juan's daughter testified at trial:

> The defendant does not argue that admission of [Juan's daughter's] spontaneous utterances constituted a violation of the principles stated in [*Crawford*]. Here, [Juan's daughter] testified at trial and was subjected to cross-examination. We, therefore, do not need to address what impact the *Crawford* case might have on the admission of spontaneous utterances made by persons who do not testify.

*Id.* at 778 n. 5.

In *Gomez*, police officers were dispatched to a local convenience store where they encountered a crying and hysterical Carmen Perez ("Perez"). *Gomez*, 183 S.W.3d at 88. Perez told the officers that she had been assaulted by her ex-boyfriend, Mario A. Gomez ("Gomez"). *Id.* Perez was a reluctant witness, but "she ultimately testified about the early morning events of October 19, 2003." *Id.* She testified that Gomez wanted to talk to her and that she received scrapes when he tried to force her into his vehicle. *Id.* at 89. She stated, however, that Gomez

only wanted to talk and that he "did not intend to hurt her." *Id.* The responding police officers also testified at trial, as to what Perez related to them about the incident in question. *Id.* at 88.

The Texas Court of Appeals rejected Gomez's claim that his right of confrontation was violated, as follows:

> In the case before us, [the responding officers] testified about the statements made to them by the victim, Perez. However, Perez also testified, and [Gomez] had the opportunity to cross examine her three separate times. The fact that Perez testified and was available for [Gomez] to cross examine her makes *Crawford* inapplicable here.

*Id.* at 90.

In *Mumphrey*, Johnifer Ray Mumphrey ("Johnifer") was convicted of perpetrating an assault on Theresa Reedy ("Reedy"), a member of his family or household. *Mumphrey*, 155 S.W.3d at 655.

According to the trial testimony of the responding police officer, Sheriff's Deputy Craig Strickhausen ("Deputy Strickhausen"), Reedy informed him that Johnifer came over to her residence and asked her for some money. *Id.* at 657. When she refused he followed her into the house. *Id.* She retreated to her bedroom and leaned against the door, but he forced his way in and assaulted her by striking her in the face and in the back and neck areas. *Id.* Reedy also testified, stating that Johnifer "struck her several times and chased her through the house because she had refused to give him money." *Id.* at 658.

On appeal, the Texas Court of Appeals held that the trial court properly admitted Deputy Strickhausen's testimony regarding Reedy's out-of-court statements under the excited utterances exception to the exclusionary hearsay rule. *Id.* at 659. In a footnote, the court also stated that "Reedy testified at trial. Therefore, the concerns raised by the recent decision by the United States Supreme Court in [*Crawford*] are not relevant[.]" *Id.* at 657 n. 1.

These cases, while somewhat factually dissimilar, share one unifying theme: *Crawford* does not preclude the admission of a prior out-of-court statement where the hearsay declarant is cross-examined at trial about the out-of-court statement.[11]

That concept is not a novel one. For even under this jurisdiction's version of the *Roberts* analysis, sufficient cross-examination of the hearsay declarant at trial terminated the inquiry. *See* Sua, 92 Hawai'i at 77, 987 P.2d at 975 ("Both Kaowili and Puahi were cross-examined with respect to their prior inconsistent statements.... It therefore follows that the substantive use of these statements did not infringe upon Sua's right of confrontation."); *State v. Clark*, 83 Hawai'i 289, 294, 926 P.2d 194, 199 (1996) ("Because the witness is subject to cross-examination, the substantive use of his [or her] prior inconsistent statement does not infringe the sixth amendment confrontation rights of accused in criminal cases, *see California v. Green*, 399 U.S. 149 [90 S.Ct. 1930, 26 L.Ed.2d 489] (1970).") (Quoting *State v. Eastman*, 81 Hawai'i 131, 136, 913 P.2d 57, 62 (1996) (citing commentary to HRE Rule 802.1 (1993)).) (Brackets in original.); *Owens*, 484 U.S. at 561, 108 S.Ct. 838 ("The dangers associated with hearsay inspired the Court of Appeals in the present case to believe that the Constitution required the testimony to be examined for 'indicia of reliability,' ... or 'particularized guarantees of trustworthiness,'.... *We do not think such an inquiry is called for when a hearsay declarant is present at trial and subject to unrestricted cross-examination.*") (Emphasis added.).

██ Here, Staggs claimed memory loss as to her prior statement *on direct examination by the prosecution.* Tr. 7/29/02 at 8–9. Indeed, she claimed that she could not even remember the incident in question. Tr. 7/29/02 at 8. On cross-examination, however, she willingly and informatively responded to virtually all of the questions posed by Fields' counsel. Tr. 7/29/02 at 10–11. Her earlier claim that she could not recall the incident

was belied by her subsequent testimony on cross-examination. Staggs was able to recall that (1) Richards was present during the incident, tr. 7/29/02 at 10, and (2) during the incident she was "laying on [Fields'] [surf-]board" while it was positioned "between the table and the chair" and that she threatened to sit on it and break it if Fields left the premises. Tr. 7/29/02 at 11. She further testified, on cross-examination, that her memory loss as to other portions of the incident could have been caused by the fact that she drank "a lot" of beer on the evening of the incident in question. Tr. 7/29/02 at 10. Fields' counsel then terminated the cross-examination, having asked only a handful of questions occupying less than two pages of transcript. Tr. 7/29/02 at 10–11. Given the foregoing, we do not think that Fields' opportunity for cross-examination was insufficient. The trier of fact was provided with adequate information to test the credibility and veracity of Staggs' prior statement insofar as it could have reasonably inferred that (1) Staggs' drunken state rendered her prior statement inaccurate or unreliable, and/or (2) Staggs was not an innocent victim but an aggressive participant in the incident who, while angry at Fields, gave a false statement to the police. Fields certainly had the opportunity to develop those theories and cast doubt on Staggs' earlier out-of-court statement, but voluntarily declined to do so by terminating the cross-examination. Moreover, the fact of Staggs' memory loss further permitted the trier of fact to test the truth of her prior out-of-court statement. *See Owens*, 484 U.S. at 559, 108 S.Ct. 838 ("It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his [or her] lack of care and attentiveness, his [or her] poor eyesight, *and even (what is often a prime objective of cross-examination,* see 3A J. Wigmore, Evidence § 995, pp. 931–932 (J. Chadbourn rev.1970)) *the very fact that he [or she] has a bad memory.*") (Emphases added.). Therefore, we hold that the admission of Staggs' out-of-court statement did not violate Hawai'i's con-

---

11. Although the dissent claims that these cases are distinguishable, the factual dissimilarities highlighted by the dissent do nothing to undermine the underlying rationale that the federal confrontation clause is not concerned with the admission of out-of-court statements where the declarant appears and is cross-examined about those statements at trial.

frontation clause inasmuch as Fields was afforded a sufficient opportunity to cross-examine Staggs about her prior statement at trial.

Insofar as Fields had a meaningful opportunity for cross-examination, the dissent's focus on the "unavailability" paradigm is misplaced. *See* dissenting opinion, at 547, 168 P.3d at 999. ("[D]isagreement with the majority rests on the unavailability requirement[.]"). The "unavailability" paradigm has alternatively been referred to as the "rule of necessity." *See State v. Lee*, 83 Hawai'i 267, 275, 925 P.2d 1091, 1100 (1996) ("First, in conformance with the Framers' preference for face to face confrontation, the [confrontation clause] establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant.") (Citing *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531.) (Brackets in original.) The "rule of necessity" is so named because it imposes a burden on the prosecution to demonstrate the necessity of introducing a prior out-of-court statement by demonstrating the "unavailability" of the declarant at trial. *Id.* Thus, the constitutionally infused term, "unavailable," means that the declarant is "unavailable" *as a witness for the prosecution at trial.* But that is not a relevant inquiry here, insofar as Staggs' "unavailability" has been conclusively established by her claimed loss of memory. As is intuitively obvious, the present matter turns on whether, given the circumstances, Fields was afforded a meaningful opportunity to cross-examine Staggs about her prior out-of-court statement.[12] The point here is that the protections guaranteed by Hawai'i's confrontation clause have been fully afforded to an accused where the hearsay declarant attends trial and is cross-examined about the prior hearsay statement. The explicit right conferred by both the state and federal confrontation clauses is the right to "confront adverse witnesses." *Id.* at 70, 987 P.2d at 968. "The right of confrontation affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses." *Id.* (citing *State v. Ortiz*, 74 Haw. 343, 360, 845 P.2d 547, 555 (1993) (citing *State v. Rodrigues*, 7 Haw.App. 80, 84, 742 P.2d 986, 989 (1987))). These foundational interests are preserved where an accused is afforded the opportunity to cross-examine, and thereby challenge the credibility and veracity of, a hearsay declarant regarding his or her prior out-of-court statement. *See* 5 J. Wigmore on Evidence § 1396, at 154 (Chadbourn rev. 1974) ("The satisfaction of the right of cross-examination . . . disposes of any objection based on the so-called right of confrontation."); *Owens*, 484 U.S. at 557–59, 108 S.Ct. 838 (stating that "a defendant seeking to discredit a forgetful expert witness is not without ammunition, since the jury may be persuaded that his opinion is as unreliable as his memory[,]" and that "[i]t is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his lack of care and attentiveness, his poor eyesight, and even (what is often a prime objective of cross-examination, see 3A J. Wigmore, Evidence § 995, pp. 931–932 (J. Chadbourn rev.1970)) the very fact that he has a bad memory.") (Quotation marks omitted.) (Citations omitted.). Consistent with the foregoing, we acknowledge that the dissent is correct to the extent that it accuses us of concluding that Staggs' was *available for cross-examination.* *See* dissenting opinion, at 548, 168 P.3d at 1000. Our holding that Fields had a sufficient opportunity to cross-examine Staggs about the subject matter of her prior out-of-court statement necessarily implies our acceptance of the proposition that Staggs was physically present at trial and thereby available for cross-examination. We emphasize, however, that we do not conclude that Staggs was *constitutionally "available" as a witness for the prosecution* because that finding is precluded by her claimed loss of memory, in accordance with *Sua.*

Given the foregoing, the dissent's discomfort with our application of *Sua* is unwarranted. In *Sua*, Jonah Gooman ("Gooman") was

---

12. We acknowledge the dissent's view that Fields' opportunity to cross-examine Staggs was insufficient. However, on the record before us, we simply and respectfully disagree.

driving an automobile in which Alomalietoa Sua ("Sua"), Cory Kaowili ("Kaowili"), and Trent Puahi ("Puahi") were passengers. *Sua,* 92 Hawai'i at 64, 987 P.2d at 962. Sua believed that Gooman owed a sum of money to his brother, and demanded that Gooman relinquish the money. *Id.* Gooman noticed Sua "fiddling" with a gun. *Id.* Sua continued to demand the money and struck Gooman in the head with the butt of the gun. *Id.* Kaowili produced $120.00 hoping that Sua would "back off." *Id.* Sua thereafter exited the car. *Id.* On July 23, 1997, Sua was indicted for committing the offense of first degree robbery. *Id.* At trial, Puahi and Kaowili testified, but they denied making statements to the police. *Id.* at 64–65, 987 P.2d at 962–63. Gooman also testified at trial. *Id.* at 65, 987 P.2d at 963. When asked about his previous testimony before the grand jury, he claimed that he could not remember. *Id.* Over objection, the circuit court allowed Gooman's grand jury testimony to be read to the jury. *Id.* at 65–66, 987 P.2d at 963–64.

On December 30, 1997, the jury found Sua guilty as charged. *Id.* at 67, 987 P.2d at 965. On August 30, 1999, the Intermediate Court of Appeals vacated the circuit court's judgment of conviction. *Id.* at 67–68, 987 P.2d at 965–66. On September 23, 1999, the prosecution filed an application for writ of certiorari, which this court accepted. *Id.* at 68, 987 P.2d at 966.

On appeal, we applied this jurisdiction's version of the *Roberts* test to Sua's claim that the admission of Gooman's grand jury testimony as a "past recollection recorded" violated his constitutional right of confrontation. *Id.* at 70, 987 P.2d at 968. We first concluded that Gooman was " 'unavailable' by virtue of his loss of memory." *Id.* at 73, 987 P.2d at 971. Turning to the second prong of the *Roberts* analysis, this court concluded that Gooman's prior grand jury testimony constituted a "past recollection recorded," and thus fell within a "firmly rooted hearsay exception." *Id.* To ensure the "highest standard of protection of Sua's constitution right of confrontation," we proceeded to analyze whether Gooman's grand jury testimony "bore 'particularized guarantees of trustwor-

thiness.' " *Id.* We found such "guarantees of trustworthiness," as follows:

> First, we note that Gooman's grand jury testimony was given under oath. Second, as the victim, Gooman had direct personal knowledge of the relevant facts. Third, Gooman exhibited no reluctance in the grand jury proceeding to implicate Sua. Fourth, Gooman bore no relationship to the government that would have benefitted him to testify against Sua. Finally, Gooman never recanted his inculpatory testimony or expressed belated views regarding its accuracy; in fact, at Sua's trial, Gooman testified that he was able to testify at the grand jury "fully and accurately." Given these indicia of trustworthiness, we cannot say that the trial court abused its discretion in admitting Gooman's grand jury testimony into evidence.

*Id.* at 74, 987 P.2d at 972.

We subsequently cited the following excerpt from *Carey v. United States,* 647 A.2d 56 (D.C.1994):

> [The witness] was available for cross-examination by [the defendant's] trial counsel. Indeed, he did cross-examine her at trial about her failure to remember the events on the night of the murder. *"The weapons available to impugn the witness' statement when memory loss is asserted will of course not always achieve success, but successful cross-examination is not the constitutional guarantee."* [*Owens,* 484 U.S.] at 560[ 108 S.Ct. 838.] Though [the defendant's] trial counsel may not have been able to cross-examine [the witness] as he would have liked, our review of the record reveals nothing giving rise the [sic] a deprivation of appellant's constitutional right of confrontation.

*Sua,* 92 Hawai'i at 75, 987 P.2d at 973 (emphasis added) (brackets in original) (citing *Carey,* 647 A.2d at 59).

We thus concluded that Gooman's grand jury testimony met both requirements of the *Roberts* test and that Sua had a sufficient opportunity for cross-examination:

> Similarly, in the present matter, Gooman made assertions before the grand jury and later claimed a loss of memory at trial. *Sua was provided with the opportunity to*

*cross-examine Gooman regarding his loss of memory. Inasmuch as Gooman's grand jury testimony met both requirements of the Roberts test, and Sua was able to cross-examine Gooman regarding his failure to remember the alleged incident, we cannot say that the admission of Gooman's grand jury testimony violated Sua's right to confrontation.*

*Id.* at 75, 987 P.2d at 973 (emphases added).

A fair reading of *Sua* indicates that this court rejected Sua's confrontation clause argument on two independent and dispositive, but coequal grounds: (1) both prongs of the *Roberts* test were met; *and* (2) Sua had a sufficient opportunity for cross-examination. *See Sua*, 92 Hawai'i at 75, 987 P.2d at 973 ("Inasmuch as Gooman's grand jury testimony met both requirements of the *Roberts* test, *and* Sua was able to cross-examine Gooman regarding his failure to remember the alleged incident, we cannot say that the admission of Gooman's grand jury testimony violated Sua's right to confrontation.") (Emphasis added.).

▮ To interpret the conclusion that Sua was able to cross-examine Gooman regarding his failure to remember the alleged incident as a mere "circumstantial fact," as the dissent suggests, *see* dissenting opinion, at 554, 168 P.3d at 1006, ignores *Sua's* citation of *Carey*, discussed *supra*. The dissent believes that *Sua* cannot be interpreted as adopting *Carey's* conclusion that a forgetful declarant was nevertheless "available for cross-examination," *Carey*, 647 A.2d at 59, inasmuch as that conclusion would be inconsistent with *Sua's* holding that a witness who claims a loss of memory at trial as to a prior out-of-court statement is constitutionally "unavailable." *See* dissenting opinion at 554, 168 P.3d at 1006 ("If considered other than a circumstantial fact as the majority proposes, *Carey* would be contradictory of *Sua II's* formulation of *Roberts*, because Gooman's memory loss made him unavailable for confrontation purposes on the same facts that

*Carey* would deem him available. Therefore, the purported 'two independent . . . grounds,' . . . asserted by the majority cannot coexist.") (Some ellipses in original and some added.). The dissent's position is unpersuasive because it confuses the semantic statement "available for cross-examination" with the constitutionally infused statement "available as a witness for the prosecution." The "unavailability" paradigm was not at issue in *Carey*. The *Carey* court made the foregoing statement in the context of analyzing whether the accused had a sufficient opportunity for cross-examination, the declarant's loss of memory notwithstanding. Thus, the *Carey* court's statement that the forgetful declarant was "available for cross-examination" implies nothing as to whether it would or would not have determined whether the forgetful witness was constitutionally "unavailable" (*i.e.*, "unavailable" *as a witness for the prosecution*). It is not contradictory to suggest that a witness may be constitutionally "unavailable" as a witness for the prosecution by virtue of that witness' claimed loss of memory at trial as to a prior out-of-court statement, yet simultaneously semantically "available for cross-examination" as a result of the witness' physical presence on the witness stand.[13] *Sua* is consistent with that distinction, holding, *inter alia*, that (1) Gooman was constitutionally "unavailable" as a witness for the prosecution by virtue of his loss of memory, and (2) Gooman was nevertheless semantically available for cross-examination by virtue of his physical presence at trial, thereby providing Sua with an opportunity to cross-examine Gooman. Thus, *Sua* concluded that "[i]nasmuch as Gooman's grand jury testimony met both requirements of the *Roberts* test, *and Sua was able to cross-examine Gooman regarding his failure to remember the alleged incident*, we cannot say that the admission of Gooman's grand jury testimony violated Sua's right to confrontation." *Sua*, 92 Hawai'i at 75, 987 P.2d at 973 (emphasis added).

---

**13.** In such situations, as is the case here, the dispositive question becomes whether the witness can nevertheless recall the subject matter of the statement, notwithstanding the loss of memory as to the statement itself. If the accused has the opportunity to elicit the witness' testimony as to the subject matter of the statement on cross-examination at trial, the accused's right of confrontation has been satisfied.

Additionally, the dissent's analysis is wrong because it misconstrues the *Crawford* opinion in an attempt to conjure disparity with this jurisdiction's confrontation clause jurisprudence. To wit, the dissent claims that, under *Crawford*, a declarant is "unavailable" for confrontation clause purposes only if he or she never takes the stand, and thus our endorsement of *Crawford's* view on unavailability directly contradicts this jurisdiction's view of "unavailability" as set forth in *Sua. See* dissenting opinion, at 564, 168 P.3d at 1016 ("Pursuant to *Crawford*, a declarant is 'unavailable' for confrontation clause purposes only if he or she never takes the stand."). However, *Crawford* does not state that a declarant is constitutionally "unavailable" only if the declarant is not present at trial. Indeed, the dissent provides no citation for that proposition. What *Crawford* does say, is that "[t]he Clause[,]" *i.e.,* the confrontation clause analysis, "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford* at 60 n. 9, 124 S.Ct. 1354. Thus, the appropriate principle gleaned is that the confrontation clause analysis does not apply to exclude a prior out-of-court statement where a declarant is physically present at trial to "defend or explain it[,]" not that a hearsay declarant's presence at trial mandates the conclusion that the declarant is constitutionally "available" (*i.e.,* not "unavailable").

The dissent's misapprehension of *Crawford* again demonstrates its improper equation of the constitutional "unavailability" paradigm with the inquiry whether the hearsay declarant is physically present and available for cross-examination. Because the dissent believes that the federal "unavailability" paradigm asks whether the declarant is available for cross-examination at trial, it consequently concludes that the hearsay declarant's physical presence at trial establishes the declarant's "availability" (*i.e.,* lack of "unavailability"). Thus, the dissent translates *Crawford's* statement in footnote 9—that the confrontation clause analysis does not bar the admission of a prior out-of-court statement "so long as the declarant is *present at trial* to

defend or explain it," *Crawford* at 60 n. 9, 124 S.Ct. 1354 (emphasis added)—as stating that the confrontation clause analysis does not apply so long as the declarant is available for cross-examination at trial. This explains the dissent's opposition to our application of that principle to the present case. As previously mentioned, the dissent takes the federal courts' use of the phrase "available for cross-examination" to mean constitutionally "available" (*i.e.,* not "unavailable"). Thus, the dissent believes that an application of *Crawford* here mandates the conclusion that Staggs was constitutionally "available" despite the fact that her memory loss would render her constitutionally "unavailable" under *Sua. See* dissenting opinion, at 564, 168 P.3d at 1016.

To the contrary, we read the federal courts' use of the phrase "available for cross-examination" as taking an intermediate step towards the conclusion that the accused had a meaningful opportunity to cross-examine a hearsay declarant who was physically present at trial; *not* as establishing the declarant's constitutional "availability" (*i.e.,* lack of "unavailability") as a witness for the prosecution. *See* discussion *supra.* It is the dissent's erroneous substitution of the phrase, "available for cross-examination," with the phrase, "available as witness for the prosecution," that creates the foregoing appearance of incompatibility.

Finally, the dissent claims that we have retained the "unavailability" paradigm with respect to nontestimonial situations and that by excluding the present out-of-court statement from the purview of Hawai'i's confrontation clause we have failed to preserve the "unavailability" paradigm with respect to testimonial situations, thus creating an anomalous result. Dissenting opinion, at 555–56, 168 P.3d at 1007–1008. However, contrary to the dissent's assertions, we have not extinguished the "unavailability" requirement with respect to testimonial situations. Under Hawai'i's confrontation clause, if an out-of-court statement is testimonial, it is subject to the *Crawford* analysis, which mandates that (1) the witness be "unavailable,"[14] and (2) the

14. We note that the "unavailability" paradigm

embedded within this jurisdiction's version of the

accused had a prior opportunity for cross-examination. If an out-of-court statement is nontestimonial, it is subject to the *Roberts* analysis, requiring a showing that (1) the declarant is "unavailable," and (2) the statement bears some indicia of reliability. Thus, the "unavailability" paradigm is retained in both testimonial and nontestimonial situations, and the result achieved is not anomalous. Indeed, we reiterate that "a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants." *Sua*, 92 Hawai'i at 71, 987 P.2d at 969 (citations omitted).

To reiterate, and in sum, our present holding is no more, and no less, than that a trial court's admission of a prior out-of-court statement does not violate the Hawai'i Constitution's confrontation clause where the declarant appears at trial and the accused is afforded a meaningful opportunity to cross-examine the declarant about the subject matter of that statement. In such situations, the cross-examination satisfies the accused's right of confrontation and neither the *Crawford* analysis nor the *Roberts* analysis need be employed.

### b. Richards' statements overheard by Lhamo

The ICA declined to address Fields' claim that Richards' out-of-court statement,[15] as related by Lhamo, violated Fields' right of confrontation under the Hawai'i Constitution.[16] Inasmuch as Fields failed to raise the argument in his opening brief, the ICA was within its discretion to deem the error waived. *See* HRAP Rule 28(b)(4) (2003)

(stating that "the appellant shall file an opening brief, containing ... [a] concise statement of the points of error.... Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented."). We therefore perceive no grave error.

### B. Plain Error

Pursuant to HRPP Rule 52(b), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Here, Fields expressly argues that his "constitutional right of confrontation is undoubtedly a 'substantial right' and the erroneous admission of both statements, in violation of the Hawai'i Constitution, did affect [his] substantial rights...." However, inasmuch as we have already determined that the admission of Staggs' prior out-of-court statement did not violate Fields' right of confrontation, his assertion that his substantial rights have been adversely affected on confrontation grounds is likewise without merit. Insofar as Fields does not advance any other plain error argument on certiorari, he has failed to demonstrate that ·his substantial rights have been adversely affected. *See State v. Nichols*, 111 Hawai'i 327, 337 n. 6, 141 P.3d 974, 984 n. 6 (2006) (stating, in the context of a review of erroneous jury instructions, that the appellant's burden to demonstrate error "is not to be taken lightly").

 We are, of course, cognizant of our inherent power to notice plain error *sua sponte. See State v. Grindles*, 70 Haw. 528,

Footnotes:

*Crawford* analysis, as with this jurisdiction's version of the *Roberts* analysis, must be interpreted to include a witness' lack of memory, pursuant to the greater protection afforded by the Hawai'i Constitution as recognized by this court in *Sua*.

15. Richards' statement, "Reggie, get off her[,]" is clearly nontestimonial, and, thus, its admissibility under the confrontation clause of the Hawai'i Constitution is governed by the *Roberts* test. *See Medina v. State*, 122 Nev. 346, 143 P.3d 471, 474 (2006) (holding that a rape victim's statement to her neighbor, "Look at me. Look at me. I've been raped[,]" was nontestimonial, whereas the rape victim's statement to a "Sexual Assault Nurse Examiner" was testimonial); *State v. Ma-*

*clin*, 183 S.W.3d 335, 347 n. 13 (Tenn.2006) ("Numerous courts have determined that statements made to friends, family, or acquaintances, as opposed to a government representative, do not constitute testimonial hearsay.") (Citations omitted.).

16. Although the ICA did not expressly state that Fields waived his argument by failing to assert it in his opening brief, we presume that its silence so indicates, inasmuch as (1) Fields concedes that he did not challenge the admission of Richards' hearsay statement in his opening brief, (2) Fields raised the argument for the first time in his supplemental appellate brief, and (3) the ICA completely ignored the argument.

530, 777 P.2d 1187, 1189 (1989) ("Although Appellant did not raise on appeal any due process claim, 'the power to *sua sponte* notice plain errors or defects affecting substantial rights' clearly resides in this court.") (Citing *State v. Hernandez*, 61 Haw. 475, 482, 605 P.2d 75, 79 (1980).). However, we do not believe it appropriate to do so under the present circumstances.

■ We have recently stated that the "power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *State v. Rodrigues*, 113 Hawai'i 41, 47, 147 P.3d 825, 831 (2006) (citing *State v. Aplaca*, 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001) (quoting *State v. Kelekolio*, 74 Haw. 479, 515, 849 P.2d 58, 74–75 (1993))). *See also Penson v. Ohio*, 488 U.S. 75, 84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988) ("This system is premised on the well-tested principle that truth—as well as fairness—is best discovered by powerful statements on both sides of the question."); *Hines v. United States*, 971 F.2d 506, 509 (10th Cir.1992) ("The rule that points not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one.") (Citing *United States v. Burke*, 504 U.S. 229, 249, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (Scalia, J., concurring).); *Ford v. United States*, 533 A.2d 617, 624 (D.C.1987) ("The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them.") (Citation omitted.); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir. 1983) ("Failure to enforce this requirement will ultimately deprive us in substantial measure of that assistance of counsel which the system assumes—a deficiency that we can perhaps supply by other means, but not without altering the character of our institution.").

■ Here, we decline to notice plain error *sua sponte* inasmuch as Fields retains the ability to vindicate his rights by filing a petition, pursuant to HRPP Rule 40, asserting a claim of ineffective assistance of counsel. Indeed, the ICA contemplated the appropriateness of such a proceeding, given the unique circumstances presented by the case at bar, as follows:

> In cases where the same counsel has represented the defendant/appellant both at trial and on direct appeal, and defendant/appellant, as reasonably expected, does not in his direct appeal contend that he is the victim of his trial counsel's negligent failure to object to the admission of two hearsay statements into evidence, may defendant/appellant in his direct appeal avoid the issue of whether his trial counsel was ineffective by asserting that the court's admission of the two hearsay statements into evidence was the court's plain error?

We emphasize that we offer no opinion as to the merits of such a claim as that question was not presented in Fields' application for writ of certiorari.[17]

17. The dissent cites *State v. Poaipuni*, 98 Hawai'i 387, 49 P.3d 353 (2002), to support its assertion that any such ineffective assistance of counsel claim should be addressed and resolved, as opposed to postponed for a HRPP Rule 40 proceeding. *See id.* at 395, 49 P.3d at 361 ("[T]he record on appeal is sufficiently developed to establish that there was no legitimate tactical bases upon which defense counsel's omissions could conceivably have been predicated. Thus, this is not a case in which [the defendant's] ineffective assistance of counsel claim cannot be decided until the record is further developed in a subsequent post-conviction proceeding."). However, in *Poaipuni*, the defendant raised and argued the ineffective assistance of counsel claim on appeal.

*Id.* at 388, 49 P.3d at 354. Here, no such argument was asserted, and therefore there may be other portions of the trial record that were not made a part of the record on appeal because they were not relevant to the points of error actually presented. Thus, we cannot know whether or not the present record is "sufficiently developed." Rather, we think it prudent to reserve judgment and permit Fields to file a HRPP Rule 40 petition for post-conviction relief, as the ICA concluded. To that end, we acknowledge that Fields' trial counsel's failure to object to Officer Ke's testimony as to Staggs' out-of-court statements will require a great deal of explanation. However, we believe that deciding the issue at the present time, without affording the parties

## C. Sufficiency of the Evidence

Fields' final point of error asserts that the prosecution failed to adduce sufficient admissible evidence to support his conviction.

■ Our standard for assessing the sufficiency of the evidence is well settled: "considered in the strongest light for the prosecution," the finding of guilt must be supported by "substantial evidence"—*i.e.*, "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion" that every material element of the charged offense was proven. *State v. Martinez*, 101 Hawai'i 332, 338–39, 68 P.3d 606, 612–13 (2003) (citations omitted). Furthermore, the analysis excludes from its purview all evidence erroneously admitted for consideration by the trier of fact. *See State v. Wallace*, 80 Hawai'i 382, 414 n. 30, 910 P.2d 695, 727 n. 30 (stating that "sufficiency of the evidence is reviewed based only on the evidence that was *properly admitted* at trial") (some emphasis omitted).

■ HRE § 709–906(1) describes the offense for which Fields was convicted, and provides, in pertinent part, as follows:

> § 709–906 Abuse of family or household members; penalty.
>
> (1) It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member. . . .
>
> For the purposes of this section, "family or household member" means . . . persons jointly residing or formerly residing in the same dwelling unit.

In assessing whether sufficient evidence supports a conviction under HRS § 709–906(1), the following additional guidance is relevant:

[T]o "physically abuse" someone is to "maltreat in such a manner as to cause injury, hurt or damage to that person's body." *State v. Nomura*, 79 Hawai'i 413, 416, 903 P.2d 718, 721 (App.), *cert. denied*, 80 Hawai'i 187, 907 P.2d 773 (1995); *State v. Ornellas*, 79 Hawai'i 418, 421, 903 P.2d 723, 726 (App.), *cert. denied*, 80 Hawai'i 187, 907 P.2d 773 (1995). HRS § 709–906 does not designate the requisite state of mind attendant to the offense of physical abuse of a household member. Thus, "that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly." HRS § 702–204 (1985). *Cf. State v. Holbron*, 78 Hawai'i 422, 424, 895 P.2d 173, 176 (1995) (requisite state of mind under HRS § 134–7(b) (Supp.1992) unspecified, thus, it is intentionally, knowingly, or recklessly), *reconsideration denied*, 79 Hawai'i 424, 903 P.2d 729 (1995).

*State v. Canady*, 80 Hawai'i 469, 474–75, 911 P.2d 104, 109–10 (App.1996).

■ Here, the admissible evidence [18] indicates that (1) Staggs, Fields, and Richards were present, (2) Lhamo heard slapping noises and a "hard thug," (3) Lhamo admitted that she did not know who was being slapped and whose body she heard hitting the ground, (4) Lhamo testified that she heard someone, presumably Richards, yell, "Reggie, get off her," (5) after Fields and Richards left the premises, Lhamo found Staggs "shook up, kind of scared and . . . half beaten or something," (6) the responding police officers, Officers Kapua and Ke, observed that Staggs had sustained injuries to her face and right shoulder, and (7) despite exhibiting some degree of memory loss at trial, Staggs had earlier reported to Officer Ke that Fields approached her from behind, held her neck against the couch, and punched her on the left side of her face.

---

the benefit of argument and the opportunity to present a complete record, is inappropriate.

18. We note that *Wallace* requires that each "material element of the offense [be] supported by substantial *and admissible* evidence . . . ." 80 Hawaii at 413, 910 P.2d at 726 (emphasis in original). However, *Wallace* does not preclude consideration of Staggs' and Richards' statements in the present case inasmuch as *Wallace* makes clear that unobjected to evidence is deemed admissible and may be considered when analyzing whether the record contains sufficient evidence to affirm a conviction. *See id.* at 410–13, 910 P.2d at 723–26. *Wallace* only restricts a sufficiency of the evidence analysis to "properly admitted" evidence "*for purposes of determining whether the double jeopardy clause of article I, section 10 precludes retrial of a defendant whose conviction has been set aside because of insufficient evidence . . . .*" *Id.* at 414 n.30, 910 P.2d at 727 n.30 (emphasis added). Fields' right against double jeopardy is not at issue here.

Hence, we conclude that, considered in the light most favorable to the prosecution, the evidence is of sufficient quality and probative value to enable a person of reasonable caution to support the conclusion that Fields intentionally, knowingly, or recklessly maltreated Staggs. *See Martinez,* 101 Hawai'i at 338–39, 68 P.3d at 612–13.

## IV. CONCLUSION

Based upon the foregoing, the judgment of conviction is affirmed.

Dissenting Opinion by ACOBA, J.

I respectfully dissent.

In his Application for Writ of Certiorari Petitioner/Defendant–Appellant Reginald Fields (Petitioner or Fields) contends that the Intermediate Court of Appeals (the ICA) gravely erred (1) by failing to find that the admission of the hearsay statements of Melinda Staggs (Staggs) and Dave Richards (Richards) did not violate the confrontation clause of the Hawai'i Constitution, (2) by declining to find plain error and in abdicating judicial review in favor of a Hawai'i Rules of Penal Procedure (HRPP) Rule 40 Petition, and (3) by not vacating Petitioner's conviction for insufficient evidence, because only evidence that is "substantial" and "admissible" can support a conviction.

In my view, Petitioner raises meritorious claims as to issues (2) and (3) that are preeminent and dispositive because under the Hawai'i Rules of Evidence (HRE), Staggs' hearsay statement was not admissible in evidence. Thus, issue (1) need not be reached. Consequently, the October 11, 2002 judgment of the family court of the fifth circuit (the court), convicting Petitioner of abuse of a family or household member, must be reversed. Assuming *arguendo* issue (1) must be reached, I believe the majority's analysis regarding the Hawai'i Constitution's confrontation clause is faulty.

1. HRE Rule 802.1 entitled, "Hearsay exception; Prior statement by Witnesses" states in relevant part:
 The following statements previously made by witnesses who testify at the trial or hearing are not excluded by the hearsay rule:

### I.

Staggs' out-of-court statement as related in the testimony of Officer Elliot Ke (Officer Ke) should not have been admitted in evidence because it was hearsay and did not qualify as an exception to the hearsay rule. Admission of such evidence under the circumstances of this case constituted plain error. Although the majority fails to decide it, this proposition is dispositive of Petitioner's writ application.

### A.

#### 1.

"Hearsay is 'a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.' HRE 801(3) (1985).... Hearsay is inadmissible at trial, unless it qualifies as an exception to the rule against hearsay." *State v. Sua,* 92 Hawai'i 61, 70, 987 P.2d 959, 968 (1999) [hereinafter *Sua II* ], rev'g *State v. Sua,* 92 Hawai'i 78, 987 P.2d 976 (App.1999) [hereinafter *Sua I* ] (internal quotation marks, citation, and brackets omitted). It is not disputed that Staggs' statement was made outside of court and was offered for the truth of the matter asserted therein. Accordingly, unless falling within an exception to the hearsay rule, the statement should not have been admitted into evidence.

#### 2.

Staggs' statement does not fall under any exception to the hearsay rule. The question of whether the statement fell within any exception does not appear to have been joined by the parties at trial. However, Petitioner declares that the "questioning of Staggs [by Respondent/Plaintiff–Appellee State of Hawai'i (Respondent)] ... suggests that it sought to admit her purported statement to Officer Ke under HRE Rule 802.1 [ (1993) ]." HRE Rule 802.1 [1] sets forth an exception to

(1) Inconsistent Statement. *The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, the statement is inconsistent with the declarant's testimony, the statement is*

the hearsay rule, which, when satisfied, permits the substantive use of prior statements that are either inconsistent or consistent with the declarant's trial testimony. As relevant here, pursuant to HRE Rule 802.1(1), several requirements must be satisfied before a prior inconsistent statement may be admitted as substantive evidence. First, the declarant must be "subject to cross-examination concerning the subject matter of [his or her prior] statement." HRE Rule 802.1(1). In addition, the prior statement must be "inconsistent" with the declarant's testimony and be offered in compliance with HRE Rule 613(b) (1993).[2] HRE Rule 802.1(1). Finally, the prior inconsistent statement must have been either "[g]iven under oath[,]" "[r]educed to writing and signed or otherwise adopted or approved by the declarant," or contemporaneously "[r]ecorded in substantially verbatim fashion." HRE Rule 802.1(1)(A)-(C).[3]

### B.

The statement that Officer Ke attributed to Staggs did not meet any of the requirements under HRE Rule 802.1. First, it was inadmissible because Staggs was not subject to cross-examination concerning the subject matter of her reputed prior statement. *See State v. Canady*, 80 Hawai'i 469, 477, 911 P.2d 104, 112 (App.1996) (concluding that the prior inconsistent statement "would not be admissible because ... the record failed to establish that [the complainant] was 'subject to cross-examination concerning the subject

offered in compliance with rule 613(b), and the statement was:
(A) *Given under oath* subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition; *or*
(B) *Reduced to writing and signed or otherwise adopted or approved by the declarant; or*
(C) *Recorded in substantially verbatim fashion* by stenographic, mechanical, electrical, or other means *contemporaneously with the making of the statement;*
(2) Consistent Statement. The declarant is subject to cross-examination concerning the subject matter of the declarant's statement, the statement is consistent with the declarant's testimony, and the statement is offered in compliance with rule 613(c)[.]

(Emphases added.)

matter' of the [s]tatement as required under HRE Rule 802.1(1)"). HRE Rule 802.1(1) requires "as a guarantee of the trustworthiness of a prior inconsistent statement, ... *that the witness be capable of testifying substantively about the event, allowing the trier of fact to meaningfully compare the prior version of the event with the version recounted at trial before the statement would be admissible as substantive evidence* of the matters stated therein." *Id.* at 480–81, 911 P.2d at 115–16 (footnote omitted) (emphasis added); *see also State v. Clark*, 83 Hawai'i 289, 295, 926 P.2d 194, 200 (1996) (discussing HRE 802.1 and holding that because the defendant had the opportunity to have the declarant "fully explain ... why her in-court and out-of-court statements were inconsistent, ... the trier of fact [could] determine where the truth lay[]" (citation omitted)); *State v. Eastman*, 81 Hawai'i 131, 139, 913 P.2d 57, 65 (1996) (concluding that the cross-examination of the complainant "satisfied *constitutional* and trustworthiness concerns over admitting [her] prior inconsistent statements ... into evidence [under HRE Rule 802.1], because the cross-examination gave [the defendant] the opportunity to have [the complainant] fully explain to the trier of fact why her in-court and out-of-court statements were inconsistent, which, in turn, enabled the trier of fact to determine where the truth lay" (emphasis added)).

Staggs, like the complainant in *Canady*, "could not recall the events that she allegedly described" in her prior statement. *Canady*,

2. HRE Rule 613(b) states:

(b) Extrinsic Evidence of Prior Inconsistent Statement of Witness. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless, on direct or cross-examination, (1) the circumstances of the statement have been brought to the attention of the witness, and (2) the witness has been asked whether the witness made the statement.

3. As noted, *see supra* note 1, with regard to prior *consistent* statements, HRE Rule 802.1(2) also requires that the declarant be "subject to cross-examination concerning the subject matter of [his or her] prior statement." HRE Rule 802.1(2) additionally requires that the prior statement be "consistent with the declarant's testimony," and "offered in compliance with HRE Rule 613(c)." HRE Rule 802.1(2).

80 Hawai'i at 481, 911 P.2d at 116. As such, Staggs was "not able to testify about the substantive events reported" in her prior statement. *Id.* Staggs' failure to recall, at trial, the incident that her prior statement described precluded Petitioner from subjecting the accusation attributed to her to cross-examination. Consequently, "[b]ecause the witness could not be cross-examined about the events, the trier of fact was not free to credit the present testimony or the prior statement to determine where the truth lay." *Id.* (citing Commentary to HRE Rule 802.1) (brackets and internal quotation marks omitted). Staggs' hearsay statement was therefore not admissible under HRE Rule 802.1.[4]

## II.

In its Answering Brief, Respondent does not dispute that Staggs' statement was not admissible under HRE Rule 802.1. Instead, Respondent argues that "the [court] did not abuse its discretion in accepting [Staggs'] statement to Officer Ke into evidence" under HRE Rule 804(b)(8) (1993 & Supp.2005)[5] because "[t]he statement that [Staggs] made to Officer Ke ... [has an] indicia of trustworthiness." In his Reply Brief, Petitioner argues that "Staggs' alleged statement to Officer Ke does not carry the same 'equivalent circumstantial guarantees of trustworthiness' as the other exceptions listed in [HRE Rule 804(b) (1993 & Supp.2005) ]." In any event, Respondent did not establish that the foun-

dational requirements of HRE Rule 804(b)(8) were met, as the ICA also noted. *See infra.* Staggs' hearsay statement was thus not admissible under HRE Rule 804(b)(8).

## III.

On September 14, 2004, the ICA ordered the parties to submit supplemental briefing regarding the impact of *Crawford,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) and *State v. Haili,* 103 Hawai'i 89, 79 P.3d 1263 (2003), in the resolution of Petitioner's appeal.[6] In his Supplemental Brief, Petitioner properly complied with the ICA's request, and as relevant to this discussion, maintained that Staggs' hearsay statement did not fall within a hearsay exception, "much less a 'firmly rooted' one" that would satisfy the Hawai'i confrontation clause. *Haili,* 103 Hawai'i at 104, 79 P.3d at 1278.

In response to Respondent's Answering Brief, Petitioner argued, "to the extent that [Respondent] relies, in its answering brief, on the so-called 'residual' hearsay exception set forth in [HRE] Rule 804(b)(8), ... even if Staggs' ... statements are deemed to fall within HRE Rule 804(b)(8), that does not satisfy the requirement that they fall within a 'firmly rooted' hearsay exception."

On the other hand, Respondent, in its Supplemental Answering Brief, argues as pertinent here, that under HRE Rule 803(b)(2) (1993 & Supp.2005),[7] Staggs'. hearsay state-

---

**4.** Moreover, because Staggs' prior statement was not given under oath, reduced to writing and signed, or otherwise adopted by her, nor contemporaneously recorded in a substantially verbatim fashion, the requisite foundation under HRE Rule 802.1(1) was not laid. In his Opening Brief, Petitioner additionally states that "Staggs' prior statement did not ... fall within any other firmly rooted exception to the hearsay rule."

**5.** HRE Rule 804(b)(8) states:
 The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
 . . . .
 (8) Other Exceptions. A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable

efforts, *and* (B) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. *However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.*
 (Emphases added.)

**6.** *Crawford* and *Haili* were decided on March 8, 2004, and December 3, 2003, respectively.

**7.** HRE Rule 803 entitled "Hearsay Exceptions; Availability of Declarant Immaterial" states in relevant part:
 The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

ment qualifies as an excited utterance and, therefore, falls within a "firmly rooted hearsay exception" and that Staggs' statement "has particular guarantees of trustworthiness." However, Respondent's position regarding an excited utterance is contrary to that taken in its Answering Brief, in which it contended that Staggs' statement was admissible under HRE Rule 804(b)(8), relevant only when no other enumerated exception applies. *See supra.* The doctrine of judicial estoppel "prevents parties from playing 'fast and loose' with the court or blowing 'hot and cold' during the course of litigation." *Roxas v. Marcos,* 89 Hawai'i 91, 124, 969 P.2d 1209, 1242 (1998) (citations and some internal quotation marks omitted). Therefore, Respondent is judicially estopped from changing its position regarding the admissibility of Staggs' hearsay statement.

Moreover, because the ICA limited the scope of the supplemental briefing to the applicability of *Crawford* and *Haili*, Respondent's discussion regarding an excited utterance exception exceeded the scope of the ICA's order. Respondent's argument thus is foreclosed because it would be unfair to address it in light of Petitioner's reliance on Respondent's position in its Answering Brief that Staggs' hearsay statement was admissible under the catchall provision of HRE 804(b)(8). *See, e.g., Tauese v. State Dept. of Labor & Indus. Relations,* 113 Hawai'i 1, 29, 147 P.3d 785, 813 (2006) (noting that although the appellant "provided some argument regarding the specificity of charges in his reply brief, he has waived this issue, and it would be unfair for us to address it" (citing *Taomae v. Lingle,* 110 Hawai'i 327, 333 n. 14, 132 P.3d 1238, 1244 n. 14 (2006) (denying plaintiffs' request for attorneys' fees on a ground raised for the first time in their reply memorandum))).

Finally, the ICA also apparently did not consider Respondent's belated excited utterance exception argument. Respondent did not apply for a writ of certiorari as to that contention and so it must be deemed waived for purposes of our review.

. . . .
 (b) Other Exceptions.
. . . .

## IV.

In sum, Staggs' hearsay statement did not qualify for admission as an exception to the hearsay rule under HRE Rule 802.1, HRE Rule 804(b)(8), or HRE Rule 803(b)(2). Thus, Staggs' hearsay statement was not admissible. I believe the ICA was correct, then, insofar as it also concluded that Staggs' statement was hearsay, the statement did not qualify for admission under any hearsay exception, and had an objection been made, "the objection . . . could not have been validly denied."

Officer Ke's testimony, repeating what [Staggs] said, is hearsay under HRE Rule 801 (Supp.2003). *According to HRE Rule 804(a)(3) [ (1993 & Supp.2005) ], [Staggs] was unavailable to testify.* Thus, the question is whether [Staggs'] statement is admissible under one of the exceptions listed in HRE Rule 804(b). The only possibility is HRE Rule 804(b)(8), and [Staggs'] statement is not admissible under it because (a) *the record does not show that [Respondent] complied with the notice requirements of HRE Rule 804, and (b) [Staggs'] statement lacks the required "equivalent circumstantial guarantees of trustworthiness." Therefore, if counsel for [Petitioner] had objected to the introduction of [Staggs'] prior testimonial statement into evidence on the ground that it violated the HRE, the objection would have had merit and could not have been validly denied.*

*State v. Fields,* No. 25455, at ——, —— P.3d at ——, 2005 WL 1274539, at *16 (App. May 21, 2005) (brackets omitted) (emphases added). The hearsay statement, then, should not have been allowed in evidence. This salient fact is not addressed by the majority. *Indeed the majority does not indicate at all how the hearsay statement properly could be admitted in the first instance* in light of plain error.

The ICA went on to discuss *Crawford* because it believed Petitioner's failure to object

(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

to the statement at trial waived his right to object on direct appeal on plain error grounds (although not his right to claim error in a subsequent HRPP Rule 40 proceeding). *Fields,* at ——–——, —— P.3d at ——–——, 2005 WL 1274539, at *18–19 (concluding that "[g]enerally ... absent an objection by the defendant," "the trial court did not violate a duty not to admit inadmissible hearsay testimony into evidence or a duty to strike inadmissible hearsay testimony after it was admitted into evidence").[8]

## V.

Because Fields did not object at trial to the admission of Staggs' statement, it is subject only to a review for plain error. In Fields' application for certiorari, he directly raises the issue of whether "[t]he ICA gravely erred in declining to find plain error and abdicating judicial review in favor of a Rule 40 petition" and that "appellate courts in this jurisdiction have found plain error and reversed convictions for the erroneous admission of evidence despite the lack of an objection." (Citing *State v. Fox,* 70 Haw. 46, 56, 760 P.2d 670, 676 (1988) (stating this court will not "stand[ ] idly by though clear error affecting substantial rights of the defendant was committed")).

So, although not objected to, the admission of Staggs' hearsay testimony at trial should have been noticed as plain error by the ICA as Fields argues in his application. *See State v. Nichols,* 111 Hawai'i 327, 334, 141 P.3d 974, 981 (2006) ("If the substantial rights of the defendant have been affected adversely, the error will be deemed plain error." (Citing *State v. Pinero,* 75 Haw. 282, 292, 859 P.2d 1369, 1374 (1993))); HRPP Rule 52(b) ("Plain error or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); *State v. Sanchez,* 82 Hawai'i 517, 524–25, 923 P.2d 934, 941–42 (App.1996) (" '[W]here plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court.' " (Quoting *State v. Kelekolio,* 74 Haw. 479, 515, 849 P.2d 58, 75 (1993).)).[9] In that regard, this court has stated that, even if hearsay is not objected to at trial, *"where inadmissible hearsay is so prejudicial as to deprive the defendant of his constitutional right to a fair trial, its admission will constitute ground for reversal*[.]" *State v. Pastushin,* 58 Haw. 299, 302, 568 P.2d 504, 506 (1977) (emphasis added) (citation omitted). Accordingly, as to Petitioner's issue (3), neither Staggs' nor

**8.** Richards' statement, "Reggie get off her," related to the court by Kharma Lhamo (Lhamo) was also inadmissible because it was also hearsay and did not qualify as an exception to the hearsay rule. *See Fields,* at ——, —— P.3d at —— 2005 WL 1274539, at *17. Contrary to the majority's contention that "the ICA declined to address Fields' claim that Richards' out-of-court statement, as related by Lhamo, violated Fields' right of confrontation under the Hawai'i Constitution[,]" majority opinion at 528, 168 P.3d at 980, the ICA did indeed address Richards' out-of-court statement.

The ICA stated that "[*Lhamo's] testimony, repeating what Richards said, is hearsay under HRE Rule 801"* and *"[t]he record does not answer the question [of] whether Richards was or was not unavailable to testify"* so *"if counsel for Fields had objected to the introduction of Richards' prior testimonial statement into evidence on the ground that it violated the HRE, the objection would have had merit and* could not have been validly denied." *Fields,* at ——, —— P.3d at ——, 2005 WL 1274539, at *17 (emphasis added). The ICA concluded that "the two hearsay statements that could have been validly objected to and excluded from evidence ... present the possibilities that

Fields is the victim of (a) the ineffective assistance of trial counsel or (b) the trial court's plain error." *Id.* at ——, —— P.3d at ——, *16. *Thus, according to the ICA, which the majority explains did "no[t] grave[ly] err[,]"* majority opinion at 528, 168 P.3d at 980 (emphasis added), *neither Staggs' nor Richards' hearsay statement was admissible.*

**9.** The majority appears to agree that the right of confrontation is a substantial right. *See majority* opinion at 528, 168 P.3d at 980 (stating that it has "already determined that the admission of Staggs' prior out-of-court statement did not violate Fields' right of confrontation, [thus] his assertion that his substantial rights have been adversely affected on confrontation grounds is likewise without merit"). It would follow, then, that because substantial rights include constitutional rights, the right to a fair trial is also a substantial right. *See State v. Rapoza,* 95 Hawai'i 321, 326, 22 P.3d 968, 973 (2001) (equating a substantial right with a constitutional right by stating a "defendant's substantial rights-to wit, his or her constitutional rights to a trial by an impartial jury and to due process of law ... may be recognized as plain error").

Richards' hearsay statements, *see supra* note 8, were properly admitted at trial and, thus, the evidence was insufficient to convict. *State v. Wallace*, 80 Hawai'i 382, 910 P.2d 695 (1996). Thus, the court's judgment must be reversed.

## VI.

The majority focuses its discussion of plain error on whether Fields explicitly raised the right to a fair trial. *See, e.g.,* majority opinion at 528, 168 P.3d at 980 (stating "[i]nsofar as Fields does not advance any other plain error argument on certiorari, he has failed to demonstrate that his substantial rights have been adversely affected"). As stated above, the inadmissibility of Staggs' statement on hearsay grounds was raised in Fields' application as plain error implicating his right to a fair trial. The ICA decided that admission of Staggs' statement violated the HRE and in his Opening Brief before the ICA, Fields argued, *inter alia,* that he "has a substantial, fundamental right" to "due process of law" and a "fair trial[,] which necessitates that [Respondent] carry its burden to prove its case against him beyond a reasonable doubt by *competent evidence*." (Emphasis added.) In making these claims, Fields cited to article I, sections 5 and 14 of the Hawai'i Constitution and the Sixth and Fourteenth Amendments to the United States Constitution which protect the right to a fair trial. As Fields raises these constitutional rights in his opening brief, the majority's contention that Fields "has failed to demonstrate that his substantial rights have been adversely affected[,]" majority opinion at 528, 168 P.3d at 980, is patently in error. This court's jurisdiction obviously extends to an error that affects a defendant's substantial rights.[10] *See also* cases *infra.*

Additionally, while an application for certiorari must address "(1) grave errors of law or of fact, or (2) obvious inconsistencies in

the decision of the [ICA] with that of the supreme court, federal decisions, or its own decision and the magnitude of such errors or inconsistencies dictating the need for further appeal," Hawai'i Revised Statutes (HRS) § 602–59(b) (Supp.2006), items (1) and (2) are not limitations on this court's discretion to take certiorari. *See State v. Chong,* 86 Hawai'i 282, 282–83, 949 P.2d 122, 122–23 (1997) (explaining that "[t]he legislative history of HRS § 602–59 makes clear we have the authority to consider any issues that arise in this case (citation omitted)); *State v. Bolosan,* 78 Hawai'i 86, 89 n. 5, 890 P.2d 673, 676 n. 5 (1995) (The legislative history of HRS § 602–59 (1985) indicated that although "the application for writ of certiorari must state 'errors of law or fact' or 'inconsistencies in the decision of the ICA with that of the Supreme Court, Federal decisions, or its own decisions, and the magnitude of such errors or inconsistencies dictating the need for further appeal' ...[,] *such requirement is directed only to the application for the writ[,]*" and, hence, the application requirement " '*is not descriptive of the scope of review determinative of the [s]upreme [c]ourt's decision to grant or deny certiorari* ' " and " '*[t]he [s]upreme [c]ourt's power in that regard is intended to be discretionary.*' " (Quoting Conf. Comm. Rep. No. 73, in 1979 Senate Journal, at 992.) (Emphases in original.) (Brackets omitted.)). Accordingly, assuming *arguendo,* that only the right of confrontation was expressly raised in the application, we are not constrained by the application to a review of that right, especially as here, where the right to a fair trial was raised by Petitioner on appeal before the ICA, and the ICA agreed admission of the hearsay statement violated the rules of evidence.

Moreover, even if Fields had failed to raise these issues in his certiorari application, the majority itself notes that it is "cognizant of our inherent power to notice plain

---

**10.** As noted, contrary to the majority, and to be accurate, Fields did raise, and the ICA implicitly acknowledges, what would be deemed an infringement of Fields' substantial rights. With all due respect, to say that Fields does not show that his substantial rights have been affected when he was convicted based on the admission of incompetent hearsay evidence, and sentenced to proba-

tion for two years and imprisonment for two days, is disingenuous and raises the question of how this court could ever find an infringement of substantial rights significant enough to find plain error. As noted, Fields plainly asserted that his substantial rights were violated by the admission of Staggs' hearsay statement.

error *sua sponte*[,]" majority opinion at 528, 168 P.3d at 980 (citations omitted), a power the majority recently exercised in *State v. Ruggiero,* 114 Hawai'i 227, 160 P.3d 703 (2007), and this court has many times employed, *see In re Doe,* 102 Hawai'i 75, 87, 73 P.3d 29, 41 (2003) *State v. McGriff,* 76 Hawai'i 148, 155, 871 P.2d 782, 789 (1994) (citing *State v. Grindles,* 70 Haw. 528, 530, 777 P.2d 1187, 1189 (1989) ("the power to *sua sponte* notice 'plain errors or defects affecting substantial rights' clearly resides in this court" (quoting *State v. Hernandez,* 61 Haw. 475, 482, 605 P.2d 75, 79 (1980))); *State v. Iaukea,* 56 Haw. 343, 355, 537 P.2d 724, 733 (1975) (This court "ha[s] the power, sua sponte, to notice plain errors or defects in the record affecting substantial rights not properly brought to the attention of the trial judge or raised on appeal" (citing *State v. Yoshino,* 50 Haw. 287, 289, 439 P.2d 666, 668 (1968); *State v. Cummings,* 49 Haw. 522, 528, 423 P.2d 438, 442 (1967); *State v. Ruiz,* 49 Haw. 504, 507, 421 P.2d 305, 308 (1966))). As *Wharton's* notes, "hearsay evidence which has been admitted without objection may properly be considered in determining the facts, *unless* its admission constituted plain error." Barbara E. Bergman & Nancy Hollander, *Wharton's Criminal Evidence* § 6:9 (15th ed.1998) (emphasis added). Thus, inadmissible hearsay admitted without objection is always subject to the plain error standard. The majority's discussion of whether the right to a fair trial was waived, then, is irrelevant to the discussion of plain error.

### VII.

This court has recognized plain error where the admission of inadmissible hearsay evidence violates the defendant's right to a fair trial.[11] *See Pastushin,* 58 Haw. at 302, 568 P.2d at 506. In *Pastushin,* the defendant, Eugene Pastushin (Pastushin), was indicted with co-defendant Henry Cho Chu (Chu) for promotion of prostitution in the second degree. The two were tried together. *Id.* at 300, 568 P.2d at 505. Chu "did not testify at trial [but his] statement to the police directly and pointedly implicated [Pastushin] in the commission of the offense charged." *Id.* This court concluded that "Chu's oral statement to the police implicated himself as well as the defendant. *Id.* at 303, 568 P.2d at 506. It was competent evidence against Chu, but it was inadmissible against [Pastushin]" and "was highly prejudicial to [Pastushin's] cause." *Id.* Further "[i]t was Chu's statement, more than any other evidence, which established before the jury that [Pastushin] ... was 'advancing and profiting' from prostitution." *Id.* at 303, 568 P.2d at 506–07. This court held that, because "[t]he error in this case was not harmless[,] it must be reversed and remanded for a new trial." *Id.*

Similarly, the statement at issue in the instant case "was not harmless."[12] *See* HRPP Rule 52(a) (stating that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded"). Staggs' hearsay statement was the primary evidence used to convict Fields in this case. The court expressly relied on Staggs' statement to establish that Petitioner abused Staggs. In fact, the statement Officer Ke attributed to Staggs was the *only* evidence which identified Petitioner as having abused Staggs.

Similar to the case in *Pastushin,* it was Staggs' "statement, more than any other evidence ... which established" Fields' abuse conviction. 58 Haw. at 303, 568 P.2d at 506–07. Because of the court's express reliance on Staggs' statements, there was no reasonable possibility that the hearsay statements did not contribute to Petitioner's conviction. The hearsay statements related by Officer Ke directly implicated Petitioner and, thus, adversely affected Petitioner's substantial right to a fair trial. *See id.*

---

**11.** The majority ignores this precedent discussing the plain error analysis of inadmissible hearsay and instead, only states without explanation that exercising plain error is not "appropriate." Majority opinion at 529, 168 P.3d at 981.

**12.** It should be noted that Respondent does not argue the admission of *Staggs'* hearsay statement should be deemed harmless. On the other hand, Respondent argued in its Supplemental Answering Brief that "the error in admitting *Richards'* statement was harmless beyond a reasonable doubt." (Emphasis added.)

Cases from other jurisdictions find plain error where inadmissible hearsay affects a defendant's substantial rights, including the right to a fair trial. *See United States v. Tellier,* 83 F.3d 578 (2d Cir.1996) (finding plain error where inadmissible hearsay was admitted despite a lack of objection and reversing convictions of the defendant); *United States v. Williams,* 133 F.3d 1048, 1051–53 (7th Cir.1998) (finding it was plain error to admit [FBI] agent's hearsay testimony relating confidential informant's identification of defendant as suspect).; *United States v. Holmquist,* 36 F.3d 154 (1st Cir.1994) (explaining that under federal rules, objection to evidentiary proffer had to be reasonably specific in order to preserve right to appellate review, unless so-called hearsay evidence rose to level of plain error which it did not); *Smith v. United States,* 343 F.2d 539 (5th Cir.1965) (explaining that a jury may consider hearsay evidence absent a timely objection but may nonetheless reverse if there has been plain error affecting the substantial rights of the accused and determining that even without hearsay statement, remaining evidence was sufficient to justify the verdict)

## VIII.

### A.

With all due respect, in its most fundamental error, the ICA rested its rejection of plain error application on "the trial court's duty, if any, to control the admission of hearsay testimony into evidence, *in the absence of an objection by defendant's trial counsel.*" *Fields,* at ——, —— P.3d at ——, 2005 WL 1274539, at *18 (emphasis added). The ICA stated, without citing authority, that "[g]enerally, at trial, absent an objection by the defendant to the hearsay testimony offered by the prosecution, the court lacks sufficient

information to decide that its failure to preclude admission of the hearsay testimony into evidence, or to strike it after it has been admitted into evidence, is a plain error." *Id.* It concluded that "the trial court did not violate a duty" and, thus, "[t]here being no error [by the trial court], there is no plain error." *Fields,* at ——, —— P.3d at ——, 2005 WL 1274539, at *19.

In doing so it wrongly proposes that because there was no objection, the court violated no duty and the violation of such a duty is the prerequisite for finding plain error. Under this incorrect reasoning the entire concept of plain error as established under HRPP Rule 52 would be abrogated. For it is the *very fact* that defense counsel did *not* object that invokes the plain error rule. If the governing principle, as the ICA posits, is that counsel should have made an objection, the plain error rule obviously would be nullified. This proposition is flawed and contravenes applicable case law. *See e.g., Sanchez,* 82 Hawai'i at 525, 923 P.2d at 942; *Fox,* 70 Haw. at 56, 760 P.2d at 676; *State v. Domingo,* 69 Haw. 68, 733 P.2d 690 (1987); *see also State v. Page,* 197 Or.App. 72, 104 P.3d 616 (2005); *Virgil v. State,* 84 Wis.2d 166, 267 N.W.2d 852 (1978).

### B.

Secondly, the ICA and the majority assert, "[t]his court's power to deal with plain error is one to be exercised sparingly and with caution because the ... rule represents a departure from ... the adversary system[.]" *Fields,* at ——, —— P.3d at ——, 2005 WL 1274539, at *18 (quoting *State v. Vanstory,* 91 Hawai'i 33, 42, 979 P.2d 1059, 1068 (1999) (internal quotation marks and other citation omitted)); Majority opinion at 529, 168 P.3d at 981 (citations omitted).[13]

---

**13.** The cases cited by the majority for this proposition *all* recognize that plain error may be recognized even though they were never brought to the attention of the court and applied plain error in the particular case. *See State v. Rodrigues,* 113 Hawai'i 41, 47, 147 P.3d 825, 831 (2006) ("[w]e may recognize plain error when the error committed affects the substantial rights of the defendant" (citation omitted)); *State v. Aplaca,* 96 Hawai'i 17, 22, 25 P.3d 792, 797 (2001) ("We may recognize plain error when the error committed affects substantial rights of the defen-

dant." (Citation omitted.)); *Kelekolio,* 74 Haw. at 515, 849 P.2d at 75 ("Nevertheless, where plain error has been committed and substantial rights have been affected thereby, the error may be noticed even though it was not brought to the attention of the trial court." (Citation omitted.)).

Further, the majority's deviation into federal authority is misplaced inasmuch as the majority ignores the overwhelming precedent from our own jurisdiction. Majority opinion at 529, 168 P.3d at 981 (citing *Penson v. Ohio,* 488 U.S. 75,

However, *Vanstory* recognized that "[i]f the substantial rights of the defendant have been affected adversely, the error will be deemed plain error." 91 Hawai'i at 42, 979 P.2d at 1068 (citing *State v. Sawyer*, 88 Hawai'i 325, 330, 966 P.2d 637, 642 (1998); *Pinero*, 75 Haw. at 291–92, 859 P.2d at 1374). Moreover, as this court noted in *Nichols*, although the recognition of plain error is discretionary, *there has not been "any reported criminal case in which this court has found plain error but refused to reverse in the exercise of discretion"* and "although such discretion may exist in the federal courts, [this court] ha[s] never employed the four-pronged plain error standard of review set forth in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 ... (1993)[.]" 111 Hawai'i at 335, 141 P.3d at 982 (emphasis added).

Indeed courts of this jurisdiction have found plain error in numerous cases *in which defense counsel failed to object to the admission of evidence. See e.g., Pastushin*, 58 Haw. at 303, 568 P.2d at 506–07 (concluding that the case must be reversed and remanded because "[t]he error in this case was not harmless"); *Sanchez*, 82 Hawai'i at 525, 923 P.2d at 942 (concluding that "[i]t was plain error to allow the probation officer's testimony to establish [the defendant's] prior felony conviction where the State had not shown the unavailability of [the defendant's] prior conviction judgment"); *Fox*, 70 Haw. at 57, 760 P.2d at 676 (concluding that there was plain error where statements made by defense counsel to prosecutor during plea negotiations were erroneously admitted at trial in violation of HRE Rule 410, *even though proper objection was not made*, because such error "seriously affected the fairness of the proceedings"); *Domingo*, 69 Haw. at 68, 733

P.2d at 690 (holding that admission of the testimony of mental health examiner for purpose of attacking the defendant's credibility at trial was forbidden by statute, and constituted plain error, *despite the lack of an objection*).[14] Under the circumstances of this case, declining to recognize plain error is an arbitrary rejection of that doctrine.

## C.

The ICA's third consideration was that "'[m]atters presumably within the judgment of counsel, like *trial strategy*, will rarely be second-guessed by judicial hindsight.'" *Fields*, at ——, —— P.3d at ——, 2005 WL 1274539, at *18 (quoting *State v. Richie*, 88 Hawai'i 19, 39–40, 960 P.2d 1227, 1247–48 (1998) (emphasis in original)). Such a factor is simply not germane to the facts of this case.

In *Richie*, this court considered the defendant's argument that defense counsel erred in not calling four witnesses at trial. 88 Hawai'i at 40, 960 P.2d at 1248. The *Richie* court relied on the American Bar Association (ABA) Defense Function Standards which said that "[s]trategic and tactical decisions should be made by defense counsel after consultation with the client where feasible and appropriate" and that "[s]uch decisions include what witnesses to call, whether and how to conduct cross-examination, what jurors to accept or strike, what trial motions should be made, and what evidence should be introduced." *Id.* (quoting ABA, Standards for Criminal Justice–Prosecution Function and Defense Function, Standard 4–5.2 (3d ed.1993)). Thus, the *Richie* court concluded that "the calling of witnesses is generally a

84, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988); *Hines v. United States*, 971 F.2d 506, 509 (10th Cir.1992); *Ford v. United States*, 533 A.2d 617, 624 (D.C.1987); *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983)). *See supra* discussion reiterating that there is no distinction in the plain error analysis between plain error raised on appeal and plain error raised *sua sponte*. The standard, again, is whether the substantial rights of a defendant have been affected.

**14.** Obviously, other courts have concluded that there was plain error in admitting evidence in

violation of a defendant's confrontation rights, *despite defense counsel's failure to object. See e.g., Page*, 104 P.3d at 616 (holding that the erroneous admission of co-defendant's testimonial, hearsay statement without granting the defendant an opportunity to cross-examine violated the confrontation clause, and was plain error despite no objection); *Virgil*, 267 N.W.2d at 865 (holding that the erroneous admission of evidence of the co-defendant's out-of-court statement pursuant to the hearsay rule but in violation of the confrontation clause constituted plain error, despite the lack of an objection).

strategic decision for defense counsel." *Id.* at 39, 960 P.2d at 1247.

However, any supposed strategy or tactical decision on the part of defense counsel would not excuse the failure to object to Staggs' hearsay statement admitted via Officer Ke's testimony. *See id.* at 40, 960 P.2d at 1248. Based on the facts recounted, "the record on appeal is sufficiently developed to establish that 'there were no legitimate 'tactical' bases upon which defense counsel's omissions could have conceivably have been predicated.'" *State v. Poaipuni,* 98 Hawai'i 387, 395, 49 P.3d 353, 361 (2002) (citing *State v. Pacheco,* 96 Hawai'i 83, 102, 26 P.3d 572, 591 (2001)).

The majority fails to advance any legitimate tactical reasons for why an objection would not be made to Staggs' hearsay statement. Indeed, *counsel for Petitioner was also trial and appellate counsel. In raising plain error counsel has in effect conceded that failure to make the objection prejudiced Fields—an implicit concession that no strategic reason existed for the failure to object.* Inasmuch as no rational basis exists to support the view that the failure to object was a matter of trial strategy but, rather, was an omission that affected Petitioner's substantial rights, plain error must be recognized.

### IX.

The ICA's fourth consideration indicated that "[w]hen defendant's trial counsel does not exercise his right to object to inadmissible hearsay evidence offered by the prosecution, and the record is unclear or void as to the basis for counsel's actions or inactions, counsel shall be given the opportunity to explain his or her actions or inactions in an appropriate proceeding before the trial court judge" and that "such an opportunity to explain is best provided in a post-conviction proceeding initiated by the defendant, pursuant to HRPP Rule 40[.]" *Fields,* at ——, —— P.3d at ——, 2005 WL 1274539, at *18

(internal quotation marks, brackets, and citation omitted).

It bears repeating that in rejecting the application of plain error, the ICA fundamentally misapplied the plain error doctrine by requiring as a prerequisite thereto that counsel object to the inadmissible evidence. *See* discussion *supra.* Accordingly, the ICA's conclusion that a HRPP Rule 40 proceeding is the "best" alternative to applying plain error is inherently wrong. Predictably this contention is not supported by any authority and is contrary to this court's precedent. *See State v. Silva,* 75 Haw. 419, 864 P.2d 583 (1993). Despite this, the majority concludes that because Petitioner "retains the ability to vindicate his rights by filing a petition, pursuant to [HRPP] Rule 40, asserting a claim of ineffective assistance of counsel[,]" it will not recognize plain error. Majority opinion at 529, 168 P.3d at 981.

However, HRPP Rule 40(a) plainly states that *a post-conviction proceeding "shall not be construed to limit the availability of remedies[, (i.e., the recognition of plain error),] . . . on direct appeal."* [15] (Emphasis added.) Thus, the majority's refusal to address the issue of Petitioner's substantial rights directly violates the express terms of HRPP Rule 40. But most tellingly, as noted above, it is trial and appellate counsel who, on the petition for certiorari argues that the failure to object to the hearsay statement was prejudicial error and, hence, it follows—counsel does not justify the failure to object as resting on a strategic reason.

### X.

*To be clear, the plain error that this court should recognize was the admission of the inadmissible hearsay statement Officer Ke attributed to Staggs which was, as noted supra, the only evidence that identified Fields as having abused Staggs. Fields,* at ——, —— P.3d at ——, 2005 WL 1274539 *16. Addressing that issue resolves the case.

---

15. In greater context HRPP Rule 40(a) states:

The post-conviction proceeding established by this rule shall encompass all common law and statutory procedures for the same purpose, including habeas corpus and coram nobis; *provided that the foregoing shall not be con-*

*strued to limit the availability of remedies* in the trial court or *on direct appeal.* Said proceeding shall be applicable to judgments of conviction and to custody based on judgment of conviction. . . .
(Emphasis added.)

The HRPP Rule 52(b) standard is the only test which authorizes this court to recognize plain error and it states that "plain errors or defects affecting substantial rights may be noticed[.]" Indeed, the cases cited by the majority affirm what this dissent has noted repeatedly, that plain error is to be recognized where there is an error that affects the substantial rights of a defendant, as this court has done. *See Nichols*, 111 Hawai'i at 335, 141 P.3d at 982.

### XI.

The majority opines that "Fields retains the ability to vindicate his rights by filing a petition, pursuant to HRPP Rule 40, asserting a claim of ineffective assistance of counsel." Majority opinion at 529, 168 P.3d at 981. *The defect in this reasoning is that, irrespective of the merits of an ineffective assistance claim, a determination that admission of Staggs' statement violated Fields' right to a fair trial has in effect been made because the inadmissibility of Staggs' statement has already been decided.* The ICA has already ruled Staggs' statement was inadmissible, it is plainly inadmissible as a matter of law, and further delay to reiterate this fact is unwarranted. Hence, there is no reason to delay that determination to a Rule 40 proceeding. *See Silva*, 75 Haw. at 437, 864 P.2d at 592, discussed *supra*. The majority makes no argument that contradicts this point, admitting that the statement is hearsay, and, as noted *supra*, even seemingly acknowledging that admission of the statement was in error.

Additionally, to reiterate, a HRPP Rule 40 proceeding is unnecessary because the lack of any strategic reason for not objecting has in effect been conceded by defense counsel on appeal and no obvious tactical advantage appears for failing to object. *See Poaipuni*, 98 Hawai'i at 395, 49 P.3d at 361. Fields has yet to make an ineffective assistance of counsel claim, and, hence, there is no just reason to postpone the resolution of the plain error. *See Fields*, at ——, —— P.3d at ——, 2005 WL 1274539, at *16 (determining that the "hearsay statements . . . could have been validly objected to and excluded from evidence, pursuant to the HRE").

### XII.

Moreover, even if the express language of Rule 40 is incorrectly ignored by the ICA and the majority, the fact that Fields may have an opportunity to argue ineffective assistance of counsel in a subsequent HRPP Rule 40 petition does not cure the fact that error has already occurred and Petitioner's substantial rights have been adversely affected. *See* HRPP Rule 52(b). The availability of a separate proceeding in which to challenge a conviction on a confirmed error does not justify declining to recognize plain error *now*. In fact, the ICA and the majority do not cite to any authority as to this point. For as this court has repeatedly recognized, "the decision to take notice of plain error" rests on "errors that *'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'*" *Fox*, 70 Haw. at 56, 760 P.2d at 676 (quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936)) (emphasis added). Staggs' hearsay statement violated Petitioner's substantial right to a fair trial and provided the basis for Petitioner's conviction; hence, "the fairness . . . of the judicial proceeding" was seriously affected. *Id.* (citation omitted). Again, this court has never failed to apply the plain error doctrine where the error has affected substantial rights. *See Nichols*, 111 Hawai'i at 335, 141 P.3d at 982. The failure to do so here calls into question the circumstances which will justify doing so, aside from the obvious but undifferentiating fact that a majority of the court must take notice of such error.

### XIII.

Assuming, *arguendo*, that an issue exists as to ineffective assistance of counsel, as the majority and ICA insist, *Silva* governs. In *Silva*, this court rejected the proposition proffered by the prosecution that "a criminal defendant may not assert ineffective assistance of counsel for the first time on appeal" and that "the question of ineffective assistance of counsel requires an independent hearing" through the vehicle of a HRPP Rule 40 proceeding. 75 Haw. at 434, 864 P.2d at 591. *Silva* observed that "convicted defen-

dants ... almost always have multiple appealable issues in addition to an ineffective assistance of counsel claim." *Id.* at 437, 864 P.2d at 592.

Accordingly, in that case, this court rejected the prosecution's view that "a convicted defendant could either (1)allow the time for appeal to run and forgo all other appealable claims, if any, before filing a [HRPP] Rule 40 petition, or (2)appeal all issues, except for the ineffective assistance of counsel claim, then bring a [HRPP] Rule 40 petition when the appeal process is terminated." *Id.* The second prosecution option rejected in *Silva* is apparently resurrected by the ICA and the majority.

With respect to that option, *Silva* said that "*requiring a defendant to wait until the appeal process is completed before raising a [HRPP] Rule 40 ineffective assistance claim would result in a waste of attorneys' fees and costs as well as an unnecessary expenditure of our limited judicial resources*[.]" *Id.* (emphasis added). *Silva* explained that "under the prosecution's suggested general rule, *a defendant's post-conviction claims would always be divided.*" *Id.* at 437–38, 864 P.2d at 592 (emphasis added).

Turning again to the facts of this case, it must be observed that "[t]o prevail on [an] ineffective assistance of counsel claim, [a defendant] must establish that his 'trial counsel's performance was not objectively reasonable—*i.e.*, that it was not within the range of competence demanded of attorneys in criminal cases.'" *Poaipuni*, 98 Hawai'i at 394, 49 P.3d at 360 (quoting *Briones v. State*, 74 Haw. 442, 462, 848 P.2d 966, 976 (internal quotation marks, other citation, and brackets omitted)). Consequently, there must be "a specific error or omission that 'resulted in either the withdrawal or substantial impairment of a potentially meritorious defense,' which includes 'the assertion of [his] constitutional rights[,]'" *id.* (quoting *Briones*, 74 Haw. at 462, 848 P.2d at 976 (other citation omitted)), and that "there were no legitimate 'tactical' bases upon which defense counsel's

omissions could conceivable have been predicated[,]" *id.* at 395, 49 P.3d at 361. To reiterate, the existence of such an error or omission has already been decided by the ICA,[16] *see Fields*, at ——, —— P.3d at ——, 2005 WL 1274539, at *19 (stating "without prejudice to [Petitioner's] right to ... a ... proceeding pursuant to HRPP Rule 40, that his *trial counsel's failure to object to the evidence of [Staggs'] statement ... [was] the ineffective assistance of his trial counsel*" (emphasis added), and confirmed by the majority, *see* majority opinion at 529, 168 P.3d at 981 ("Fields retains the ability to vindicate his rights by filing a petition ... asserting a claim of ineffective assistance of counsel").

### XIV.

Further, as noted *supra*, it was the ICA and the majority affirming it, that invite an ineffective assistance claim. If, as the ICA and majority maintain—there is a claim for ineffective assistance of counsel—*Silva* and *Poaipuni* control because there is no trial strategy that would merit the admission of Staggs' statement as the ICA itself noted, the defense itself has acknowledged that the statement was inadmissible hearsay, stating expressly that "the family court relied upon inadmissible hearsay[,]"; the existence of such an error or omission has already been decided by the ICA, *see Fields*, at ——, ——, —— P.3d at ——, ——, 2005 WL 1274539, at *17, 19 (stating "without prejudice to [Petitioner's] right to ... a ... proceeding pursuant to HRPP Rule 40, ... his *trial counsel's failure to object to the evidence of [Staggs'] statement ... [was] the ineffective assistance of his trial counsel*" (emphasis added)), and confirmed by the majority, *see* majority opinion at 529, 168 P.3d at 981 (*determining that in a subsequent Rule 40 proceeding Petitioner may challenge Staggs' out-of-court statement "asserting a claim of ineffective assistance of counsel"* (emphasis added)). Thus, the matter should

---

16. Again, as the ICA plainly stated, "if counsel for [Petitioner] had objected to the introduction of [Staggs'] prior testimonial statement into evidence on the ground that it violated the HRE, the objection would have had merit and *could not*

have been validly denied." *Fields*, at ——, —— P.3d at ——, 2005 WL 1274539, at *16 (emphasis added). Thus, it is obvious that the ICA determined that defense counsel's failure to object was error.

be decided here. To postpone that determination would be an egregious violation of HRPP Rule 52. *See Silva* discussion *infra.*

## XV.

Also, the ICA and the majority mistakenly assume that defense counsel is required to have an opportunity to explain its failure to object. *See Fields,* at ——, —— P.3d at ——, 2005 WL 1274539, at *18. In *Silva,* this court said that whether "an ineffective assistance of counsel claim requires an independent hearing to determine the relevant facts *presupposes that the record on appeal is insufficient to support a ruling* of ineffective assistance of counsel." 75 Haw. at 438, 864 P.2d at 592 (emphasis added). Hence, this court has said that "in some instances, the ineffective assistance of counsel may be so obvious from the record that a [HRPP] Rule 40 proceeding would serve no purpose except to delay the inevitable and expend resources unnecessarily." *Id.* at 438–39, 864 P.2d at 592 (citing *State v. Aplaca,* 74 Haw. 54, 837 P.2d 1298 (1992)).

As discussed *supra,* in light of the ICA's position and Petitioner's briefs, "the record on appeal is sufficiently developed to establish that 'there were no legitimate 'tactical' bases upon which defense counsel's omissions could conceivably have been predicated.'" *Poaipuni,* 98 Hawai'i at 395, 49 P.3d at 361 (quoting *Pacheco,* 96 Hawai'i at 102, 26 P.3d at 591). As a result, a HRPP Rule 40 proceeding would serve no meritorious purpose.

Rather, the admonition that "piecemeal disposition of a defendant's post-conviction claim[ ] should be avoided whenever possible," *Silva,* 75 Haw. at 438, 864 P.2d at 592, applies.[17]

But most significantly, allowing Petitioner to contest his trial counsel's failure to object in a subsequent HRPP Rule 40 petition, majority opinion at 529, 168 P.3d at 981, is an empty gesture. For despite advocating the availability of a HRPP Rule 40 proceeding, the majority states "we have *already determined* that the admission of Staggs' prior out-of-court statement *did not violate Fields' right of confrontation*[.]" Majority opinion at 529, 168 P.3d at 981 (emphases added). Additionally, a HRPP Rule 40 proceeding would be purposeless since the majority in effect has indicated the statement is admissible in the face of a plain error challenge.[18]

## XVI.

Thus, it is difficult to comprehend the majority's position inasmuch as it appears to agree there was error in admitting Staggs' hearsay statement, *see, e.g.,* majority opinion at 529 n.17, 168 P.3d at 981 n.17 (concluding that "Fields' trial counsel's failure to object will require . . . a great deal of explanation"), but expends much discussion explaining why plain error is to be "exercised sparingly[,]" majority opinion at 529, 168 P.3d at 981 (quoting *Rodrigues,* 113 Hawai'i at 47, 147 P.3d at 831 (other citations omitted)). The

---

17. The majority maintains that *Poaipuni* is distinguishable because in that case "the defendant raised and argued the ineffective assistance of counsel claim on appeal" and because "no such argument was asserted [here], . . . there may be other portions of the trial court record that were not made part of the record on appeal because they were not relevant to the points of error actually presented." Majority opinion at 529 n.17, 168 P.3d at 981 n.17 (citing *Poaipuni,* 98 Hawai'i at 388, 49 P.3d at 354).

As in *Silva,* however, the record is sufficiently developed to make a determination regarding ineffective assistance because the error is clear and the Petitioner makes no pretense on appeal that the failure to object was a strategic move. *See Silva,* 75 Haw. at 438–39, 864 P.2d at 592 (stating that "in some instances, the ineffective assistance of counsel may be so obvious from the record that a [HRPP] Rule 40 proceeding would serve no purpose except to delay the inevitable

and expend resources unnecessarily" (citation omitted)).

18. Again, the ICA has already recognized that Staggs' statement was otherwise inadmissible hearsay, and the majority has affirmed the ICA. *See Fields,* at ——, —— P.3d at ——, 2005 WL 1274539, at *16 (stating that "if counsel for [Petitioner] had objected to the introduction of [Staggs'] prior testimonial statement into evidence on the ground that it violated the HRE, the objection would have had merit and could not have been validly denied"). Moreover, as noted above, the issue of ineffective assistance need not be reached and is only discussed because of the ICA's and majority's insistence that Fields' rights at trial may be vindicated via a Rule 40 proceeding. Instead, this case should be decided based on the fact that error has already occurred and Fields' substantial rights have been adversely affected. *See* HRPP Rule 52(b).

majority fails to elucidate why the error is not "plain" or, in other words, does not affect Fields' substantial rights. It maintains only, without explication, that recognizing plain error is not "*appropriate* . . . under the present circumstances." Majority opinion at 529, 168 P.3d at 981 (emphasis added). The majority, however, does not disclose why it would be "appropriate" to postpone the issue and how delaying resolution of whether Petitioner's substantial rights were violated to a future HRPP Rule 40 proceeding could possibly be a better solution.

### XVII.

Certainly, the ICA's and majority's positions are particularly egregious in this case. The record indicates that on October 11, 2002, Petitioner was sentenced to a term of two years probation, and two days in prison with credit for time served.[19] However, mittimus was stayed pending appeal. On May 20, 2003, the court held a Proof of Compliance Hearing where Petitioner was found to be compliant. It appears the two-year term of probation has run, although it is unclear from the record whether Petitioner satisfactorily completed the term. Thus, this case has been pending to this point for five years.

Obviously, a HRPP Rule 40 proceeding would needlessly prolong the length of court proceedings. Following judgment entered by this court the steps to begin the new proceeding would have to be taken. Petitioner was represented by the public defender at the court and on appeal to the ICA, as well as on certiorari to this court. Under the majority disposition a new attorney would have to be found and appointed because of a conflict within the public defender's office brought about by the ineffective assistance comments by both the ICA and the majority. After new counsel is appointed, he or she would have to become familiar with the facts of this case and the proceedings that have transpired over the past five years.

Then the new attorney would be required to institute a proceeding for post-conviction relief "by filing a petition with the clerk of the court in which the conviction took place." HRPP Rule 40(b). The State of Hawai'i would be named as the respondent and would have 30 days to "answer or otherwise plead[.]" HRPP Rule 40(d). As the case is cast by the ICA and majority, a hearing would be necessary to receive the testimony of trial counsel on the ineffective assistance claim. Following the hearing the court will have to "state its findings of fact and conclusions of law[,]" HRPP Rule 40(g)(3), and render a judgment on the petition.

After the judgment is rendered, the parties are afforded an appeal "in accordance with Rule 4(b) of the Hawai'i Rules of Appellate Procedure." HRPP Rule 40(h). If an appeal is taken, the case will proceed again through the entire process and could plausibly end up once more before this court for review upon a certiorari application. Plainly, as in *Silva*, a HRPP Rule 40 proceeding would "serve no purpose except to delay the inevitable" and would "result in a waste of attorney's fees and costs as well as an unnecessary expenditure of our limited judicial resources[.]" *Silva*, 75 Haw. at 437, 438–39, 864 P.2d at 592 (citation omitted). The majority and ICA ignore this anomalous consequence.

### XVIII.

In this instance, the majority "stand[s] idly by though clear error affecting substantial rights of the defendant was committed. Under the circumstances, an invocation of the plain error rule would be the better part of discretion." *Fox*, 70 Haw. at 56, 760 P.2d at 676. This case must be reversed because of plain error in the admission of Staggs' and Richards' hearsay statements and I would so hold.

19. The court's "Judgment; Notice of Entry (For Probation Sentence)," dated October 8, 2002, but filed in the court on October 11, 2002, indicates the following: "Judgment and Sentence of the Court: Probation"; "Term Two (2) Years." (Capitalization omitted.) In addition to the usual terms and conditions of probation, the court also imposed special conditions. At the sentencing hearing on October 8, 2002, Petitioner filed in open court, a "Motion to Stay Mittimus Pending Appeal," in which he requested "an order granting a stay of incarceration pending appeal[,]" pursuant to HRS § 804–4. On October 8, 2002, his mittimus was stayed pending appeal.

## XIX.

In sum, this case should be disposed of on the foregoing analysis. However, inasmuch as the majority discusses the confrontation clause, I join that discussion and would hold that there was a violation of Petitioner's confrontation rights. I respectfully disagree with the majority because (1) the majority relies on case law that treats a witness as "available" even if that witness cannot remember the events described in the hearsay statement sought to be introduced, (2) under Hawai'i case law a witness' inability to recall events described in the hearsay statement renders the witness "unavailable" and the statement inadmissible, (3) the majority's approach thus conflicts with Hawai'i case law, (4) the majority's retention of the proposition stated in (2) in "non-testimonial" cases but not in "testimonial" cases undermines the twin objectives of maintaining "the integrity of the fact finding process" and "ensur[ing] fairness to defendants[,]" *Sua II,* 92 Hawai'i at 71, 987 P.2d at 969 (internal quotation marks and citation omitted), served by the unavailability requirement under the Hawai'i Constitution, and (5) in this case Staggs' inability to recall the events in the hearsay statement renders her unavailable to that extent and, therefore, her statement inadmissible under the Hawai'i Constitution.

## XX.

Some examination of the evolution of our confrontation case law and of *Crawford* is necessary. The Sixth Amendment Confrontation Clause requires that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The text of article I, section 14 of the Hawai'i Constitution is nearly iden-

tical to the Sixth Amendment Clause. In relevant part, article I, section 14 provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against the accused[.]"

Our own confrontation clause jurisprudence, prior to the instant case, stemmed from the analysis in *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *Roberts,* the Court held that introduction at trial of preliminary hearing testimony from a witness who did not appear at trial was constitutionally permissible where the witness' testimony was tested by questioning that was equivalent to cross-examination and where the circumstances established that the witness was unavailable "in the constitutional sense" from appearing at trial. *Id.* at 75, 100 S.Ct. 2531. The *Roberts* test "condition[ed] admissibility of all hearsay evidence on whether it [fell] under a 'firmly rooted hearsay exception' or [bore] 'particularized guarantees of trustworthiness.'" *Crawford,* 541 U.S. at 60, 124 S.Ct. 1354 (citing *Roberts,* 448 U.S at 66, 100 S.Ct. 2531).

In *Sua I,* the ICA adopted the approach by the Supreme Court with respect to what in effect were "testimonial" statements as later defined in *Crawford.*[20] 92 Hawai'i at 86 n. 13, 987 P.2d at 984 n. 13. The ICA held, *inter alia,* that admission at trial of the grand jury testimony of a witness who had no memory of the statement violated the confrontation clause. *Id.* at 87, 987 P.2d at 985. The ICA reasoned that the witness's "grand jury testimony closely resembled a deposition or ex parte affidavit of the sort condemned in *Mattox[ v. United States],* 156 U.S. [237,] 242–43, 15 S.Ct. 337 [39 L.Ed. 409 (1895) ]." *Id.* at 89, 987 P.2d at 987.[21] It

---

**20.** The Court further explained the difference between testimonial and nontestimonial statements in *Davis v. Washington,* — U.S. at —, — – —, 126 S.Ct. 2266, 2273–74 (2006),

[Statements] are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or

prove past events potentially relevant to later criminal prosecution.

**21.** The ICA reasoned as follows:

*Obviously, [the witness,] Gooman[,] testified ex parte at the grand jury proceeding. [The d]efendant was not allowed to be present and his defense was not placed before the grand jurors. Unlike the procedure afforded at a preliminary hearing, [the d]efendant had no opportunity to question Gooman. The State was free to develop Gooman's testimony for the grand jury in any manner it chose to, free of any adver-*

was explained that the confrontation clause was intended to exclude some hearsay altogether and that cross-examination was central to the right of confrontation.

> The historical evidence leaves little doubt ... that the Clause was intended to exclude some hearsay. *See California v. Green,* 399 U.S. [149,] 156–57, and nn. 9 and 10 [90 S.Ct. 1930 (1970) ]; see also [E. Cleary,] McCormick [on Evidence] § 252, p. 606 [ (2d ed.1972) ]. Moreover, underlying policies support the same conclusion. The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that "a primary interest secured by [the provision] is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965)....
>
> ....
>
> These means of testing accuracy are so important that the absence of proper confrontation at trial "calls into question the ultimate 'integrity of the fact-finding process.'" *Chambers v. Mississippi,* 410 U.S. 284, 295 [93 S.Ct. 1038, 35 L.Ed.2d 297] (1973) (quoting *Berger v. California,* 393 U.S. 314, 315 [89 S.Ct. 540, 21 L.Ed.2d 508] (1969)).

*Id.* at 86, 987 P.2d at 984.

This court applied Hawaii's adaptation of *Roberts* in *Sua II.*[22] In the course of its opinion, *Sua II* held that a witness, although "present at trial, .... [who] was unable to recollect any substantive elements of his grand jury testimony ..., was 'unavailable' by virtue of his loss of memory." 92 Hawai'i

at 73, 987 P.2d at 971 (citation omitted). It was explained that a showing of unavailability was necessary to " 'to promote the integrity of the fact finding process and to ensure fairness to defendants." *Id.* at 71, 987 P.2d at 969 (quoting *State v. Lee,* 83 Hawai'i 267, 276, 925 P.2d 1091, 1100) (other citations omitted). Thus, this court concluded in *Sua II,* that a witness who was physically present at trial and took the stand, was nevertheless "unavailable" in the "constitutional sense" envisioned by *Roberts,* where the witness lacked memory of his alleged prior statement. *Id.*

After more than two decades of applying its *Roberts* test, the Supreme Court in *Crawford* stated that the rationales for admitting hearsay evidence under *Roberts* had not "generally been faithful to the original meaning of the Confrontation Clause." 541 U.S. at 60, 124 S.Ct. 1354. The Court decided that the *Roberts* test was both "too broad" and "too narrow." *Id.* The problem, the Court opined, was that *Roberts* "applies the same mode of analysis whether or not the hearsay consists of *ex parte* testimony" which "often results in close constitutional scrutiny in cases that are far removed from the core concerns of the Clause." *Id.* However, "the test [was also] too narrow: *It admit[ted] statements that do consist of ex parte testimony upon a mere finding of reliability. This malleable standard often fails to protect against paradigmatic confrontation violations." Id.* (emphasis added).

Relying on *Mattox,* as had *Sua I,*[23] the Court said:

> stantively preserve [the d]efendant's right of cross-examination.
>
> *Sua I,* 92 Hawai'i at 89, 987 P.2d at 987 (internal quotation marks, citations, and brackets omitted) (emphases added).

**22.** This court granted certiorari in *Sua I* and in *Sua II,* reversed the ICA in part, indicating that "[i]n contrast to the ICA's opinion, we hold that, under certain circumstances, receipt of grand jury testimony pursuant to a firmly rooted exception to the general rule against hearsay may adequately preserve a defendant's right of cross-examination." *Sua II,* 92 Hawai'i at 63, 987 P.2d at 961.

**23.** As noted before, in *Sua I,* 92 Hawai'i at 89, 987 P.2d at 987, the ICA had observed that "[the

sarial or judicial intervention. Plainly, Gooman's statement cannot be said to have been given under circumstances closely approximating those that surround the typical trial.

The confrontation clause is intended to ensure the defendant an effective means to test adverse evidence. [The d]efendant was foreclosed from cross-examining Gooman at the grand jury proceeding; hence, there was no means by which he could test the evidence presented against him. Gooman's lack of memory at trial further prevented [the d]efendant from challenging the grand jury statement.

... Our review establishes that the grand jury procedure is primarily intended to facilitate the government's interest in obtaining an indictment. *Accordingly, a hearsay exception for grand jury testimony cannot be said to sub-*

*[T]he principal evil at which the Confrontation Clause was directed was the civil-law mode of criminal procedure, and particularly its use of ex parte examinations as evidence against the accused. ...*

. . . .

The historical record also supports a second proposition: that the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination. . . .

. . . .

Our later cases conform to *Mattox's* holding that prior trial or preliminary hearing testimony is admissible only if the defendant had an adequate opportunity to cross-examine.

*Id.* at 50, 53–54, 57, 124 S.Ct. 1354 (emphasis added) (citations omitted). In line with this rationale, *Crawford,* like *Sua I,* directed that grand jury statements are inherently testimonial and not subject to cross-examination and, thus, were precluded by the Confrontation Clause. The Court said, "Whatever else the term [testimonial] covers, it applies at a minimum to prior testimony at a preliminary hearing, *before a grand jury,* or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* at 68, 124 S.Ct. 1354 (emphasis added).

It was explained that the federal Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Id.* at 61, 124 S.Ct. 1354. The Court declared that it did "not read the historical sources to say that a prior opportunity to cross-examine was merely a sufficient, rather than a necessary, condition for admissibility of testimonial statements." *Id.* at 55, 124 S.Ct. 1354. It was thus held that, to the extent that an out-of-court statement is testimonial in nature, such hearsay is admissible "[ (1) ] *only where the declarant is unavailable,* and [ (2) ] only where the defendant has had a prior opportu-

nity to cross-examine" the declarant about the statement. *Id.* at 59, 124 S.Ct. 1354 (emphasis added).

In footnote nine, the Court made apparent that when it spoke of unavailability it meant the physical absence of the witness from trial: "[W]e reiterate that, when the declarant *appears for cross-examination* at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements." *Id.* at 59 n. 9, 124 S.Ct. 1354 (emphasis added) (citing *Green,* 399 U.S. at 162, 90 S.Ct. 1930.) As discussed herein, the majority adopts this proposition as the basis for its confrontation clause approach. Majority opinion at 517–18, 168 P.3d at 969–70.

### XXI.

In the instant case it is not disputed that Staggs' hearsay statement in and of itself would be considered "testimonial" under the second aspect of *Crawford* identified above. Instead, disagreement with the majority rests on the unavailability requirement, the first aspect of the *Crawford* rule. The majority adopts the federal view of witness unavailability as described by footnote nine in *Crawford.* 541 U.S. at 59 n. 9, 124 S.Ct. 1354. However, as elucidated in the discussion following, under the broader construction that has been afforded the Hawai'i Constitution's confrontation clause, a hearsay statement is not admissible in evidence insofar as the declarant witness cannot recall the events described in the statement, even though that witness is physically present for cross-examination at trial.

### XXII.

#### A.

First, the majority relies incorrectly on case law which treats a witness as available for confrontation purposes even as to hearsay matters the witness cannot remember. The majority imposes the view of footnote nine upon the Hawai'i confrontation clause with respect to testimonial statements.

witness's] grand jury testimony closely resembled a deposition or ex parte affidavit of the sort

condemned in *Mattox,* 156 U.S. at 242–43, 15 S.Ct. 337."

The point here is that the protections guaranteed by Hawaii's confrontation clause have been fully afforded to an accused where the hearsay declarant attends trial and is cross-examined about the prior hearsay statement. The explicit right conferred by both the state and federal confrontation clauses is the right to "confront adverse witnesses."

Majority opinion at 524, 168 P.3d at 976 (quoting *Sua II*, 92 Hawai'i at 70, 987 P.2d at 968). Based upon this, the majority apparently concludes that because Staggs was physically present and testified, she was *available* pursuant to footnote nine, and the requirements of *Crawford* do not apply.[24] As a result, the majority holds Staggs' statement was admissible.[25]

Addressing the underlying premise of footnote nine, it is arguable that a witness who is present to testify but cannot recall the hearsay statement in issue can, in any meaningful way, "defend it," much less "explain it." *See supra* note 22. In this case Staggs was not able to "defend" her hearsay statement or "explain it," because she did not remember it. *See* discussion *infra*. The question is not whether a defendant is guaranteed a "successful cross-examination," *Sua II*, 92 Hawai'i at 75, 987 P.2d at 973, but whether the opportunity afforded to cross-examine a witness is a real one or not. Plainly, a witness who cannot remember cannot be cross-examined about what cannot be recollected, *cf. Clark*, 83 Hawai'i at 295, 926 P.2d at 200, *supra; Eastman*, 81 Hawai'i at 139, 913 P.2d at 65, *supra; Canady*, 80 Hawai'i at 480–81, 911 P.2d at 115–16, *supra*, and, hence, cannot be said to be confronted under the Hawai'i Constitution.

### B.

The majority also cites to several state cases interpreting *Crawford* in support of the proposition that "the federal confrontation clause is not concerned with the admission of an out-of-court statement where the declarant *appears at trial and is cross-examined.*" Majority opinion at 517, 168 P.3d at 969 (emphasis in original). These cases are immaterial insofar as they do not implicate the established jurisprudence construing our state constitution's confrontation clause. *See* discussion *infra*. The assertion that "[o]ther jurisdictions . . . have reached similar conclusions[,]" majority opinion at 517, 168 P.3d at 969, is wholly irrelevant to the basis of Petitioner's certiorari application, *which is premised on Hawaii's constitution only*. Thus, the majority's contention that "the factual dissimilarities highlighted by the dissent do nothing to undermine the underlying rationale that the *federal* confrontation clause is not concerned with the admission of out-of-court statements where the declarant appears and is cross-examined[,]" majority opinion at 523, n.11, 168 P.3d at 975 n.11 (emphasis added), is essentially beside the point.

This case is concerned with the federal clause only to the extent that it establishes a minimal requirement our own confrontation clause may not breach. Consequently, because of our broader construction, whether or not the federal confrontation clause merely requires "the declarant appear[ ] and [be] cross-examined about [his] statements at trial[,]" *Crawford*, 541 U.S. at 59 n. 9, 124 S.Ct. 1354. is not pertinent. As set out in the margin, the majority's cited cases are factually and legally distinguishable and, hence, present little relevance to the question raised in the certiorari petition.[26]

---

24. Footnote nine is somewhat ambiguous. It may be read, as the majority apparently does, that a witness' physical presence for cross-examination is sufficient to satisfy the availability requirement. On the other hand, the reference to "defend[ing] or explain[ing]" the statement could be read as a requirement that the witness be able to respond substantively to defend the statement or to explain it.

25. *Crawford* aside, as noted before, the majority does not explain how Staggs' hearsay testimony is nevertheless admissible.

26. The cases cited by the majority are also distinguishable because they involved (1) statutes expressly (a) allowing admission of hearsay where persons are "available" for cross-examination or (b) allowing hearsay testimony of minors or persons mentally retarded, and/or (2) involve cases where the witnesses did not lack memory or (3) the witness was able to respond to some of the questions, or (4) the testimonial aspect of *Crawford* was not argued.

As to (1)(a) and (b), in *State v. Corbett*, 281 Kan. 294, 130 P.3d 1179, 1189 (2006), the court

## XXIII.

In essence, the broader protection afforded by the Hawai'i Constitution[27] requires that Staggs be presumed "unavailable" in the confrontation sense, and, thus, her out-of-court statement inadmissible. Even if mere physical presence at trial is enough to make a witness "available" under *Crawford* (the underlying premise for the majority's determination that Staggs was therefore deemed subject to cross-examination), Petitioner makes his claim under the Hawai'i Constitu-

held that the trial court did not err by admitting the transcripts of the two eyewitnesses' depositions pursuant to Kansas Statutes Annotated § 60–460(a), which states that "[e]vidence of a statement which is made other than by a witness while testifying at the hearing, offered to prove the truth of the matter stated, is hearsay evidence and inadmissible except ... [where a] statement [is] previously made by a person who is present at the hearing and available for cross-examination *with respect to the statement and its subject matter*, provided the statement would be admissible if made by declarant while testifying as a witness." (Emphasis added.)

Unlike Staggs, who could not recall and, thus, defend or explain her previous out-of-court testimony, the eyewitnesses in *Corbett* did not experience such a loss of memory. In fact, the eyewitnesses testified at the defendant's trial, and were also available for extensive cross-examination, which incorporated significant portions of their deposition testimony. In *State v. Tester*, 179 Vt. 627, 895 A.2d 215, 221 (2006), unlike Staggs' testimony, the evidence in question was admitted under Vermont Rules of Evidence (VRE) Rule 804a, which allows a witness to testify to hearsay statements made by a child ten years old or younger if the statements are offered in a sexual abuse case where the child is an alleged victim, the statements were not taken in preparation for a legal proceeding, the child is available to testify, and the "time, content and circumstances of the statements provide substantial indicia of trustworthiness." VRE Rule 804a(a)(1)-(4).

In *People v. Johnson*, 363 Ill.App.3d 1060, 300 Ill.Dec. 756, 845 N.E.2d 645 (2005), the victim, a mentally disabled minor, was able to recall the alleged incidents of sexual acts that had taken place with the defendant, although he later retracted his story. Furthermore, the victim's status as mentally retarded permitted the admission of the statements under 725 Illinois Compiled Statutes Annotated 5/115–10(b)(3), which provides for the admission of hearsay evidence in prosecutions for physical or sexual acts committed against children under the age of thirteen or persons who are moderately mentally retarded. Finally, the time, content, and circumstances of the victim's hearsay statements provided sufficient safeguards of reliability inasmuch as the victim used terminology unexpected of a child of a similar age, the victim consistently repeated the statements, the statements to the respite worker and investigator were consistent with each other, and the statements were made spontaneously. *Id.*

By contrast, Staggs had a difficult time remembering the alleged assault, could not recall her conversation with Officer Ke, was not a minor or mentally disabled at the time of the alleged assault, and her statement was not spontaneous, but in response to Officer Ke's questioning.

In *Gomez v. State*, 183 S.W.3d 86, 90 (Tex.Ct. App.2005), the witness, unlike Staggs, was able to answer questions regarding specific details about the assault during three of the State's direct examinations, provide testimony regarding her living arrangements with the appellant during the first two of the State's direct examinations, be cross-examined regarding the assault during the appellant's first two cross-examinations, and undergo a lengthy questioning during the appellant's first cross-examination regarding her living arrangements with the appellant.

As to (2) and (3), in *Robinson v. State*, 271 Ga.App. 584, 610 S.E.2d 194, 196 (2005), "although [two witnesses] testified that they did not recall many of the facts surrounding the incident, both also gave responsive answers to some questions." The first witness "testified that he did not know who shot him, that he did not speak with Detective Johnson, and that he never even saw Detective Foster. [The second witness] denied telling Detective Foster anything." Staggs, however, was unable to answer questions regarding her conversation with Officer Ke.

As to (4), in *Mumphrey v. State*, 155 S.W.3d 651 (Tex.Ct.App.2005), and *Commonwealth v. Ruiz*, 442 Mass. 826, 817 N.E.2d 771 (2004), the witnesses' statements were admitted through the spontaneous utterance exception to the hearsay evidence rule. In *Ruiz*, the court found that the trial court properly admitted under the spontaneous utterance hearsay exception the daughter's statement made to the officer shortly after the daughter witnessed her father stab her mother. 817 N.E.2d at 777–78. Unlike Staggs, the defendant did not argue that the admission of the spontaneous utterance constituted a violation of the principles stated in *Crawford*. *Id.* at 778 n. 5. Therefore, *Ruiz* is not relevant.

27. Accordingly, the analysis in this opinion is grounded in article I, section 14 of the Hawai'i Constitution. *See Michigan v. Long*, 463 U.S. 1032, 1039 n. 4, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (stating that, "'where the judgment of a state court rests upon two grounds, one of which is federal and the other non-federal in character, our jurisdiction fails if the non-federal ground is independent of the federal ground and adequate to support the judgment'" (quoting *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S.Ct. 183, 80 L.Ed. 158 (1935))).

tion and not under the federal constitution. Hence, it is necessary to examine our jurisprudence concerning the "unavailability requirement."

The majority acknowledges that "we may, under the Hawai'i Constitution give broader protection than that afforded by the United States Constitution" but contends "that maxim does not justify the construction of constitutional barriers where none are appropriate." Majority opinion at 517 n.9, 168 P.3d at 969 n.9. However, because this court, as previously noted, has repeatedly held that the Hawai'i Constitution's confrontation clause affords broader protection than its federal counterpart, the majority's decision to employ the federal view of unavailability ignores past precedent. *See McGriff*, 76 Hawai'i at 156, 871 P.2d at 790 (stating that this court has "parted ways with the United States Supreme Court which has held that the sixth amendment confrontation clause does not necessitate a showing of unavailability for evidence falling within certain hearsay exceptions" (internal quotation marks, brackets, and citation omitted)); *Sua I*, 92 Hawai'i at 92, 987 P.2d at 990 (confirming "that the Hawai'i confrontation clause affords broader rights to Hawaii's citizens than the federal confrontation clause in the sixth amendment").

### A.

As noted before, this court has said that cross-examination is at the heart of the right of confrontation:

The right of confrontation affords the accused both the opportunity to challenge the credibility and veracity of the prosecution's witnesses and an occasion for the jury to weigh the demeanor of those witnesses.... *Thus, chief among the interests secured by the confrontation clause is the right to cross-examine one's accuser.*

*Sua II*, 92 Hawai'i at 70, 987 P.2d at 968 (emphasis added) (internal quotation marks and citations omitted). In previously applying *Roberts*, it was declared that the admission of hearsay is limited by the unavailability requirement:

[T]he confrontation clause restricts the range of admissible hearsay in two ways.

*First, the prosecution must either produce, or demonstrate the unavailability of, a declarant whose statement it wishes to use against a defendant.* Second, upon a showing that the witness is unavailable, only statements that bear adequate indicia of reliability are admissible.

*Id.* at 71, 987 P.2d at 969 (quoting *State v. Ortiz*, 74 Haw. 343, 361, 845 P.2d 547, 555–56 (1993)) (citing *Roberts*, 448 U.S. at 65, 100 S.Ct. 2531) (other citations omitted) (emphasis added). In adopting this test, this court chose *not* to follow the U.S. Supreme Court's abandonment of the unavailability requirement post-*Roberts*. As the ICA noted in *Sua I*:

[A]s to the rule of necessity, the Hawai'i Supreme Court has *"parted ways with the United States Supreme Court which after [Roberts,] has held that the sixth amendment confrontation clause does not necessitate a showing of unavailability for evidence falling within certain hearsay exceptions."* [McGriff], 76 Hawai'i [at] 156, 871 P.2d [at] 790 (citing *United States v. Inadi*, 475 U.S. 387, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986) (statements of a non-testifying co-conspirator may be introduced against the defendant regardless of the declarant's unavailability at trial); *White v. Illinois*, 502 U.S. 346, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (unavailability not required for excited utterance exception)).

*Sua I*, 92 Hawai'i at 86 n. 13, 987 P.2d at 987 n. 13 (emphasis added) (some parallel citations omitted). Likewise, *Sua II* declared that, "[a]s regards the first part of the *Roberts* test, we have 'remained resolute that, under the confrontation clause of the Hawai'i Constitution, a showing of the declarant's unavailability is necessary to promote the integrity of the fact finding process and to ensure fairness to defendants.'" 92 Hawai'i at 71, 987 P.2d at 969. (quoting *Lee*, 83 Hawai'i at 276, 925 P.2d at 1100 (other citations and brackets omitted)). Further, this court declared that "*'[u]navailability may be demonstrated by a showing of ... loss of memory.'*" *Id.* (quoting *Apilando*, 79 Hawai'i at 137, 900 P.2d at 144) (emphasis added) (other citation omitted) (ellipses points in

original)). Thus, even prior to *Crawford,* this court staunchly retained an unavailability requirement that encompassed lack of memory. *See Id.* at 71, 987 P.2d at 969.

### B.

Under this paradigm, to the extent that a witness cannot remember her statement, she must be considered unavailable, at least with respect to the subject of such statement. Manifestly Staggs' mere presence at trial as a witness would not enable Petitioner to cross examine her about the hearsay statement admitted through Officer Ke. Consequently, there was no opportunity for Petitioner to challenge the assertions in that statement by cross-examination.

> Thus, "the primary object of the constitutional [confrontation] provision in question *was to prevent depositions or ex parte affidavits,* such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, *not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him or her, and judge by his or her demeanor upon the stand and the manner in which he or she gives his or her testimony whether he or she is worthy of belief.*"

*State v. Faafiti,* 54 Haw. 637, 640–41, 513 P.2d 697, 700 (1973) (quoting *Mattox[,* 156 U.S. at 242–43, 15 S.Ct. 337] (emphases added) (brackets omitted)).

*Sua I,* 92 Hawai'i at 85, 987 P.2d at 983 (brackets omitted). To the extent, then, that Staggs could not remember her statement to Officer Ke, she was an "unavailable" witness as to the subject matter of the statement even though she was present to testify and subject to cross examination, *Crawford,* to the contrary, notwithstanding. Understandably, then, Petitioner observes that, "under *Sua [II]'s* definition of unavailability as including memory loss, [Staggs] was unavailable." In light of our case law, the admission of Staggs' hearsay statement thus was a violation of the Hawai'i confrontation guarantee.

### XXIV.

Throughout its opinion, the majority repeatedly attempts to draw a supposed distinction between the "*semantic* statement 'available for cross-examination' " (emphasis added) and the "constitutionally infused statement 'available as a witness for the prosecution.' " *See, e.g.,* majority opinion at 526, 168 P.3d at 978. The majority proposes distinguishing between the declarant who appears on the stand "available for cross-examination," majority opinion at 526, 168 P.3d at 978, and the declarant who is "available as a witness for the prosecution[,]" *id.,* But for confrontation clause purposes, this is a distinction without a difference inasmuch as the dual description identifies witnesses who are, in fact, one and the same. The confrontation clause guarantee, by its terms, only applies to a "witness for the prosecution" because the clause protects only the accused. It is only the defendant who "shall enjoy the right ... to be confronted with the witnesses against him." HI Const. Art. I, § 14. Because it is established that the right of cross-examination is the crux of the right of confrontation, for purposes of this case Staggs, as a "witness for the prosecution," is the same witness "available for cross examination." *See, e.g., State v. Peseti,* 101 Hawai'i 172, 180, 65 P.3d 119, 127 (2003) (stating that " '[t]he Confrontation Clause provides two types of protections for a criminal defendant: the right physically to face those who testify against him [or her], and the right to conduct cross-examination' " (quoting *Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987).)).

Further, it is curious that the majority proposes that whether a witness is "available for cross-examination" is not a matter of constitutional importance, in that we have said cross-examination is the defendant's primary means of confronting the witnesses against him. *See e.g. id.* at 180, 65 P.3d at 127 (explaining that " '[c]ross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested[ ]' " (quoting *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347

(1974) (citations omitted))). Finally, the proposed distinction drawn by the majority, with all due respect, rests on an enigmatic and incomprehensible rubric. The majority repeatedly employs this supposed distinction [28] without citation to any authority and paradoxically maintains "[i]t is not contradictory to suggest that a witness may be constitutionally 'unavailable' as a witness for the prosecution by virtue of that witness' claimed loss of memory at trial as to a prior out-of-court statement, yet simultaneously *semantically* 'available for cross-examination' as a result of the witness' physical presence on the stand." Majority opinion at 526, 168 P.3d at 978 (emphasis added). To the contrary, the former concept rests on *Sua II* and is diametrically opposed to the latter so called "semantic" availability that is incorporated in *Crawford's* footnote nine.

In this regard, and with all due respect, the majority engages in linguistic gymnastics in an effort to revise *Sua II*. The majority contends that "*Sua [II]* is consistent with that distinction, holding, *inter alia*, that (1) Gooman was constitutionally 'unavailable' as a witness for the prosecution by virtue of his loss of memory, and (2) Gooman was never-

theless *semantically* available for cross-examination by virtue of his physical presence at trial," majority opinion at 526, 168 P.3d at 978 (emphasis added); according to the majority, "thereby providing Sua with an opportunity to cross-examine Gooman," *id.* One is either "available" or "unavailable" for constitutional purposes and not "constitutionally unavailable" on the one hand and "semantically available" on the other.[29]

## XXV.

In attempting to refute the import of *Sua II*, the majority purports to rely on the following passage from that case:

> Similarly, in the present matter, Gooman made assertions before the grand jury and later claimed a loss of memory at trial. Sua was provided with the opportunity to cross-examine Gooman regarding his loss of memory. Inasmuch as Gooman's grand jury testimony *met both requirements of the Roberts test, and Sua was able to cross examine Gooman for his failure to remember the alleged incident*, we cannot say that the admission of Gooman's grand jury testimony violated Sua's right to confrontation.

28. For example, the majority argues that it is "the dissent's erroneous substitution of the phrase, 'available for cross-examination,' with the phrase 'available as a witness for the prosecution,' that creates the foregoing appearance of incompatibility[,]" majority opinion at 527, 168 P.3d at 979; and that "the dissent believes that an application of *Crawford* here mandates the conclusion that Staggs was constitutionally 'available' despite the fact that her memory loss would render her constitutionally 'unavailable' under *Sua [II,]*" majority opinion at 527, 168 P.3d at 979.

29. The majority cites to *Lee*, 83 Hawai'i at 275, 925 P.2d at 1100, for the proposition that the " 'unavailability' paradigm has alternatively been referred to as the 'rule of necessity[,]' " majority opinion at 524, 168 P.3d at 976, which "imposes a burden on the prosecution to demonstrate the necessity of introducing a prior out-of-court statement by demonstrating the 'unavailability' of the declarant at trial[,]" *id.*, but that "the constitutionally infused term, 'unavailable,' means that the declarant is unavailable as *a witness for the prosecution at trial*[,]" *id.* (emphasis in original). This distinction does not legally exist and is wholly absent in *Lee*.

The issue in *Lee* was whether the prosecution could show the declarants' unavailability which,

per HRE 804(a)(5) required that the declarant "[i]s absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance by process or other reasonable means." 83 Hawai'i at 269, 925 P.2d at 1093 (quoting HRE Rule 804(a)(5)). Because the prosecution was unable to make a good faith showing of its efforts to procure the declarants' attendance at trial, the statements were inadmissible and did not meet the "exception to the confrontation clause requirement." *Id.* at 278, 925 P.2d at 1102. The case focused on the unavailability prong because if it was shown that the declarants were unavailable, then their statements would be admissible under the "former testimony" hearsay exception. *Id.* at 276, 925 P.2d at 1100.

In this case, as the majority correctly notes, "Staggs' 'unavailability' has been conclusively established by her lack of memory[,]" majority opinion at 524, 168 P.3d at 976, thus whether unavailability was shown by Respondent is irrelevant. Further, because *Lee* was decided prior to *Crawford*, had the *Lee* court found that the declarants were unavailable, under *Crawford*, the statement would nevertheless be inadmissible unless it could be shown that the defendant had a "prior opportunity to cross-examine" the declarants. 541 U.S. at 53, 124 S.Ct. 1354.

Majority opinion at 525–26, 168 P.3d at 977–78 (quoting *Sua II*, 92 Hawai'i at 75, 987 P.2d at 973) (some emphases omitted and emphasis in original). Citing this paragraph, the majority maintains that, although Staggs claimed she could not recall the incident in question or her statements to Officer Ke, Petitioner nevertheless "had a sufficient opportunity to cross-examine Staggs about her prior out-of-court statement" because "Staggs was physically present at trial *and thereby available for cross examination.*"[30] Majority opinion at 524, 168 P.3d at 976 (emphasis added). This plainly misconstrues the passage.

### A.

First, this quote from *Sua II* had nothing to do with the unavailability requirement, but with the second prong of "reliability." Indeed, this court found that Gooman, although present at trial, *was unavailable for confrontation purposes as to his grand jury testimony because of his lack of memory.*

> The first prong of the *Roberts* test was satisfied in the present case. *Although he was present at trial, Gooman was unable to recollect any substantive elements of his grand jury testimony and, therefore, was "unavailable" by virtue of his loss of memory. See Apilando,* 79 Hawai'i at 137, 900 P.2d at 144.

*Sua II*, 92 Hawai'i at 73, 987 P.2d at 971 (emphasis added). This court then went on to the "reliability" prong of *Roberts.*

> Upon demonstrating that a witness is unavailable, under the second half of the *Roberts* test, only statements that bear "adequate indicia of reliability" may be admitted into evidence. "Reliability" may be shown in two ways. First, reliability may be inferred without more if it falls within a firmly rooted hearsay exception....
>
> Alternatively, reliability may be demonstrated upon a showing of particularized guarantees of trustworthiness.

*Id.* at 71, 987 P.2d at 969 (brackets, internal quotation marks, and citations omitted). It was determined that the reliability prong was met because Gooman's grand jury testimony fell within the hearsay exception of "recollection recorded."

> The second prong of the *Roberts* analysis, once unavailability has been demonstrated, focuses upon the reliability of the witness' statement. Inasmuch as Gooman's grand jury testimony falls within a "firmly rooted hearsay exception," as "past recollection recorded," and therefore bears an adequate indicia of reliability, *see Ortiz,* 74 Haw. at 361, 845 P.2d at 556, *the testimony should satisfy the confrontation clause.*

*Id.* at 73, 987 P.2d at 971 (emphasis added). Although it had already decided *Roberts* had been satisfied, this court went on to consider whether the testimony was also marked by "guarantees of trustworthiness," stating that, "to ensure the highest standard of protection of Sua's constitutional right of confrontation, we analyze whether Gooman's grand jury testimony bore 'particularized guarantees of trustworthiness.'" *Id.* The passage cited by the majority is found at the conclusion of the discussion of "guarantees of trustworthiness," and concerned *not unavailability, but reliability. Id.*

Thus, in *Sua II*, as noted *supra*, this court "resolute[ly]" reaffirmed the unavailability prong as encompassing memory loss and held that Gooman's grand jury testimony was admissible because it "met *both* requirements of the *Roberts* test, and[,]" in addition, in applying a second but unnecessary reliability test, stated that Sua had the opportunity to cross-examine Gooman on his failure to remember the grand jury transcript. *Id.* at 75, 987 P.2d at 973 (emphasis added). As explicitly set forth in the passage, admission of Gooman's grand jury transcript in *Sua II* hinged on the fact that Gooman's grand jury testimony "met *both* requirements of the *Roberts'* test." *Id.* (emphasis added).

Under this court's construction of *Roberts*, "unavailability" includes loss of memory.

---

30. Although at one point the majority states the question is whether Petitioner was afforded "a *meaningful* opportunity to cross-examine," majority opinion at 524, 168 P.3d at 976 (emphasis added), it rests its ultimate decision on whether the opportunity to cross-examine was "sufficient."

*See id.* Thus, in concluding that "both requirements" were met, *Sua II* confirmed that Gooman was unavailable *because of his lack of memory.* It would be inconsistent with *Sua II,* then, to conclude that despite Gooman's lack of memory, he was *available* for confrontation purposes, as the majority proposes. Likewise, based on *Sua II,* it would be contradictory to decide, as the majority does, that despite Staggs' lack of memory, she was *available* for confrontation clause purposes as to her hearsay statement.

## B.

### 1.

Second, to construe Sua's opportunity "to cross examine Gooman regarding his failure to remember," *id.* at 75, 987 P.2d at 973, as more than a circumstantial fact would render *Sua II* internally inconsistent. As noted, in *Sua II,* admission of the grand jury testimony rested on the fact that "Gooman's grand jury testimony met *both* requirements of the *Roberts'* test." *Id.* Further, as prescribed by this court, then, Gooman's lack of memory as to his grand jury testimony established the *unavailability* prong of the *Roberts* test. That conclusion must be viewed as paramount to the observation that Gooman was present and subject to cross-examination at trial, *i.e.,* available, which was unnecessary to the decision. This is because *Sua II* holds that, as to Hawaii's confrontation clause, "unavailability may be demonstrated by . . . loss of memory," *id.* at 71, 987 P.2d at 969; "both requirements" of *Roberts* were met according to *Sua II;* unavailability, one of the two said requirements, incorporates loss of memory; satisfaction of the unavailability prong was necessary for admission of the grand jury testimony; the grand jury testimony was deemed admissible by this court; hence, Gooman was deemed unavailable in fulfillment of the first requirement in *Roberts.*

### 2.

The majority opines that "[t]o interpret the conclusion that Sua was able to cross-examine Gooman regarding his failure to remember the alleged incident as a mere 'circumstantial fact,' . . . ignores *Sua's* citation of *[United States v.]Carey,* [647 A.2d 56 (D.C.1994)]," majority opinion at 526, 168 P.3d at 978, and "a fair reading of *Sua* indicates this court rejected the confrontation clause analysis on two independent and dispositive but coequal grounds: (1) both prongs of the *Roberts* test were met and (2) Sua had sufficient opportunity to cross examine[,]" majority opinion at 526, 168 P.3d at 978.

Thus, the majority appears to assert that if neither of the prongs of the *Roberts* test were met in *Sua II,* the testimony would nevertheless be admissible on the grounds that there was a purported "sufficient opportunity to cross-examine." Majority opinion at 525, 168 P.3d at 977. This assertion is wrong because it negates the necessity of following the *Roberts* test at all. As this court noted in *Sua II,* "[t]his court has *repeatedly* followed the test in *Roberts*[.]" 92 Hawai'i at 71, 987 P.2d at 969 (emphasis added). It also ignores *Sua II's* statement that *Carey* was employed to additionally confirm the holding already rendered under Hawaii's version of *Roberts;* not to supplant that holding. If considered other than a circumstantial fact, *Carey* would be contradictory of *Sua II's* formulation of *Roberts, because Gooman's memory loss made him unavailable for confrontation purposes on the same facts that Carey would deem him available.* Therefore, the purported "two independent . . . grounds," majority opinion at 526, 168 P.3d at 978, asserted by the majority cannot coexist.

The majority further cites the proposition that a "forgetful declarant [is] . . . available for cross examination." Majority opinion at 526, 168 P.3d at 978 (internal quotation marks and citation omitted). The other considerations discussed aside, *Carey* is inapplicable. First, the witness's statement, admitted as past recollection recorded, *Carey,* 647 A.2d at 58, satisfied four requirements.[31]

---

**31.** The four criteria were:

(1) the witness must have had first-hand knowledge of the event;

(2) the written statement must be an original memorandum made at or near the time of

Thus, *Carey* concluded that the declarant "was available for cross-examination by appellant's trial counsel" only because the four requirements were shown. *Id.* at 59. Unlike in *Carey*, *see supra* note 31, in the present case, Staggs has not "vouch[ed] for the accuracy" of any written memorandum of the statement. Thus *Carey* affords nothing upon which to base admission of Staggs' hearsay statement. Additionally, in its decision *Carey* relied solely on *United States v. Owens*, 484 U.S. 554, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988), which, as noted *infra*, has been disavowed by our own jurisprudence. Because the facts and the controlling precedent at play in *Carey* are indisputably distinguishable from and inapplicable to the instant case, *Carey* does not support the majority's use of it.

In sum, to preserve the integrity of the holding in *Sua II*, the unavailability analysis must necessarily rest on the proposition that, while Gooman was physically "available" because he was present at trial, he was nevertheless "unavailable" *for purposes of admitting his forgotten grand jury testimony.* Otherwise, the first factor referred to—unavailability under the *Roberts* test—could not have been satisfied. Read correctly and in context, then, the statement in *Sua II* that "Sua was provided with an opportunity to cross examine Gooman regarding his failure to remember[,]" 92 Hawai'i at 75, 987 P.2d at 973, would not support the conclusion that the admission of Staggs' out-of-court statement complied with the confrontation clause in the Hawai'i Constitution, as the majority argues.

### XXVI.

The infirmity of the majority's reading of *Sua II* is expanded by the inconsistency in the majority's decision to apply the federal version of unavailability in testimonial statements, but apparently to retain *Sua II's Roberts* test of unavailability with respect to nontestimonial statements. As was the case

with our approach post-*Roberts*, this court is not required to adhere to the U.S. Supreme Court's view of unavailability set forth in *Crawford.* *Sua II*, 92 Hawai'i at 71, 987 P.2d at 969.

As mentioned, the majority adopts the *Roberts* test in "nontestimonial" situations. Majority opinion at 527, 168 P.3d at 979; *see Davis,* —— U.S. at ——, 126 S.Ct. at 2273–74 ("Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency.") In adopting the *Roberts'* test in "nontestimonial situations," the majority preserves the unavailability paradigm as explained in *Sua II, i.e.,* a witness is unavailable for confrontation purposes if the witness lacks memory of the hearsay statement. But as to testimonial situations, the majority adopts the federal view that a witness is available for confrontation purposes even if the witness lacks memory of the hearsay statement. Because the majority saves the unavailability paradigm in *Sua II* for nontestimonial situations, the unavailability requirement logically must be applied in *testimonial* situations as well.

The Court noted in *Crawford* that "[t]he constitutional text, like the history underlying the common-law right of confrontation, ... reflects an especially acute concern with a specific type of out-of-court statement [ (testimonial statements) ]." 541 U.S. at 51, 124 S.Ct. 1354. Consequently, affording more substantial protections for nontestimonial statements as the majority does, than for testimonial statements, would be incompatible with the greater constitutional concerns regarding testimonial statements. To rule thusly would produce the anomalous result of allowing inculpatory hearsay matters into evidence despite the declarant's unavailability in testimonial situations but of requiring unavailability to be shown in nontestimonial situ-

---

the event and while the witness had a clear and accurate memory of it;
(3) the witness must lack a present recollection of the event; and
(4) the witness must vouch for the accuracy of the written memorandum.

*Mitchell v. United States*, 368 A.2d 514, 517–18 (D.C.1977) (per curiam) (citation and internal quotation marks omitted).
*Carey*, 647 A.2d at 58.

ations. A departure from *Sua II's* unavailability paradigm with respect to testimonial hearsay statements compromises the "integrity" and "fairness" of the process heretofore enveloped in our state constitution's confrontation clause.

## XXVII.

In opposition to the foregoing, the majority baldly contends that "the 'unavailability' paradigm is retained in both testimonial and nontestimonial situations, and [that] the result achieved is not anomalous." Majority opinion at 527, 168 P.3d at 979. According to the majority, "if an out-of-court statement is testimonial, it is subject to the *Crawford* analysis, which mandates that (1) the witness be *'unavailable,'*" and "[i]f an out-of-court statement is nontestimonial, it is subject to the *Roberts* analysis, requiring a showing that ... the declarant is *'unavailable[.]'*" Majority opinion at 528, 168 P.3d at 980 (emphases added). But as noted previously, although employing the same term,—"unavailable"—the majority applies the term differently in testimonial as opposed to nontestimonial situations.

For "unavailability" under *Crawford* does not apply at all if the witness is present for examination, as the majority itself asserts, *see* majority opinion at 517–18, 168 P.3d at 969–70, even if the statement is otherwise "testimonial." Contrastingly, under this court's version of the *Roberts* test, a witness is considered "unavailable" as to the relevant subject matter, even if present and subject to cross-examination, if the witness lacks memory of the subject matter. To reiterate, pursuant to *Crawford*, a declarant is unavailable only if the declarant is not present at trial to

testify.[32] But under Hawaii's version of *Roberts*, as explicated in *Sua II*, a declarant is unavailable even if present at trial to testify if the declarant is lacking in memory as to the hearsay subject matter. In fact, then, the term "unavailability" as it is employed by the majority refers to two disparate concepts. The two concepts are not identical as the majority implies but, rather, contradictory.

At its core, then, the "result achieved" by the majority, majority opinion at 528, 168 P.3d at 980, is indeed anomalous. As mentioned before, this court has said, in administering Hawaii's confrontation clause, that "the integrity of the fact finding process and ... ensur[ing] fairness to defendants" encompasses the proposition that a witness who lacks memory is unavailable in the confrontation sense. *Sua II*, 92 Hawai'i at 71, 987 P.2d at 969. In eschewing this approach, the majority abrogates a safeguard long in place in our constitution.

## XXVIII.

It must be emphasized that Staggs' hearsay statement was used as *substantive* evidence by Respondent. Our cases have recognized that mere presence and amenability to cross-examination in the context of a witness' memory loss would not satisfy confrontation interests with respect to admission of hearsay as substantive evidence. *See Eastman* and *Clark, supra,* and *infra.* This is consistent with the rationale in *Sua II.* Thus, in his opening brief, Petitioner "urges this court to reach the same conclusion as did the *Canady* court: that the complainant's alleged prior statement was not admissible because she could not be subjected to cross

---

**32.** The majority maintains that "*Crawford* does not state that a declarant is constitutionally 'unavailable' only if the declarant is not present at trial," but asserts instead that the confrontation clause "does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. *Crawford* at 541 U.S. at 60 n. 9, 124 S.Ct. 1354." Majority opinion at 527, 168 P.3d at 979. However, the majority does not explain how these two statements are distinguishable in the present case.

There is no difference between being "present at trial" and "being present at trial to defend or explain" the hearsay statement if, as the majority

would have it, one is present to defend and explain one's statement even though he or she has no recollection of ever making it. Further, on the prior page, the majority posits that in *Sua II*, "Gooman was nevertheless *semantically* available for cross-examination by virtue of his *physical presence at trial*, thereby providing Sua with an opportunity to cross-examine Gooman." Majority opinion at 526, 168 P.3d at 978 (emphases added). Thus, both *Crawford's* footnote nine and the majority's own statements lead to the conclusion that the majority believes so long as a declarant is merely present on the stand for examination, the confrontation clause is satisfied.

examination concerning the subject matter of the statement as envisioned under the rule."

In *Canady*, the ICA noted that the drafters of the HRE had rejected the *Owens* approach embraced by the majority in the instant case. An issue in *Canady* was whether a prior inconsistent hearsay statement was admissible as substantive evidence under the precondition in HRE Rule 802.1 that "the declarant is subject to cross-examination concerning the subject matter of the [declarant's] statement." 80 Hawai'i at 477, 911 P.2d at 112 (quoting HRE Rule 802.1(1)). As noted by the ICA, *Owens* had construed similar language in Federal Rules of Evidence (FRE) Rule 801(d)(1)(C). *Id.* at 478, 911 P.2d at 113.

> The Court reasoned that, under a "natural reading" of the phrase "subject to cross-examination concerning the statement" *in FRE Rule 801(d)(1), all that is required is that the witness "is placed on the stand, under oath, and responds willingly to questions," even if the witness was unable to testify about any of the events set forth in the prior statement.* [*Owens*, 484 U.S.] at 561, 108 S.Ct. at 844.

*Id.* (citing FRE Rule 801(d) (emphasis added) (brackets and internal quotations omitted)). The court however, compared the language of FRE Rule 801(d)(1) to FRE Rule 804(a)(3) "which defined an unavailable witness as a person who 'testifies to a *lack of memory of the subject matter* of the declarant's statement[,]' " *id.* at 479, 911 P.2d at 114 (brackets and footnote omitted) (emphasis added) (citing *Owens*, 484 U.S. at 562, 108 S.Ct. at 844 (quoting FRE Rule 804(a)(3))), opining that the "difference was ... that 'Congress ... chose not to make witness forgetfulness an exception to the admissibility of a out-of-court identification under FRE Rule 801(d)(1)(C)[,]' " *id.* (citing *Owens*, 484 U.S. at 562, 108 S.Ct. at 844 (quoting FRE Rule 804)(a)(3)) (brackets omitted).

In *Canady* the ICA noted that HRE Rule 804(a)(3) employs the same "subject matter" language, stating that:

> HRE Rule 804 provides:
>
> > Rule 804. Hearsay exceptions; declarant unavailable. (a) Definition of unavailability. "Unavailability as a witness"

includes situations in which the declarant:

> . . . .
>
> > (3) Testifies to a lack of memory of the subject matter of the declarant's statement.

80 Hawai'i at 479–80 n. 13, 911 P.2d at 114–15 n. 13. However, in contrast to the U.S. Supreme Court's stance in *Owens, Canady* explained that the HRE drafters decided that prior inconsistent statements might be used as substantive evidence, unless the witness could no longer recollect the events in the statement.

> The commentary to HRE Rule 802.1 explains that under the common law, prior inconsistent statements were considered hearsay and could not be used to impeach a witness. Commentary to HRE Rule 802.1 (1993). *The FRE modified the common-law rule and allowed prior inconsistent statements to be used as substantive proof of the matters asserted in the statement,* if the statement was " 'given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition.' " *Id.* (quoting FRE Rule 801(d)(1)(A)). *HRE Rule 802.1 adopted this federal exception to the common law,* and went further by adding two more exceptions to the hearsay objection for signed or adopted statements and recorded statements. *Id.*

*Id.* at 480, 911 P.2d at 115 (brackets omitted) (emphases added).

> *Sua II* corroborated this precept.
>
> Sua relies on [*Canady* ] for the assertion that "a witness that is unable to recall the events allegedly described in the prior statement does not satisfy the requirements of HRE Rule 802.1[,] and therefore the prior statement would not be admissible." In *Canady*, the complaining witness "testified that she could not recall the events that she allegedly described in the statement." 80 Hawai'i at 481, 911 P.2d at 116. *In the present matter, [the witnesses,] Kaowili and Puahi[,] denied ever having made the relevant statements to the detective. Therefore, unlike the witness in Canady, who was rendered "unavailable"*

*by virtue of her memory loss, Kaowili and Puahi were both "available" for cross-examination. Accordingly, while we agree with Sua's reading of Canady, it is inapposite to the present matter.*

92 Hawai'i at 77, 987 P.2d at 975 (emphasis added).

In *Eastman*, this court held that the complainant's prior inconsistent statement contained in a "Victim's Voluntary Statement Form" (VVSF) which she gave to a police officer "met all the requirements under HRE Rule 802.1(1)(B) for admissibility as substantive evidence of [the defendant's] guilt." 81 Hawai'i at 137, 913 P.2d at 63. Like *Canady*, *Eastman* confirmed that HRE Rule 802.1(1)(B) required, as a precondition of admissibility, that *"a witness must testify about the subject matter of his or her prior statements so that the witness is subject to cross-examination concerning the subject matter of those prior statements[.]" Id.* (emphasis added).[33] Subsequently, *Eastman* further concluded that the cross-examination of the complainant *"satisfied constitutional and trustworthiness concerns* over admitting [the complainant's] prior inconsistent statements in the VVSF into evidence, *because the cross-examination gave [the defendant] the opportunity to have [the complainant] fully explain to the trier of fact why her in-court and out-of-court statements were inconsistent, which, in turn, enabled the trier of fact to determine where the truth lay." Id.* at 139, 913 P.2d at 65 (emphases added).

Subsequently in *Clark*, this court reaffirmed that the justification for allowing the use of hearsay statements as *substantive* evidence was the opponent's ability to cross-examine the witness about the events contained in the hearsay statement, citing *Eastman*.[34] *Clark* reiterated that fulfilling the cross-examination requirement under HRE Rule 802.1 also satisfies the right to confrontation in criminal cases. *See Clark*, 83 Hawai'i at 294, 926 P.2d at 199 (stating that *"[b]ecause the witness is subject to cross-examination, the substantive use of his [or her] prior inconsistent statements does not infringe the sixth amendment confrontation rights of accused in criminal cases"* (quoting *Eastman*, 81 Hawai'i at 136, 913 P.2d at 62 (citing Commentary to HRE Rule 802.1 (citing *Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489)) (emphasis added))). *Clark* explained that "at [the defendant's] trial, the prosecution directly examined [the declarant] as a witness and elicited testimony from her regarding the circumstances surrounding the September 6, 1993 incident and her prior statement to [the detective] wherein she had stated that [the defendant] stabbed her in the chest" and, thus, the declarant was "subject to cross-examination concerning the subject matter of her prior statement to [the detective]." *Id.* at 295, 926 P.2d at 200.

In *Clark* it was ultimately held that the declarant's "cross-examination satisfied *constitutional and trustworthiness concerns* over admitting into evidence her prior inconsistent statements to [the detective] *because it afforded [the defendant] the opportunity to have [the declarant] fully explain to the trier of fact why her in-court and out-of-court statements were inconsistent, which, in turn, enabled the trier of fact to determine where the truth lay." Id.* (citing *Eastman*, 81 Hawai'i at 139, 913 P.2d at 65) (emphases added). *Eastman* and *Clark* indi-

---

**33.** As to this requirement, *Eastman* concluded that because "the prosecution directly examined [the complainant] as a witness and elicited testimony from her about her argument with [the defendant] on September 30, 1994, the events that caused her to suffer a swollen left eyebrow, and her prior statements in the VVSF alleging that [the defendant] had slapped her ..., the prosecution made [the complainant] subject to opposing counsel's cross examination concerning the subject matter of [the complainant's] prior statements in the VVSF." 81 Hawai'i at 137, 913 P.2d at 63.

**34.** *Clark* stated:

> The situation envisioned is one where the witness has testified about an event and his or her prior written statement also describes that event but is inconsistent with his or her testimony. *Since the witness can be cross-examined about the event and the statement, the trier of fact is free to credit his or her present testimony or his or her prior statement in determining where the truth lies. ...*
>
> *Eastman*, 81 Hawai'i at 136, 913 P.2d at 62 (citing to the Commentary to HRE Rule 802.1.).
> 83 Hawai'i at 294, 926 P.2d at 199 (emphasis added) (brackets omitted) (ellipsis points in original).

cate that, consistent with the *Sua II* paradigm, the requirement under HRE Rule 802.1 that the declarant be "subject to cross-examination concerning the subject matter of the statement" will satisfy the confrontation clause requirement as well.

Our jurisprudence has confirmed on evidentiary *and constitutional* grounds, the proposition that a witness who cannot recall the events related in the hearsay statement is to that extent not subject to cross-examination so as to allow the "trier of fact ... to determine[ ] where the truth lies." *Sua II,* 92 Hawai'i at 77, 987 P.2d at 975 (citations omitted); *see also Clark,* 83 Hawai'i at 295, 926 P.2d at 200; *Eastman,* 81 Hawai'i at 139, 913 P.2d at 65; *Canady,* 80 Hawai'i at 481, 911 P.2d at 116. The majority's reliance on *Owens* thus is misplaced. The majority misapprehends our case law. *Sua II* is inapposite. *Owens* was disavowed by virtue of *Canady, Eastman,* and *Clark. Carey* was only used as confirmation of the result in *Sua II* that had already been reached under Hawaii's version of *Roberts.* In adopting its position, the majority has in effect overruled *sub silento Eastman* and *Clark.*

### XXIX.

A review of the transcribed proceeding is necessary to properly assess the majority's contrary assertion that a "meaningful opportunity to cross-examine," majority opinion at 524, 168 P.3d at 976, was afforded in this case.

Regarding the events of April 13, 2002, Officer Ke testified that Staggs recounted the following:

> She said she and Reggie got into a argument. Reggie was upset. I guess her mom brought some friends over earlier in the evening and the police had to come by. They were upset so they were arguing. And she said she was laying down on the couch watching TV, and I guess Reggie came up behind her and started holding her down, pressing her neck with both of his hands, like, kind of holding her down on the couch. And then she also said he punched her in the face, left side of her face.

When Staggs testified on direct, she claimed a loss of memory as to *all* relevant questions pertaining to the events in the hearsay statement:

Q. Do you know Reginald Fields?

A. Yes.

. . . .

Q. Can you describe your relationship with Mr. Fields?

A. He's my boyfriend.

Q. And on April 13 were you living together?

A. Yes.

Q. *The night of April 13th where were you?*

A. *I can't recollect, actually.*

Q. *Do you recall an evening where Reggie got arrested?*

A. *No.*

Q. How long have you and Reggie been together?

A. We've been friends for at least four years.

Q. And are you still boyfriend/girlfriend?

A. We're still friends.

Q. Are you still living at the same place

A. No.

Q. *And you don't recall an incident that happened back in April where the police came over two times?*

A. *I have a hard time remembering*

Q. So if something had happened back in April, your memory would have been better back then than today?

A. Not necessarily.

Q. *Do you recall talking to a police officer on April 13th just before midnight at where you were living?*

A. *No*

Q. Do you recall a police officer asking you what had happened?

A. (No audible response.)

Q. *Do you recall telling a police officer that on April 13th around 11:40 you and your boyfriend got into an argument?*

A. *No, I don't remember.*

Q. *Do you recall telling a police officer that you were lying chest down on the sofa in your living room?*

A. *No, I don't remember that.*

Q. *Do you recall telling a police officer that Reggie came in behind you and started to push down your neck with both of his hands?*

A. *No.*

Q. *Do you recall telling a police officer that this caused pain to your neck?*

A. *Nope.*

Q. *Do you recall telling a police officer that you could not breathe while he was holding you down?*

A. *No, I don't recall that.*

Q. Do you recall—telling a police officer that Reggie punched you once in the face causing pain to your face?

A. No audible response.

(Emphases added.) On cross-examination, Staggs confirmed her lack of memory as to the charged event.

Q. Do you recall, Ms. Staggs, on this particular night, April 13th we're talking, David Richards being present?

A. I believe—yes, I believe he was

Q. You know who David Richards is then?

A. Yes.

Q. Who is David Richards?

A. A friend of mine.

Q. Friend of yours. Okay. And do you recall whether on this night you were drinking anything?

A. Yes, I was.

Q. What were you drinking?

A. Beer.

Q. Okay. Did you have a lot to drink?

A. Yes.

Q. *Is that perhaps why you have no recollection?*

A. *Perhaps.*

Q. Do you—do you under—do you recall, perhaps, any incident involving Mr. Fields' surfboards—board?

A. Um-hmm.

Q. And might that involve a threat to Mr. Fields that if he left that you were going to break his surfboard?

A. I think that may have occurred.

Q. Okay. Do you recall laying on his board in such a way, I guess maybe it was between the table and the chair, and then threatening to sit on it that—something like that?

A. Yeah, I do remember that.

Q. Okay. Do you recall perhaps Mr. Richards trying to hold your wrists to keep you from slapping him, et cetera? Do you recall that at all?

A. No, I don't remember that.

(Emphasis added.) From the foregoing it is a mischaracterization of Staggs' testimony to claim that "she willingly and *informatively* responded to virtually all of the questions posed by [Petitioner's] counsel." Majority opinion at 523, 168 P.3d at 975 (emphasis added).

Nothing in Staggs' testimony, either on direct or cross-examination, corresponds to Officer Ke's testimony about Staggs' accusatory hearsay statement. The actual record controverts the majority assertion that "[t]he point here is that the protections guaranteed by Hawaii's confrontation clause have been fully afforded to an accused where the hearsay declarant attends trial and is cross-examined about the prior hearsay statement." Majority opinion at 524, 168 P.3d at 976. Obviously, as the transcript demonstrates, trial attendance does not equate to an opportunity for meaningful cross-examination because Staggs could not testify with respect to a statement of which she had no remembrance. Any "meaningful opportunity" to cross-examine Staggs would necessarily include a "willing and informative," response, majority opinion at 523, 168 P.3d at 975, as to the hearsay statement. However, no such testimony was forthcoming because of Staggs' claimed loss of memory.

Therefore, in ruling that the admission of Staggs' hearsay statement did not violate Hawaii's confrontation clause, the majority strips any significance from the phrase "meaningful opportunity to cross-examine." Staggs claimed memory loss as to every

question regarding any circumstance of physical altercation between herself and Petitioner that constituted the gravamen of the charge of abuse of a family or household member, HRS § 709–906(1) (Supp.2003),[35] and rendered cross-examination on the hearsay statement *meaningless*, rather than meaningful.

### XXX.

The majority also maintains that "given the foregoing, we do not think Fields' opportunity for cross-examination was insufficient" because

> [t]he trier of fact was provided with adequate information to test the credibility and veracity of Staggs' prior statement insofar as it could have reasonably inferred that (1) *Staggs' drunken state rendered her prior statement inaccurate or unreliable,* and/or (2) *Staggs was not an innocent victim but an aggressive participant* in the incident who, while angry at Fields, gave a false statement to the police.

Majority opinion at 523–24, 168 P.3d at 975–76. First, Staggs' testimony as to what she recalled was not related to the substance of Staggs' hearsay statement. Staggs discussed three matters during her cross-examination. First, she recalled believing that Richards was present at her home on the evening of April 13. Second, she testified that she had a lot to drink which "perhaps" led to her lack of memory. Finally, she possibly remembered an incident involving a threat to break Fields' surfboard. Placing emphasis on these three points, the majority asserts that "Fields certainly had the oppor-

tunity to develop those theories and cast doubt on Staggs' earlier out-of-court statement, but voluntarily declined to do so by terminating the cross-examination." Majority opinion at 523, 168 P.3d at 975.

Assuming, *arguendo*, their relevance, the theories the majority proposes, with all due respect, rest at best on gross speculation.[36] Officer Ke did not corroborate any of the three matters. Officer Ke did not testify about Richards' presence in the home, he did not testify to the extent of Staggs' intoxication, and he did not testify regarding Staggs' supposed threat to break Petitioner's surfboard. None of these matters are incorporated in Staggs' hearsay statement. Thus, there was no connection between Staggs' testimony and Officer Ke's rendition of the hearsay statement. Before cross-examination Staggs had already explicitly claimed a loss of memory as to the events on the evening of April 13 at least ten times (a number of responses were inaudible and were not recorded in the transcript) on direct examination. Thus, with all due respect, the term "meaningful" as it is employed by the majority in this context becomes nonsensical.

### XXXI.

Second, and significantly, as before noted, Staggs' alleged statement was admitted as *substantive* evidence and not for impeachment purposes. The effect, even if not recognized or acknowledged by the majority, is that its decision means that hearsay statements are admissible as *substantive evidence* even if the declarant cannot be cross-exam-

---

**35.** HRS § 709–906(1) provides, in pertinent part that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family member.... For the purposes of this section, 'family or household member' means ... persons jointly residing or formerly residing in the same dwelling unit."

**36.** In characterizing Staggs as being in a "drunken state," the majority overreaches. Staggs responded "Yes" when asked whether or not she had had a lot to drink and Officer Ke testified that Staggs "appeared to be intoxicated." Officer Ke gave no indication that Staggs' drunkenness led him to question the veracity of her statement. At no point do any of the witnesses state Staggs was in a "drunken state." On the other hand, because it was Officer Ke who relat-

ed Staggs' statement, that version of the incident was presented in a coherent, rational, and detailed manner. *See State v. Machado*, 109 Hawai'i 445, 452, 127 P.3d 941, 948 (2006) (concluding that the trial court erred in admitting the complainant's statement as related by the officer under the excited utterance exception to the hearsay rule when the statement related was "detailed, logical, and coherent").

Additionally, as to the majority's theory that "Staggs was not an innocent victim but an aggressive participant in the incident who, while angry at Fields, gave a false statement to the police," majority opinion at 523, 168 P.3d at 975, there was no indication from any witness that Staggs was the initial aggressor.

ined about events in the statement. In this regard, the majority argues that the foundational interests of the confrontation clause "are preserved where an accused is afforded the opportunity to cross-examine, and thereby challenge the credibility and veracity of, a hearsay declarant regarding his or her prior out-of-court statement." Majority opinion at 524, 168 P.3d at 976 (citations omitted).[37] But the majority's allusion to impeachment of Staggs' statement is irrelevant because the determination of whether the hearsay statement was admissible as substantive evidence must be decided *before* the statement itself may be placed in evidence and, therefore, subjected to impeachment. For the fact that Staggs could answer questions about other matters did not make her available as to the hearsay statement. Like HRE Rule 804(a)(3), as noted by Professor Graham,

> FRE Rule 804(a)(3) provides that a witness who testifies to a lack of memory of the subject matter of his or her statement is unavailable. A witness may either truly lack recollection or for a variety of reasons, including concern of a possible perjury prosecution, feign lack of recollection. *In either event, the witness is unavailable to the extent that he or she asserts lack of recollection of the subject matter of the prior statement, even if the witness recalls other events.*

[31] M. Graham, *Federal Practice and Procedure: Evidence* § 6792, at 764 (interim ed.1992).

*Canady,* 80 Hawai'i at 479 n. 10, 911 P.2d at 114 n. 10 (brackets omitted) (emphasis added). Thus, the reason that Staggs lacked memory, whether by reason of a "drunken state," as the majority submits, or some other reason, is irrelevant to a finding of unavailability and, thus, to the question of whether the hearsay statement is admissible as *substantive* evidence. The effect of Staggs' claimed lack of memory is that "the trier of fact" is not afforded the opportunity to determine where the truth lies, despite her recollection of "other events." M. Graham, *supra,* § 6792, at 764. For that reason the statement would not be admissible *at all.*[38] *See Canady, Eastman,* and *Clark.*

From another similar point of view, because "[t]here is no inherent contradiction between a recitation of an event and a subsequent memory failure ..., the potential to impair [Staggs'] credibility is wanting, and the only legitimate thrust of the prior account is as independent proof of the matters asserted." A. Bowman, *Hawai'i Rules of Evidence Manual* 391 (2d. ed.1998). Thus, using Staggs' statement as proof of the matters asserted squarely presents "[t]he hearsay problem ..., and [HRE R]ule 802.1 comes into play." *Id.* Staggs who "lack[ed] present memory of the events related in a

**37.** Wigmore, cited to by the majority, *see* majority opinion at 524, 168 P.3d at 976, is not contradictory. As set forth by Wigmore, "The main and essential purpose of confrontation is *to secure for the opponent the opportunity for cross-examination.* The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of *cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers."* 5 J. Wigmore, on Evidence § 1395, at 150 (Chadbourn rev.1974) (some emphasis in original and some added). Wigmore also recognizes a secondary, albeit dispensable, purpose of confrontation. *Id.* at 153. Wigmore states, "There is, however, a secondary advantage to be obtained by the personal appearance of the witness; the *judge* and the *jury* are enabled to obtain the elusive and incommunicable evidence of a *witness' deportment while testifying,* and a certain subjective moral effect is produced upon the witness." *Id.* Both factors are satisfied by the positions of this dissent.

**38.** This puts to rest the majority's assertion that "the fact of Staggs' memory loss further permitted the trier of fact to test the truth of her prior out-of-court statement." Majority opinion at 523, 168 P.3d at 975 (citing *Owens,* 484 U.S. at 559, 108 S.Ct. 838 ("It is sufficient that the defendant has the opportunity to bring out such matters as the witness' bias, his [or her] lack of care and attentiveness, his [or her] poor eyesight, and even (what is often a prime objective of cross-examination, 3A J. Wigmore, Evidence § 995, pp. 931–32 (J. Chadbourn rev.1970)) the very fact that he [or she] has a bad memory.")). Majority opinion at 523, 168 P.3d at 975.

These inquiries all speak to impeaching the credibility of a witness and *presupposes the admissibility of the statement.* The instant case involves the question of whether Petitioner was able to "meaningfully cross-examine" the declarant, a question which must be resolved before the statement is admitted. *Owens,* of course, has been disavowed in this jurisdiction. *See* discussion *supra* and *infra.*

prior statement is not 'subject to cross-examination concerning the subject matter' of the statement," as required by HRE Rule 802.1. *Id.* (citing *Canady, supra*). Therefore, "the statement cannot be admitted *substantively* under that rule." *Id.* (citation omitted) (emphasis added). Furthermore, there is not "any room for impeachment under [HRE R]ule 613(b) in the absence of contradiction." *Id.* at 392. Therefore, contrary to the majority's assertion, "the credibility and veracity" of Staggs' prior statement cannot be tested. Majority opinion at 524, 168 P.3d at 976. As made abundantly clear, a witness who cannot testify as to the hearsay matter she is being questioned about, must be considered "unavailable" in a confrontation sense.

It may also be observed that HRE 802.1 requires that as a prerequisite to admissibility, the prior statement must be "given under oath" or "reduced to writing and signed or otherwise adopted or approved by the declarant" or "recorded in substantially verbatim fashion by stenographic, mechanical, electrical, or other means contemporaneously with the making of the statement." HRE 802.1(1)(A)-(C). The rationale that bars admissibility when the witness is unable to testify about the events in the hearsay statement, *see Canady, Eastman,* and *Clark, supra,* is even more compelling here. Staggs' statement bears even less indicia of reliability inasmuch as, in addition to not recalling what was said, Staggs never swore to, signed, or adopted the hearsay statement allegedly made.

## XXXII.

The majority claims "[t]his concept is not a novel one[,]" and maintains that "even under this jurisdiction's version of the *Robert's* analysis, *sufficient* cross-examination of the hearsay declarant at trial terminated the inquiry." Majority opinion at 523, 168 P.3d at 975 (emphasis added). This statement does not advance, but merely assumes the matter in issue, for what is a "sufficient" (or rather a meaningful) opportunity for cross examination is the question posed by this case. The majority refers to *Clark, Eastman,* and *Owens* as support for this proposition.

As stated before, *Owens* is inimical to the broad construction given the Hawai'i Constitution's confrontation clause in prior decisions of this court. *See Sua II,* 92 Hawai'i at 73 n. 8, 987 P.2d at 971 n. 8 ("Although *Roberts,* 448 U.S. at 66, 100 S.Ct. 2531, 65 L.Ed.2d 597, suggests that the existence of a 'firmly rooted hearsay exception' alone is sufficient to satisfy the 'adequate indicia of reliability' test, this court will not hesitate to extend the protections of the Hawai'i Constitution beyond federal standards." (Citing *Richie,* 88 Hawai'i at 42, 960 P.2d at 1250; *State v. Quitog,* 85 Hawai'i 128, 130 n. 3, 938 P.2d 559, 561 n. 3 (1997); *State v. Arceo,* 84 Hawai'i 1, 28, 928 P.2d 843, 870 (1996); *State v. Lessary,* 75 Haw. 446, 453–54, 865 P.2d 150, 154 (1994); *Aplaca,* 74 Haw. at 67 n. 2, 837 P.2d at 1305 n. 2.)). *Owens* plainly does not support "this jurisdiction's version of the *Roberts* analysis[,]" majority opinion at 523, 168 P.3d at 975, which was explicated in *Sua II.*

As to *Eastman* and *Clark,* the majority maintains that "[b]ecause the witness is subject to cross-examination, the *substantive* use of his [or her] prior inconsistent statement does not infringe the sixth amendment confrontation rights of accused in criminal cases." Majority opinion at 523, 168 P.3d at 975 (quoting *Clark,* 83 Hawai'i at 294, 926 P.2d at 199) (emphasis added). However, the foregoing quotation is misleading. The quote from *Clark* is from the commentary to HRE 802.1, which requires not only that to be admissible a statement must bear certain indicia of reliability by way of affirmation by the declarant (*i.e.,* under oath, recorded, or reduced into writing), but the additional assurance that the declarant be "subject to cross-examination *concerning the subject matter of the statement." Clark,* 83 Hawai'i at 294, 926 P.2d at 199 (citing to the Commentary to HRE Rule 802.1) (citation omitted) (emphasis added). Staggs' statement was not given under oath, reduced to writing, or recorded in any fashion and Staggs could not be subjected to cross examination regarding the "subject matter of the statement" because she had no memory of the statement. Thus, neither *Eastman* nor *Clark* validates the majority's assertion that

"sufficient" opportunity for cross-examination existed in the present case.

### XXXIII.

As a result, and for the reasons discussed before, the majority is wrong in declaring "that the protections guaranteed by Hawaii's confrontation clause have been fully afforded ... where the hearsay declarant attends trial and is cross-examined[.]" Majority opinion at 524, 168 P.3d at 976. This view contravenes the rationale reaffirmed in our case law, as observed *supra*, that where the declarant lacks memory, the "credibility and veracity of[ ] a hearsay declarant regarding his or her prior out-of-court statement[,]" majority opinion at 524, 168 P.3d at 976, cannot be tested by way of cross-examination.

The assertion, then, that "foundational interests are preserved[,]" *id.*, by way of impeachment is erroneous as stated *supra* because when *substantive* use of the statement is at stake, a determination as to admissibility would *precede* any impeachment procedure. The majority's claim that following the *Sua II* paradigm of unavailability in testimonial situations "expand[s] the protections of" the clause "beyond its purpose," *id.* at 517 n.9, 168 P.3d at 969 n.9, is simply untrue because doing so merely adheres to the approach heretofore followed in our jurisdiction. On the other hand, the majority's adoption of the federal approach significantly diminishes the protections presently afforded in our state constitution and invites inconsistent and unjust consequences from the uneven application of the law. *See McGriff*, 76 Hawai'i at 156, 871 P.2d at 790; *Sua I*, 92 Hawai'i at 92, 987 P.2d at 990.

Despite its protestation to the contrary, in holding that a hearsay statement is admissible even if the declarant has no memory of the statement or the events described in the statement, the majority directly contradicts *Sua II*. Such a holding is inherently inconsistent with the majority's claim that it adheres to the " 'unavailability' paradigm embedded within this jurisdiction's version of the *Crawford* analysis ... [that] *must be interpreted to include a witness' lack of memory, pursuant to greater protection* af-

forded by the Hawai'i [C]onstitution as recognized by this court in *Sua* [II]." Majority opinion at 527–28 n.14, 168 P.3d at 979–80 n.14, (emphasis added). For despite the witness's absence of memory, the majority decides that there was a meaningful opportunity to cross-examine in this case.

### XXXIV.

In an attempt to deflect the effect of its ruling, the majority contends that the dissent "attempt[s] to conjure disparity[,]" majority opinion at 527, 168 P.3d at 979, and "the appropriate principle gleaned [from *Crawford* ] is that the confrontation clause analysis does not apply to exclude a prior out-of-court statement where a declarant is present at trial to 'defend or explain it[,]' *not that a hearsay declarant's presence at trial mandates the conclusion that the declarant is constitutionally 'available' (i.e.* not 'unavailable')[,]" majority opinion at 527, 168 P.3d at 979. (emphasis added).

First, there is no need to "conjure disparity" because there is an actual conflict between how the majority applies the availability requirement and this court's confrontation clause jurisprudence. As stated before, pursuant to *Crawford*, a declarant is "unavailable" for confrontation clause purposes only if he or she never takes the stand. The majority reiterates this point by repeated references to *Crawford's* footnote nine and summations of cases from other jurisdictions. *See, e.g., Gomez*, 183 S.W.3d at 91 (stating "[t]he fact that Perez testified and *was available* for Appellant to cross examine her makes *Crawford* inapplicable here" (emphasis added)).

Second, statements that the majority seems to attribute to the dissent were never posited. It is not the dissent's position that "a hearsay declarant's presence at trial mandates the conclusion that the declarant is constitutionally available," majority opinion at 527, 168 P.3d at 979; rather, it is the majority's own analysis that leads to the conclusion that the majority viewed Staggs as available for the purposes of confrontation. Because the majority finds that Staggs' hearsay statement is admissible and that a *Craw-*

*ford* analysis is unnecessary, it must follow that the majority has concluded Staggs was "available" for purposes of the confrontation clause under footnote nine. It is the majority's own approach that mandates that a hearsay declarant who appears on the stand and denies memory of the relevant subject matter, is considered "available" for confrontation purposes.

The majority also appears to agree with this dissent when it states that "the 'unavailability' paradigm embedded within this jurisdiction's version of the *Crawford* analysis ... must be interpreted to include a witness' lack of memory, pursuant to the greater protection afforded by the Hawai'i Constitution as recognized by this court in *Sua [II]*." Majority opinion at 527–28, n.14, 168 P.3d at 979–80, n.14. But, having concluded that a witness is unavailable when he or she claims loss of memory at trial, the majority mystifyingly contradicts itself and, although it refuses to acknowledge it as such, decides instead that Staggs was available for confrontation purposes despite her claimed loss of memory as to the matters in the hearsay statement.

### XXXV.

I reiterate that we need not reach the *Crawford* issue because admission of Staggs' alleged hearsay statement constituted plain error. With all due respect, the majority contorts the language and substance of our case law in an effort to comport its result with this jurisdiction's precedent but instead only aligns our confrontation clause with the less protective federal standard. The ramifications of this approach bodes ill for the vitality of the confrontation clause guarantee and our prior insistence that the opportunity to cross-examine a witness on the subject matter of his or her prior statement be meaningful.

### XXXVI.

In line with the foregoing, I would reverse the ICA's May 31, 2005 published opinion and the court's October 11, 2002 judgment.

Concurrence and dissent by ACOBA, J.

Having dissented to the published opinion, I would grant reconsideration on the basis of my dissent herein, and the Order of Amendment filed by even date herewith. In that regard, I would reverse the May 31, 2005 published opinion of the Intermediate Court of Appeals, and reverse the October 11, 2002 judgment of the family court of the fifth circuit.